STEVEN A. GIBSON
Nevada Bar No. 6656
sgibson@gibsonlowry.com
JODI DONETTA LOWRY
Nevada Bar No. 7798
jdlowry@gibsonlowry.com
J. SCOTT BURRIS
Nevada Bar No. 10529
sburris@gibsonlowry.com

GIBSON LOWRY BURRIS LLP
City Center West
7201 West Lake Mead Boulevard
Suite 503
Las Vegas, Nevada 89128
Telephone 702.541.7888
Facsimile 702.541.7899

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KABINS FAMILY LIMITED PARTNERSHIP, a Nevada limited partnership; LORI C. KABINS, as trustee for the LORI C. KABINS SEPARATE PROPERTY TRUST, a Nevada trust,<br><br>    Plaintiffs,<br>  v.<br><br>CHAIN CONSORTIUM, a Nevada general partnership; 3900, LLC, a Nevada limited-liability company; 99TH & INDIAN SCHOOL, LLC, a Nevada limited-liability company; 99TH & INDIAN SCHOOL MANAGEMENT, LLC, a Nevada limited-liability company; BENESSERE, LLC, a Nevada limited-liability company; BENESSERE MANAGEMENT, LLC, a Nevada limited-liability company; TODD W. BERGMAN, an individual; BUCKEYE | Case No.: 2:09-CV-1125-PMP-(RJJ)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS', EDWARD GUTZMAN, III'S AND GE III, LLC'S, MOTION TO DISMISS; AND**<br><br>**OPPOSITION TO JOINDERS BY DEFENDANTS DEFENDANTS BENESSERE MANGEMENT, CIPRIANI MANAGEMENT, AND MR. TODD W. BERGMAN** |

1

1   CANAMEX 77 ONE, LLC, a Nevada limited-
    liability company; BUCKEYE 80 WEST
2   THREE, LLC, a Nevada limited-liability
    company; CAPRI I, LLC, a Nevada limited-
3   liability company; CAPRI II, LLC, a Nevada
    limited-liability company; JEFF CHAIN, an
4   individual; LINDA CHAIN, an individual;
    JEFF AND LINDA CHAIN, as trustees for the
5   JEFF & LINDA CHAIN FAMILY TRUST, a
    Nevada trust; CIPRIANI, LLC, a Nevada
6   limited-liability company; CIPRIANI
    MANAGEMENT, LLC, a Nevada limited-
7   liability company; COTTONWOOD RETAIL,
    LLC, a Nevada limited-liability company;
8   GEIII, LLC, also known as GE III, LLC, a
    Nevada limited-liability company; GILA
9   BEND 384, LLC, a Nevada limited-liability
    company; EDWARD GUTZMAN III, an
10  individual; INNOVATIVE ASSETS, LLC, a
    Nevada limited-liability company; J.
11  MATTHEW KAMMEYER, an individual;
    KAN INVESTMENTS, LLC, a Nevada
12  limited-liability company; GABRIEL
    MARTINEZ, ESQ, an individual;
13  MICHAEL'S PLAZA, LLC, a Nevada
    limited-liability company; MILLENNIUM
14  CONSTRUCTION, INC. doing business as
    MCI, a Nevada corporation; MILLENNIUM
15  COMMERCIAL PROPERTIES, LLC, a
    Nevada limited-liability company;
16  MILLENNIUM PROPERTIES &
    DEVELOPMENT, INC. a Nevada
17  corporation; MODERN MANAGEMENT,
    INC. a Nevada corporation; PHOENIX 83RD,
18  LLC, a Nevada limited-liability company;
    ALLYN F. POVILAITIS, also known as
19  ALLYN F. POVILATIS, an individual;
    RCRE, LLC, a Nevada limited-liability
20  company; and T.W.B. ENTERPRISES, INC.,
    a Nevada corporation,

21
                    Defendants.

22

2

1   Plaintiffs, the Kabins Family Limited Partnership and the Lori C. Kabins Separate

2  Property Trust (collectively, "Kabins"), by and through Kabins' counsel, Gibson Lowry Burris

3  LLP, oppose Defendants, Mr. Edward Gutzman, III's ("Mr. Gutzman's"), and GE III, LLC's

4  ("GEIII's") (collectively, "Gutzman's") Motion to Dismiss (Docket No. 83, "Gutzman's

5  Motion") pursuant to Fed. R. Civ. P. 12(b)(6), 8(a)(2), and 9(b).  Additionally, Kabins opposes

6  the joinders to Gutzman's Motion filed by Mr. Todd W. Bergman (Docket No. 109), Benessere

7  Management, LLC, (Docket No. 88) and Cipriani Management, LLC (Docket No. 88).

8   Kabins requests that Mr. Gutzman's Declaration be excluded (Gutzman's Motion at Ex.

9  1) pursuant to Fed. R. Civ. P. 12(d), for purposes of ruling on Gutzman's Motion, because

10  Gutzman moves for dismissal pursuant to Rule 12(b)(6), which cannot be based on factual

11  disputes.  Mr. Gutzman's Declaration merely serves to assert extrinsic facts that Kabins almost

12  entirely disputes.  (Gutzman's Motion at Ex. 1).  However, if the Court treats Gutzman's Motion

13  "as one for summary judgment under Rule 56," based on Mr. Gutzman's Declaration, then

14  Kabins must be allowed "a reasonable opportunity to present all the material that is pertinent to

15  the motion," before the Court rules on Gutzman's Motion so that Kabins may offer facts in

16  dispute of Gutzman's Declaration.  Fed. R. Civ. P. 12(d).

17   Plaintiffs' Opposition is based on the following Memorandum of Points and Authorities,

18  on the pleadings and papers on file herein, on the oral argument of counsel to be adduced at

19  hearing, and on any other matter this Court wishes to take into consideration.

20

21

22

3

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.   INTRODUCTION

3      Gutzman is not entitled to dismissal because Kabins' Complaint unequivocally alleged

4  sufficient detail for every element of every claim against Gutzman.  Additionally, where Kabins'

5  claims included averments of fraud, Kabins' alleged specific facts showing who (*i.e.*, which one

6  of the co-conspirators), what, where, and when the conspiring Defendants committed fraud.

7  Essentially, Kabins' Complaint alleged that Mr. Gutzman and GEIII are central co-conspirators

8  that orchestrated and implemented a series of seven interrelated complex schemes to defraud

9  Kabins out of approximately $11 million over a period of five years.[1]   Gutzman cannot be

10  entitled to co-create such a complicated scheme to defraud Kabins out of approximately $11

11  million, and then protest that the scheme is too complex for Gutzman to understand the scope of

12  Gutzman's liability.

13      Despite the 46 causes of action at issue, the Court should only address, at most, the

14  twelve causes of action enumerated in Gutzman's Motion, which are comprised of two sets of

15  claims: (1) the five fraud-related claims, which are subject to heightened pleading requirements;

16  and, (2) the seven breach-of-the-duty-of-loyalty claims, which are not subject to heightened

17  pleading.[2]   Gutzman explicitly admitted to receiving notice of all "46 … causes of action arising

18  from . . . 7 different real estate development projects."[3]   Thus, even though Gutzman alludes that

19

20      [1]   The Court should note that Gutzman's Motion attempts to conflate and confuse the issues by beginning with a false premise: Gutzman misrepresented to the Court that all 46 causes of action are "against all defendants." (Gutzman's Motion at 5:20-22).  To be clear, however, Kabins' Complaint alleges 46 causes of action against Mr. Gutzman, and 22 of those causes of action are also against GEIII, arising mostly out of conspiracy claims.

21      [2]   Gutzman's Motion at 10:5-7, 22-24, 11:3-5.  Only one of breach-of-loyalty claims pertains to both Mr. Gutzman and GEIII.  (Compl. ¶ 600, breach of loyalty against the "Gila Bend Defendants").

22      [3]   Gutzman's Motion at 5:20-21.

4

1    Kabins' entire Complaint should be dismissed,[4] Gutzman only identifies twelve causes of action

2    for dismissal; and only six of those are against GEIII.  Indeed, Gutzman failed to respond either

3    by motion or by responsive pleading to any of the conspiracy-related claims,[5] the securities fraud

4    claims, the racketeering claims, or the contract-based claims.[6]  Notably, many of those claims do

5    not require heighted pleading because those claims do not aver fraud.

6        In sum, Kabins provided sufficient detail of the fraud committed by: (1) Gutzman's co-

7    conspirators; *and* (2) Mr. Gutzman.  The allegations of fraud committed by Gutzman's co-

8    conspirators alone are sufficient to deny Gutzman's Motion regarding the fraud claims because

9    Gutzman is liable for the co-conspirators' fraud.  Additionally, the fraud committed by Mr.

10   Gutzman provides another independent basis for why Gutzman's Motion must be denied.

11   Moreover, Gutzman's only argument that the *non*-fraud claims (breaches of the duty of loyalty)

12   should be dismissed is based entirely on a single disputed fact denying Mr. Gutzman's

13   partnership, as opposed to any standard for a motion to dismiss.  For purposes of a motion to

14   dismiss, however, Mr. Gutzman *is* a general partner of the Chain Consortium.[7]  In sum,

15   Gutzman's Motion, *in toto,* must be denied.

16       The joinders to Gutzman's Motion by Defendants Benessere Management, LLC, Cipriani

17   Management, LLC (Docket No. 88) and Mr. Todd W. Bergman (Docket No. 109) are out of

18

19       [4] Gutzman's Motion at 2:20, 6:23-24, 11:2-3.

20       [5] For example, Gutzman did not address: (2) Conspiracy to Commit Securities Fraud; (3) Civil Conspiracy;
     (4) Concert of Action; (5) Aiding and Abetting; (42) Federal RICO; (43) Conspiracy to Violate Federal RICO; and
     (44) Nevada Racketeering.

21       [6] Kabins categorizes the 16 contract-based claims as follows: seven claims for breach of contract; seven
     claims for breach of the covenant of good faith and fair dealing; one claim for unjust enrichment; and one claim for
     promissory estoppel.

22       [7] Compl. ¶ 77.

1   place.  Not all of the causes of action are against "All Defendants," despite Gutzman's

2   misrepresentation to the contrary.[8]  Notably, not one of the joinders filed in this case (Docket

3   Nos. 88 and 109) delineate which parts of Gutzman's Motion could apply to the parties seeking

4   to join Gutzman's Motion, thus, those joinders should be summarily rejected.  In any event, the

5   result is the same for the joinders: the claims cannot be dismissed.

6   **II.    FACTS**

7           On June 23, 2009, Kabins filed a complaint against Mr. Gutzman, GEIII, and 32 other co-

8   conspirators regarding a complex fraudulent scheme, which caused approximately $11 million of

9   damage to Kabins.  (Docket No. 1-1, "Compl.")  On August 17, 2009, in lieu of filing a

10  responsive pleading, Mr. Gutzman and GEIII, moved to dismiss 12 enumerated claims against

11  Mr. Gutzman; six of those claims are also against GEIII, which is one of Gutzman's co-

12  conspirators.  (Gutzman's Motion at pp. 8-10).  Gutzman's Motion alludes to dismissal of the

13  entire Complaint against Mr. Gutzman and GEIII.[9]  (Gutzman's Motion at 6:4-5, 6:23-24, 7:15-

14  17).  Gutzman did not provide a single example of any allegation in the Complaint that Gutzman

15  finds objectionable.  Indeed, Gutzman's Motion does not contain a single citation to any

16  allegation in the Complaint.

17          On August 20, 2009, Benessere Management, LLC ("Benessere Management") and

18  Cipriani Management, LLC ("Cipriani Management") filed a joinder to Gutzman's Motion.

19  However, neither Benessere Management nor Cipriani Management filed a responsive pleading

20  or a motion pursuant to Fed. R. Civ. P. 12(b).  On August 21, 2009, Mr. Todd W. Bergman filed

21  ───────────────

    [8]  Gutzman's Motion at 5:21.

22  [9]  A closer examination of Gutzman's Motion reveals that Gutzman only argued, albeit inadequately, for
    dismissal of 12 of the 46 claims.

1   a joinder to Gutzman's Motion.  However, Mr. Bergman did not file a responsive pleading or a

2   motion pursuant to Fed. R. Civ. P. 12(b).

3        Kabins alleged that Mr. Gutzman was part of a conspiracy and a general partnership with,

4   at a minimum, the individually-named Defendants and co-conspirators identified as: Mr. Jeff

5   Chain, Gabriel Martinez, Esq., Mr. Allyn Povilaitis, Mr. Todd W. Bergman, Mr. J. Matthew

6   Kammeyer, and Mrs. Linda Chain.  (Compl. ¶¶ 27-28, 77, 79-80, 84-85, 94-95, 110-119, 156,

7   179-180, 217, 280, 301, 314, 342, 348, 394, 396-98, 422,  425, 427, 449, 460, 481-82, 492, 495,

8   582, 609, 706, 716, 747).  Kabins alleged that the individually-named Defendants—the general

9   partners of the Chain Consortium—operated as a general partnership by, at a minimum, sharing

10  profits and common objectives.  (*See, e.g.,* Compl. ¶¶ 221-233 (showing the operations,

11  relationships, shared profits, and shared objectives of the general partners)).

12       Kabins identified and alleged subgroups of conspiring Defendants to which Mr. Gutzman

13  belongs, including: (1) the "Chain Consortium" (Compl. ¶ 77); (2) the "Managers" (Compl. ¶

14  217); (3) Gutzman's agency relationship for the "Millennium Entities" (Compl. ¶ 280, *passim*);

15  and, (4) the subgroups of Defendants associated with, and responsible for, each of the seven

16  investment company schemes (Compl. ¶¶ 555 (the "99th Defendants"), 564 (the "Benessere

17  Defendants"), 573 (the "Capri Defendants"), 582 (the "Cipriani Defendants"), 591 (the

18  "Cottonwood Defendants"), 600 (the "Gila Bend Defendants"), and 609 (the "Michael's

19  Defendants").  Kabins alleged that Mr. Gutzman, individually and through a general partnership

20  referred to as the "Chain Consortium," controlled GEIII (Compl. ¶ 221), which Kabins defined

21  as one of the "Managers" (Compl. ¶ 217).  Kabins alleged that GEIII and Mr. Gutzman, who are

22  both "Managers," conspired with, acted in concert with, and aided and abetted the other

7

Defendants in this case by co-creating and implementing the fraudulent scheme to defraud Kabins.  (*See, e.g.,* Compl. ¶¶ 226-230)

A.     *Kabins Alleged Fraudulent Omissions and Misrepresentations Regarding the Who, What, When, and Where Addressing Gutzman's Co-Conspirators'*

Kabins alleged affirmative misrepresentations as well as voluminous fraudulent omissions/concealment attributable to Gutzman's co-conspirators.  (*See, e.g.,* Compl. ¶¶ 236 and 267 (concealment of illegal kickbacks paid out of Kabins' investments), 281-282 ("risk of loss omission"), 306 (concealment of Michael's rental income deficiency), 309 (concealment of 3900 LLC's ownership of Michael's Plaza), 311-312 (concealment of Michael's leverage risk), 322 (concealment of certain written terms that contradicted oral terms), 326 (misleading K-1s delivered by U.S. Mail), 331 (concealment of loans in general), 371, 375, 385-388, 405 (document-based fraudulent omissions regarding leverage risks, dilution omissions, and loss allocation omissions respectively).[10]

In combination with the numerous fraudulent omissions, Kabins' Complaint alleged specificity to answer who, what, where, and when regarding affirmative statements made by Gutzman's co-conspirators.  Kabins first alleged generally that:

> The Chain Consortium, the Managers, and the Millennium Entities assented to communicating the *Inducement* Misrepresentations to Kabins.

(Compl. ¶ 289) (emphasis added).  Kabins alleged that Mr. Gutzman is a general partner of the Chain Consortium (with six other individually-named conspiring Defendants) (Compl. ¶ 77); Gutzman is also a "Manager," as Gutzman partially admits (Gutzman's Motion at 4:12-14)

---

[10] Notably, there can be no requirement to answer the *where* and *when* associated with the Risk of Loss Omission because, as Kabins alleged, Mr. Gutzman, his partners, and his co-conspirators failed to inform Kabins of the material omission at any time or place (Compl. ¶¶ 281-285).

1   (stating "Mr. Gutzman has acted as a corporate manager for several of the other corporate

2   defendants charged with managing five of the seven real estate developments described in

3   Plaintiff's Complaint"); and, Mr. Gutzman acted an agent for the Millennium Entities.  (*See e.g.,*

4   Compl. ¶ 280).

5         The Inducement Misrepresentations constitute one subgroup of fraudulent statements and

6   omissions consisting of: "[t]he Free and Clear Misrepresentation, Distribution Misrepresentation,

7   Principal Protection Misrepresentation, Liquidity Misrepresentation, and Risk of Loss Omission

8   [.]" (Compl. ¶ 286).  Kabins alleged the "who, what, where, and when" regarding each one of

9   the Inducement Misrepresentations.  (Compl. ¶¶ 342-343 ("Dates, Locations, and Identities of

10   the Inducement Misrepresentations")).  Additionally, Kabins alleged who, what, where, when,

11   and how much with respect to each investment made by Kabins in reliance on Gutzman and

12   Gutzman's co-conspirators' fraudulent scheme.  (Compl. ¶ 344).

13         Kabins distinguished between the misrepresentations made directly by Gutzman (*see,*

14   *e.g.,* Compl. ¶ 280) from the misrepresentations made by Gutzman's co-conspirators (*see, e.g.,*

15   Compl.¶¶ 251, 258, 268, 276, 281, 286, 342); and Kabins initially alleged who and what the

16   misrepresentations were as well as the context for those misrepresentations.  (*See e.g.,* Compl ¶¶

17   251 ("Free and Clear Misrepresentation"), 258 ("Distribution Misrepresentation"), 268

18   ("Principal Protection Misrepresentation"), 276 ("Liquidity Misrepresentation").  Kabins then

19   alleged where and when regarding each of the misrepresentations.  (Compl. ¶¶ 342, "Fraud in the

20   Inducement Dates, Locations, and Identities").

21         Kabins further alleged who, what, where, and when regarding the fraud in the execution

22   or inception claims.  (Compl. pp. 54-58 (it was "Gutzman who told Kabins that . . . attorneys had

1    followed the same procedure for other investments with Mr. Chain and Mr. Gutzman" whereby

2    Kabins should tender Kabins investment money well before reviewing and executing a written

3    contract.  (Compl. ¶ 348)).  Kabins alleged who, what, where, and when regarding the express

4    fraud contained in the offering documents.  (Compl. ¶¶ 371-405).  Thus, in addition to the

5    fraudulent omissions, Kabins alleged the details of the affirmative written fraudulent statements.

6    (Compl. ¶¶ 378, 393, 406-408, 412-416).  Finally, Kabins alleged other fraud-related facts

7    answering who, what, where, and when as demonstrated by the allegations under the heading,

8    "Additional Fraud-Related Facts."  (Compl. ¶¶ 406-420).

9       **B.**      **_Kabins Allegations Regarding the Who, What, Where, and When of Mr. Gutzman's_**
               **_Misrepresentations_**

10              Kabins' Complaint initially alleges, generally, the who and what regarding fraud

11   committed by Mr. Gutzman regarding two subsets of Inducement Misrepresentations:

12          Before Kabins invested money in Benessere and Cipriani, Mr. Gutzman personally, and as an agent for the
            Chain Consortium, the Managers, and the Millennium Entities, verified the Liquidity Misrepresentation and
13          the Principal Protection Misrepresentations to Kabins for the purpose of inducing Kabins to invest in
            Benessere and Cipriani.
14
15   (Compl. ¶ 280).  With respect to the Liquidity Misrepresentation, Kabins alleged that Gutzman:

16          told Kabins that the Millennium Investment Companies were "ground-floor" opportunities and that people
            "wanted to get in" and that the Managers for Kabins' investments could find investors who would purchase
17          Kabins' equity interests for a reasonable price if Kabins wanted to sell at any time (the "Liquidity
            Misrepresentation").

18    (Compl. ¶ 276).  With respect to the Principal Protection Misrepresentation, Kabins alleged that

19   Gutzman:

20          told Kabins that each of the Millennium Investment Companies was "not possibly going to lose money,"
            and that "the worst thing that could happen is that [Kabins] would get [Kabins'] money back," misleading
21          Kabins to perceive that Kabins' invested principal was nearly as safe as a bank savings account or an
            investment in United States Treasury bills (the "Principal Protection Misrepresentation").

22

1  (Compl. ¶ 268).  Regarding when and where, Kabins' Complaint alleged that Gutzman

2  communicated both of these misrepresentations at Kabins' place of business "on or about

3  November 1, 2004" and "April 20, 2005," respectively:

> a. On about November 1, 2004, Mr. Gutzman, Mr. Bergman and Mr. Chain fraudulently induced Kabins to agree to invest $1,000,000.00 in Benessere.
> b. On about April 20, 2005, Mr. Gutzman, Mr. Bergman and Mr. Chain fraudulently induced Kabins to agree to invest $1,000,000.00 in Cipriani.

6  (Compl. ¶ 342 (a)-(b)).  Thus, Kabins Complaint alleged who, what, where, and when regarding

7  fraudulent statements by Mr. Gutzman himself.

8  **III.    ARGUMENT**

9        A.    ***Gutzman is Liable for Gutzman's Co-Conspirators' Misdeeds, and Gutzman Failed
              to Demonstrate that Kabins' Complaint is Missing Any Elements, Allegations, or
10             Specificity Required for Averments of Fraud Pursuant to Fed. R. Civ. P. Rule 9(b)***

11             Gutzman's Motion must be denied because Kabins alleged exacting details of who, what,

12  where, and when the fraud occurred regarding Gutzman's co-conspirators and Mr. Gutzman

13  himself, either one of which is sufficient to deny Gutzman's Motion.

14             Rule 9(b) . . . only requires the identification of the circumstances constituting fraud so that the defendant
              can prepare an adequate answer from the allegations.  While mere conclusory allegations of fraud will not
15             suffice, statements of the time, place and nature of the alleged fraudulent activities will.  Plaintiffs' seventh
              claim, though not a model of clarity, was sufficiently specific to withstand attack on rule 9(b) grounds.

16  *Bosse v. Crowell Collier and Macmillan*, 565 F.2d 602, 611 (9th Cir. 1977).  In the Ninth

17  Circuit, allegations of "fraudulent activities" must include "the time, place and nature of the

18  alleged fraud[.]"  However, the quantity of "additional specificity . . . required depends on the

19  nature of the individual case."  *Arroyo v. Wheat*, 591 F.Supp. 141, 144 (D.C. Nev. 1984).

20  Notably, Gutzman did not offer a single case that could show how any of the allegations of fraud

21  in Kabins' Complaint could be insufficient.  Moreover, Gutzman failed to demonstrate that

22  Kabins' Complaint is missing any allegations required to plead Kabins' causes of action for

fraud.  Instead, Gutzman merely relied on *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003) and *Gowen v. Tiltware LLC*, 2009 WL 1441653, slip op., at 9 (D.Nev. May 19, 2009), as support for Gutzman's argument that the averments of fraud must meet the specificity requirements of Rule 9(b).[11]  While Kabins does not dispute that Rule 9(b) applies to the fraud claims, the holdings of *Vess* and *Gowan* cannot be applied as Gutzman contends.

First, *Vess* stands for the opposite of Gutzman's assertion that an entire "complaint against … Defendants" should be subject to a heightened particularity standard.  *Vess*, 317 F.3d at 1105 (9th Cir. 2003); Fed. R. Civ. P. 9(b).  Instead, the holding in *Vess* instructs that fraud claims are subject to heightened pleading, while non-fraud claims are not subject to heightened pleading.  *Id.*  In *Vess,* the plaintiff had "allege[d] that Novartis conspired with APA and CHADD to increase the sales and sustain the price of Ritalin."  *Id.*  There, the court undertook to analyze, for the first time, "the application of Rule 9(b) in a case where fraud is not an essential element of the claim."  *Id.*  1104.  The *Vess* plaintiff argued, mistakenly, that Rule 9(b) did not apply to two of the "state claims under Cal. Civ. Code § 1770 and Cal. Bus. & Prof. Code §§ 17200 and 17500."  *Id.*  The *Vess* court held that, because those two claims included "[a]verments of fraud," the plaintiff's allegations for those two claims must meet the requirements of Rule 9(b).  *Id.* at 1105.  Notably, the remaining claims that did "not aver fraud . . . need not satisfy Rule 9(b)."  *Id.* at 1105.  Thus, the court "reverse[d] the district court's dismissal of the entirety of Vess's complaint against Novartis for failure to satisfy Rule 9(b)" because only the claims that included averments of fraud were subject to Rule 9(b)'s particularity

---

[11]  Appropriately refined terms enhance brevity and reduce redundancy.  But Gutzman offered absolutely no authority for Gutzman's contention that Kabins "is not permitted to merely 'lump' together 35 . . . Defendants." Gutzman's Motion at 8:10-11.

requirement.  *Id.* at 1106.  In sum, Rule 9(b) did not apply to claims where there were no averments of fraud.

 *Gowan* undermines Gutzman's argument by instructing that, even though the plaintiff must *identify* the fraud defendants by name, the plaintiff is not required to identify every "statement[] made by each and every individual" who committed the fraud.  *Gowen*, 2009 WL 1441653 at 10.  In *Gowen,* Ms. Cycalona Gowan, a celebrity poker player, sued "Tiltware LLC, its affiliates, and alleged shareholders or officers" for $40 million based on an oral agreement.  *Id.* at 1.  Ms. Gowen alleged that she orally agreed to endorse Tiltware LLC in exchange for a 1% ownership interest, but the defendants defrauded her.  *Id.* at 10.  Ms. Gowan's complaint failed to "identify any other Defendants," other than a single person, "by name, [and] allege the content of any false representations, or in what context they made them."  *Id.*  While the Court held that Ms. Gowan's fraud allegations against the remaining defendants were missing, most notably, the court stated that "the complaint need not identify false statements made by each and every individual[.]"  *Id.*  This is especially true in a "civil conspiracy" where "each participant [is] responsible as a contributory tortfeasor whether or not he actually committed the wrongful act."  *Barney v. Aetna Casualty & Surety Co.,* 185 Cal.App.3d 966, 983, 230 Cal.Rptr. 215, 225 (Cal. Ct. App. 1986) (citations omitted).[12]  However, Gowen did not allege conspiracy.  Instead, the *Gowan* plaintiff failed to identify, by name, any other participants in the fraud.

---

[12]  Gutzman is liable for the fraud committed by Gutzman's co-conspirators:

The effect of charging unitary action inherent in the allegations of conspiratorial conduct is to implicate all participating in the common design and thus to fasten liability on those who agree to the plan to commit the wrong as well as those who actually carry it out.  The significance of this form of action lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity."

*Black v. Sullivan,* 48 Cal.App.3d 557, 566 (Cal. Ct. App. 1975) (internal citations and quotes omitted).

In this case, unlike the plaintiff in *Vess,* Kabins does not argue that Rule 9(b) does not apply to averments of fraud; and, unlike the plaintiff in *Gowan,* Kabins' Complaint unequivocally alleges the identities of Gutzman's co-conspirators, Mr. Gutzman himself, and the distinguishable subgroups of Defendants to which Gutzman belongs.[13]   However, Kabins is not required to show Gutzman's separate fraudulent statements in the context of a conspiracy because Gutzman is liable for the acts of Gutzman's co-conspirators.  *Gowan,* 2009 WL 1441653 at 10; *Barney,* 185 Cal.App.3d at 983.  Additionally, Kabins is not required to show the "when and where" of the voluminous fraudulent *omissions* because those allegations involve true statements that were never made.  Instead, Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Bosse v. Crowell Collier and Macmillan*, 565 F.2d 602, 611 (9th Cir. 1977).

First, Kabins specifically alleged how "the misrepresentations were made," *Arroyo,* 591 F.Supp. at 144 -145 (D.C.Nev. 1984), both orally and in writing.  For example, regarding the first of the six Inducement Misrepresentations (oral misrepresentations connected to the fraud claims), Kabins initially alleged who and what:

> Directly prior to every investment of money by a Kabins entity in a Millennium Investment Company, Mr. Bergman and Mr. Chain, as agents for the Chain Consortium, the Managers, and the Millennium Entities, told Kabins that each of the Millennium Investment Companies was, and would be, free of any debts, or "free and clear," such that Kabins' respective investments could not be subject to foreclosures or leverage risks associated with creditors (the "Free and Clear Misrepresentation").

(Compl. ¶ 251; *see also,* Compl. ¶¶ 258, 268, 276, 281, 286 (the other five Inducement Misrepresentations, respectively)).  Second, Kabins specifically alleged "[w]here and when the alleged misrepresentations were made," *Arroyo,* 591 F.Supp. at 144 -145, both orally and in

---

[13]  For example, Mr. Gutzman and GEIII are included in the refined term, "Managers" (Compl. ¶ 217); and, Mr. Gutzman is one of the general partners of the "Chain Consortium" (Compl. ¶ 77).

writing.  For example, regarding the each of the six Inducement Misrepresentations associated with each of the seven investments, Kabins alleged, when, where and who under the heading "Fraud in the Inducement Dates, Locations, and Identities":

342. The Chain Consortium, the Managers, and the Millennium Entities agreed to send two individuals, Mr. Chain and Mr. Bergman, to Dr. Kabins' Place of Business on the following dates in order to make the Inducement Misrepresentations as agents for the Chain Consortium, the Managers, and the Millennium Entities . . . as follows:

a. On or about November 1, 2004, Mr. Gutzman, Mr. Bergman and Mr. Chain fraudulently induced Kabins to agree to invest $1,000,000.00 in Benessere.

b. On or about April 20, 2005, Mr. Gutzman, Mr. Bergman and Mr. Chain fraudulently induced Kabins to agree to invest $1,000,000.00 in Cipriani.

c. On or about May 2, 2005, Mr. Bergman and Mr. Chain fraudulently induced Kabins to agree to invest $1,000,000.00 in Gila Bend.

d. On or about February 10, 2006, Mr. Bergman and Mr. Chain fraudulently induced Kabins to agree to invest $3,000,000.00 in Michael's.

e. On or about April 1, 2006, Mr. Bergman and Mr. Chain fraudulently induced Kabins to agree to invest $1,000,000.00 in 99th LLC.

f. On or about February 4, 2007, Mr. Bergman and Mr. Chain fraudulently induced Kabins to agree to invest an additional $1,500,000.00 with 99th LLC.

g. On or about May 1, 2007, Mr. Bergman and Mr. Chain fraudulently induced Kabins to agree to invest $2,000,000.00 with Capri I.

h. On or about July 25, 2007, Mr. Bergman and Mr. Chain fraudulently induced Kabins to agree to invest $650,000.00 with Cottonwood.

343. Mr. Bergman and Mr. Chain used high-pressure sales tactics to induce Kabins into investing in Cottonwood on or about July 25, 2007, and falsely told Kabins on that date that Cottonwood would be an investment opportunity exclusive to Kabins and Mr. Chain.  Mr. Bergman and Mr. Chain further falsely touted Cottonwood as subject to even lower risk and higher returns than Benessere, Cipriani, Gila Bend, Michael's, 99th LLC, and Capri I.

(Compl. ¶¶ 342-343; *see also,* Compl. ¶¶ 344-345).  Thus, Kabins first alleged who, what, where, and when regarding the Inducement Misrepresentations.

Kabins further alleged the specific fraud facts surrounding Kabins' cause of action number eight, for fraud in the execution, by first alleging who and where:

1

> After the Chain Consortium, the Managers, and the Millennium Entities obtained Kabins' respective invested money based on the Inducement Misrepresentations, Mr. Bergman and Mr. Chain, or agents for the Chain Consortium, would return to Dr. Kabins' Place of Business to obtain Kabins' signatures on investment documents.

2

3 (Compl. ¶ 350; *see also,* Compl. ¶¶ 351-355).  Kabins further alleged when fraud in the

4 execution occurred and what it was:

5

> 360. On or about April 20, 2006, Mr. Chain and Mr. Bergman acquired Kabins' signature on documents that Mr. Chain and Mr. Bergman misrepresented as embodying Mr. Chain's and Mr. Bergman's oral Inducement Misrepresentations regarding 99th LLC.

6

> * * *

> 363. On or about November 20, 2004, Mr. Chain and Mr. Bergman acquired Kabins' signature on documents that Mr. Chain and Mr. Bergman misrepresented as embodying Mr. Chain's and Mr. Bergman's oral Inducement Misrepresentations regarding Benessere.

7

8

> 364. On or about May 20, 2007, Mr. Chain and Mr. Bergman acquired Kabins' signature on documents that Mr. Chain and Mr. Bergman misrepresented as embodying Mr. Chain's and Mr. Bergman's oral Inducement Misrepresentations regarding Capri I.

9

10

> 365. On or about May 25, 2005, Mr. Chain and Mr. Bergman acquired Kabins' signature on documents that Mr. Chain and Mr. Bergman misrepresented as embodying Mr. Chain's and Mr. Bergman's oral Inducement Misrepresentations regarding Cipriani.

11

12

> 366. On or about August 13, 2007, Mr. Chain and Mr. Bergman acquired Kabins' signature on documents that Mr. Chain and Mr. Bergman misrepresented as embodying Mr. Chain's and Mr. Bergman's oral Inducement Misrepresentations regarding Cottonwood.

13

14

> 367. On or about May 25, 2005, Mr. Chain and Mr. Bergman acquired Kabins' signature on documents that Mr. Chain and Mr. Bergman misrepresented as embodying Mr. Chain's and Mr. Bergman's oral Inducement Misrepresentations regarding Gila Bend.

15

16

> 368. On or about June 15, 2006, Mr. Chain and Mr. Bergman acquired Kabins' signature on documents that Mr. Chain and Mr. Bergman misrepresented as embodying Mr. Chain's and Mr. Bergman's oral Inducement Misrepresentations regarding Michael's.

17 (Compl. ¶¶ 360-368).  Thus, Kabins clearly alleged who, what, when, and where regarding fraud

18 in the execution.

19        Moreover, Kabins alleged sufficient details of complex layers of "Fraud in the Offering

20 Documents" (Compl. ¶¶ 371-405) as well as "Additional Fraud-Related Facts" (Compl. ¶¶406-

21 420).  Kabins identified the interconnected features, or *layers,* of Gutzman's fraud with fine

22 details.  Initially, Gutzman and Gutzman's co-conspirators used the oral Inducement

16

1   Misrepresentations to tell Kabins, for example, that there were *no loans* associated with the

2   properties (Compl. ¶¶ 251).  Nevertheless, the "fraud in the offering documents" partially

3   revealed that some of the prior Inducement Misrepresentations, upon which Kabins relied to

4   tender Kabins' investment money, were false.  (*See, e.g.,* Compl. ¶ 373).  However, the written

5   documents fraudulently omitted material facts, for example, that the loans obtained for the

6   schemes were short-term, without a reasonable exit strategy, and subject to high risk of loss

7   (Compl. ¶¶ 374-375; *see also,* Compl. ¶¶ 374-376, 380-386, 388, 401, 405 (material omissions)).

8   Thus, even though Gutzman and Gutzman's co-conspirators created conflicting versions of

9   fraudulent misrepresentations and omissions, the fraud remained undiscovered until Kabins

10  obtained substantial disclosures from the Defendants in December of 2008, when Kabins began

11  to reveal the entire scheme.

12      Gutzman's co-conspirator liability extends throughout the entire scheme used to defraud

13  Kabins.  The Complaint undoubtedly alleged that Mr. Gutzman and GEIII are co-conspirators

14  associated with subgroups of conspiring Defendants such as the Chain Consortium and the

15  Managers.  Furthermore, Kabins sufficiently alleged that Mr. Gutzman conspired with each

16  group of Defendants associated with each of the seven investment company schemes:

17          (1) 99th & Indian School, LLC;

18          (2) Benessere, LLC;

19          (3) Capri I, LLC;

20          (4) Cipriani, LLC;

21          (5) Cottonwood, LLC;

22          (6) Gila Bend 384, LLC; and,

1          (7) Michael's Plaza, LLC.

2   (*See, e.g.,* Compl. ¶¶ 77, 555, 564, 573, 582, 591, 600, and 609, respectively).  Kabins

3   undeniably alleged sufficient facts showing Gutzman's conspiracy relationship with the

4   Defendants.  Thus, Gutzman is liable for misdeeds of Gutzman's co-conspirators.

5          In sum, in compliance with Rule 9(b) and Ninth Circuit case law, Kabins unequivocally

6   alleged who, what, where, and when regarding the complex fraudulent scheme implemented by

7   Gutzman and Gutzman's co-conspirators.  The detailed allegations in Kabins' Complaint

8   demonstrate that Gutzman co-created a complex and multi-layered fraudulent scheme (including

9   a mass of material omissions) communicated orally and in writing.  Gutzman and Gutzman's

10  conspirator's confusing scheme forced Kabins' to perform expansive due diligence to allege the

11  fraudulent scheme with sufficient detail.  Notably, Gutzman's refusal to provide a single

12  example of an objectionable allegation in the Complaint infers that the allegations are indeed

13  sufficient.  Kabins' Complaint correctly and precisely alleged Gutzman's role in the conspiracy

14  to create, implement, and benefit from the fraudulent scheme against Kabins.  As a result,

15  Gutzman's Motion must be denied.

16  **B.      *Gutzman Elected Not to Argue for Dismissal of 34 of the Claims Against Mr.***
17  ***Gutzman or 10 of the Claims Against GEIII, While Gutzman Inappropriately***
    ***Conflated Parties and Claims***

18          Gutzman should be required to answer every claim that Gutzman failed to identify or

19  enumerate: thirty-four claims against Mr. Gutzman, and ten claims against GEIII.  Gutzman

20  confusingly conflated the all of the issues and claims based on Gutzman's utterly false statement

21  to the Court that "Plaintiffs have asserted 46 complex causes of action arising from at least 7

22  different real estate development projects against *'All Defendants'* generally[.]"  (Gutzman's

18

Motion at 5:20-22) (emphasis added).  Gutzman's Motion failed to distinguish between the forty-six claims against Mr. Gutzman and the twenty-two claims against GEIII.  Instead, a closer examination of Gutzman's Motion reveals that Gutzman only enumerated twelve claims for dismissal, while only six of those claims relate to GEIII.  Thus, the Court should require that Gutzman file an answer to the remaining thirty-four claims against Mr. Gutzman[14] and the remaining ten claims against GEIII, without further analysis of those claims.[15]

Specifically, Gutzman elected to argue for dismissal of the following enumerated claims against Gutzman: "Plaintiffs' causes of action numbered six, seven, eight, nine, twelve, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, and twenty[.]"  Gutzman's Motion at 11:3-4.  With respect to those enumerated claims, Gutzman identifies the claims as follows:

> Plaintiffs' sixth, seventh, eighth, and ninth causes of action all allege fraud, including fraudulent and intentional misrepresentation; fraud in the inducement; fraud in the execution or inception; and fraudulent concealment. . . .  Plaintiff's 12th cause of action [is] for negligent misrepresentation.* * *  Plaintiffs allege a series of claims for breaches of fiduciary duty/duty of loyalty.

---

[14]  Gutzman failed to address the following thirty-four numbered claims: (1) federal securities fraud; (2) conspiracy to commit federal securities fraud; (3) civil conspiracy; (4) concert of action; (5) aiding and abetting; (10) conversion; (11) Nevada securities fraud; (13) negligent performance of an undertaking; (21-27) breach of the duty of care related to each of the seven investments; (28-34) breach of contract related to each of the seven investments; (35-41) breach of the duty of good faith and fair dealing related to each of the seven investments; (42) federal RICO; (43) conspiracy to violate RICO; (44) Nevada racketeering; (45) unjust enrichment; and (46) promissory estoppel.

[15]  GEIII is a defendant for twenty-two claims—fewer than half of the total claims.  Kabins' Complaint clearly distinguishes the two defendants.  For example, GE III is not one of the partners of the Chain Consortium (Compl. ¶ 77).  Additionally, GE III was not one of the "Millennium Entities."  (Compl ¶ 214).  Instead, GEIII is one of the "Managers" (Compl. ¶ 217) and one of the "Gila Bend Defendants" (Compl. ¶ 600).  Thus, GEIII is not a defendant to the following enumerated causes of action: (Nos. 14-18, 20) breach of the duty of loyalty against the 99th Defendants; the Benessere Defendants; the Capri Defendants; the Cipriani Defendants; the Cottonwood Defendants; the Michael's Defendants; (21-25, 27) breach of the duty of care against the 99th Defendants; the Benessere Defendants; the Capri Defendants; Cipriani Defendants; the Cottonwood Defendants; and the Michael's Defendants; (28-32, 34) breach of contract against the 99th Defendants; the Benessere Defendants; the Capri Defendants; the Cipriani Defendants; the Cottonwood Defendants; and the Michael's Defendants; (35-39, 41) breach of the covenant of good faith and fair dealing against the 99th Defendants; the Benessere Defendants; the Capri Defendants; the Cipriani Defendants; the Cottonwood Defendants; and the Michael's Defendants.  In total GEIII is *not* a defendant for twenty-four of the claims, while Mr. Gutzman is a defendant for all of those claims.

(Gutzman's Motion at 8:2-19, 9:3.)  The remaining thirty-four claims against Gutzman, for

which Gutzman failed to address, or even mention, are causes of action numbered 1-5, 10-11, 13,

and 21-46, which include securities fraud claims, conspiracy-related claims,[16] racketeering

claims, and contract-based claims.  Notably, Gutzman's Motion avoids any mention the words,

"conspiracy," "conspire," or any related terms.  Thus, because Gutzman failed to address any

allegations or claims other than the twelve claims Gutzman enumerated, Gutzman should be

required to answer those remaining claims without further analysis.

C.      ***For Purposes of a Motion to Dismiss, Mr. Gutzman is a General Partner of the Chain Consortium; But Gutzman's Argument Only Addresses the Merits of the Claims Based on this Disputed Fact, Which Itself is Not Dispositive for Five of Seven Claims***

Gutzman's Motion to dismiss the seven claims for breach of the duty of loyalty must be

denied because Gutzman's entire argument relies exclusively on a single disputed fact regarding

whether or not Mr. Gutzman was a general partner of the Chain Consortium (Gutzman's Motion

at 10:16-24), which is insufficient for dismissal.[17]  *Usher v. City of Los Angeles*, 828 F.2d 556,

561 (9th Cir. 1987) (holding that a "trial court may not grant a motion to dismiss for failure to

state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief")).  Notably, Gutzman did not argue that Kabins

failed to make out sufficient allegations for claims of breach of the duty of loyalty.  "Certainly, a

director of a corporation may breach his fiduciary duties by means of fraud."  *Carstarphen v.*

---

[16]  As stated above, Kabins alleged that Gutzman was part of a civil conspiracy, and a general partnership, with individually-named Defendants and general partners: Mr. & Mrs. Jeff Chain, Gabriel Martinez, Esq., Mr. Todd W. Bergman, Mr. Allyn Povilaitis, and Mr. J. Matthew Kammeyer.  (Compl ¶ 77).  Kabins defines this general partnership as the "Chain Consortium."  (*Id.*)

[17]  Fed. R. Civ. P. Rule 9(b) does not require particularity in the allegations supporting a claim for breach of the duty of loyalty.

*Milsner*, 594 F.Supp.2d 1201, 1206 (D.Nev. 2009).  In sum, "the court must presume all factual

allegations of the complaint to be true" for purposes of a motion to dismiss.  *Id.*  Thus, Mr.

Gutzman *is* a general partner of the Chain Consortium, and Gutzman *is* a manager with respect

to all seven investment schemes.[18]

> ### 1. *Gutzman is Not Required to Be a General Partner of the Chain Consortium to Be Liable for Breach of Loyalty for Five of the Seven Claims*

Mr. Gutzman's status as a general partner of the Chain Consortium is not relevant for five

of the seven breach-of-loyalty claims.  To clarify, there are seven total claims for breach of the

duty of loyalty—one for each of the schemes used to defraud Kabins—against Mr. Gutzman.

One of those seven claims, regarding Gila Bend, is also against GEIII.[19]  Notably, Gutzman

admitted that Mr. Gutzman is a "manager" for five of the seven companies associated with the

breach-of-loyalty claims: "Mr. Gutzman has acted as a corporate manager for  . . . *five* of the

seven real estate developments described in Plaintiffs' complaint."  (Gutzman's Motion at 4:12-

14) (emphasis added).  Thus, there is no question that Mr. Gutzman is subject to liability for

breach of the duty of loyalty, regardless of Gutzman's assertion that Mr. Gutzman is not a

general partner of the Chain Consortium, for the five of the breach-of-loyalty claims associated

with the five "real estate development projects" for which Mr. Gutzman is admittedly a manager.

Those five companies are:

---

[18]  Compl. ¶ 77.

[19] Compl. ¶ 600.

21

(1) 99th and Indian School, LLC;

(2) Benessere, LLC;

(3) Capri I, LLC;

(4) Cipriani, LLC; and,

(5) Gila Bend, LLC.

Thus, Mr. Gutzman is "certainly" subject to liability for five of the claims for breach of the duty of loyalty. *Carstarphen*, 594 F.Supp.2d at 1206 (D.Nev. 2009). Moreover, GEIII is unquestionably subject to liability for the claim against Gila Bend for breach of the duty of loyalty and Gutzman did not argue otherwise. As result, those five claims against Gutzman plainly cannot be dismissed.

2.  *Gutzman's Arguments Based Entirely on the Merits of the Claims Are Inappropriate and Premature*

As demonstrated above, the only claims for breach of the duty of loyalty that Gutzman truly disputes are those associated with two of the seven claims: (1) Cottonwood Retail, LLC; and (2) Michael's Plaza, LLC, exclusively. Notably, Gutzman did not argue that Kabins failed to make out sufficient allegations for breach of the duty of loyalty. Instead, Gutzman argued the merits of the case by claiming that Gutzman's assertion of a factual dispute is the basis for Gutzman's Motion. As a result, the Court should presume that Kabins alleged sufficient allegations for breach of the duty of loyalty.

In this case, Gutzman contends that the Kabins' claim for breach of the duty of loyalty should be dismissed because Gutzman disputes whether or not Mr. Gutzman is a general partner, with six other individual-named Defendants, of the Chain Consortium. (Gutzman's Motion p.

10:16-24).  Thus, Gutzman's exclusive basis for dismissal is a disputed fact,[20] which simply cannot be a basis for a motion to dismiss.  Therefore, the Court must deny Gutzman's Motion to dismiss Kabins' claims for breach of the duty of loyalty.

      3.   *Gutzman's Arguments Based Entirely on the Merits of the Claims Are Inappropriate and Premature for Findings of Fact Regarding Gutzman's Partnership with Other Defendants*

At most, Gutzman has only demonstrated that genuine issues of material facts exist regarding Kabins' allegations that Gutzman is a general partner with other individually-named Defendants.  If the Court elects to treat Gutzman's Motion as a motion for summary judgment, then Kabins will offer additional evidence to show that Gutzman is a general partner with other individually-named Defendants based on, at a minimum, the sharing of profits and the shared objectives of each of the general partners.  *See Radaker v. Scott,* 109 Nev. 653, 658, 855 P.2d 1037, 1040 (Nev. 1993); NRS 87.060; NRS 87.130.  Notably, there is no formality required to form a general partnership.  *Id.*  Indeed, a person may be found to be a general partner despite express attempts to avoid a general partnership.  *See, e.g., Kaufman-Brown Potato Co. v. Long*, 182 F.2d 594, 599 (9th Cir. 1950) (holding that "[i]t is immaterial that the parties deign not to call their relationship, or believe it not to be, a partnership, especially where as here the rights of third persons are involved").  A partnership exists when parties "do things which constitute a partnership."  *Id.*  For example, "the sharing of profits and losses are usual in partnership agreements and practices."  *Id.*

---

[20] The only substance of Gutzman's Motion is denial of facts alleged by the Complaint.  Gutzman twice claims that "Gutzman has never met Plaintiff Lori C. Kabins," who, of course, is not a party to this case (Gutzman's Motion at 4:1, 8:9); Gutzman asserts that Mr. Gutzman is not "a member of any Nevada general partnership with the other individual named Defendants" (Gutzman's Motion at 4:7-8); Gutzman asserts that Gutzman was not involved with two of the seven "real estate developments described in Plaintiffs' [C]omplaint" (Gutzman's Motion at 5:16-17); and Gutzman asserts that "not all 35 Defendants are involved in all of the [seven] projects" (Gutzman's Motion at 4:25). At most, Gutzman's assertions are mere denials of facts in alleged in the Complaint.

1

2

3

In this case, for purposes of a motion to dismiss, Kabins alleged that the partnership

exists and Kabins alleged the foundational requirements for finding a partnership.  For example,

regarding sharing of profits, Kabins alleged:

4

5

> The Chain Consortium . . . used the Millennium Investment Companies to receive large, undisclosed commissions immediately after Kabins invested capital in the respective Millennium Investment Companies.

6

7

8

9

10

11

12

(Compl. ¶ 226; *see also,* Compl. ¶¶ 219-220, 224-225, 226-229).  Indeed, Kabins not only made

out sufficient allegations of a partnership, Kabins also made out sufficient allegations that the

general partners of the Chain Consortium were co-conspirators, who were part of a larger

racketeering "enterprise."  (*See, e.g.,* Compl. ¶¶ 224, 228).[21]  Kabins alleged that further proof of

the general partnership exists in the various company check registers.  (Compl. ¶¶ 225, 237, 377,

410, 425, and 506).  Thus, Kabins can show additional extrinsic evidence of the Mr. Gutzman's

partnership so that the Court can conclude that there is a genuine issue of material fact.

13

        4.       <u>A Complaint Cannot Be Dismissed Pursuant to Rule 8(a) Based Merely on Length</u>

14

15

16

17

18

19

20

Gutzman simply failed to make any cognizable argument for dismissal of the breach-of-

loyalty-claims based on Rule 8(a)(2).  Indeed, for a complaint to be dismissed under Rule

8(a)(2), the "verbosity" and "redundancy" must be such that the "true substance, if any, is well

disguised."  *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1131 (9th Cir. 2008)

(citations omitted).  However, there is no "Ninth Circuit case" that has ever held "that a

complaint may be found to be in violation of Rule 8(a) solely based on excessive length[.]"  *Id.*

Instead, the courts have "considered the nature of the underlying dispute," the "number of

21

22

---

[21]  Moreover, Kabins alleged that Mr. Gutzman and GEIII's relationship with the group of Defendants identified as "Managers."  (Compl. ¶ 217).  The Managers includes the general partners of the Chain Consortium and certain named entity Defendants who were also co-conspirators.

defendants, and the number, type, and complexity of claims for relief." *Bechler v. Macaluso*, 2008 WL 4145881, 2 (D. Or. 2008).  Thus, claims cannot be dismissed based on a lengthy complaint.

Gutzman fails to argue the correct standard for dismissal under Fed. R. Civ. P. 8(a)(2) because Gutzman, in substance, merely asserts that Kabins' entire Complaint is too lengthy, which is insufficient for dismissal under Rule 8(a)(2).  (Gutzman's Motion 7:10-13).  Thus, to the extent that Gutzman relies on Rule 8(a)(2) as a basis for dismissal of the claims for breach of the duty of loyalty, Gutzman's Motion must be denied.

## IV.    CONCLUSION

For the reasons stated above, the Court should deny Gutzman's Motion.


Respectfully submitted this 1st day of September, 2009.


GIBSON LOWRY BURRIS LLP


By _/s/ J. Scott Burris _____
STEVEN A. GIBSON
Nevada Bar No. 6656
JODI DONETTA LOWRY
Nevada Bar No. 7798
J. SCOTT BURRIS
Nevada Bar No. 10529
City Center West
7201 West Lake Mead Boulevard, Suite 503
Las Vegas, Nevada 89128
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5-1 of this Court, I certify that I am an employee of GIBSON

LOWRY BURRIS LLP and that on this 1st day of September, 2009, I caused a correct electronic

copy of the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS', EDWARD

GUTZMAN, III'S AND GE III, LLC'S, MOTION TO DISMISS to be served via CM/ECF.


By ____/s/_____
An employee of GIBSON LOWRY BURRIS LLP