UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
LAS VEGAS, NEVADA


| | | |
|---|---|---|
| KABINS FAMILY LIMITED PARTNERSHIP, et al., | ) ) ) | CASE No. 2:09-CV-1125-RCJ-RJJ |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| CHAIN CONSORTIUM, et al., | ) ) | |
| Defendants. | ) ) ) | Las Vegas, Nevada April 16, 2010 11:15 a.m. |
| And related cases and parties | ) | |


**HEARING ON MOTIONS**


THE HONORABLE ROBERT J. JOHNSTON PRESIDING
MAGISTRATE JUDGE OF THE U.S. DISTRICT COURT


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 466-4148 - gayle@nwranscripts.com

1

APPEARANCES:


FOR THE PLAINTIFFS:      STEVEN A. GIBSON, Esq.
                         JOHN SCOTT BURRIS, Esq.
                         Gibson Lowry Burris, LLP
                         7201 W. Lake Mead Boulevard
                         Las Vegas, Nevada  89128
                         sgibson@gibsonlowry.com
                         sburris@gibsonlowry.com

                         Dr. Kabins Personal Attorney
                         JOHN V. SPILOTRO, Esq.
                         Spilotro & Kulla
                         626 S. Third Street
                         Las Vegas, Nevada 89101



FOR THE DEFENDANTS:      For Cipriani Management, LLC:
                         HANNAH C. IRSFELD, Esq.
                         Irsfeld & Associates, LLC.
                         1700 West Horizon Ridge Parkway
                         Suite 206
                         Henderson, Nevada  89012
                         hirsfeld@irsfeldlaw.com

                         For 99th & Indian School, LLC:
                         WILLIAM KERRY SKAGGS, Esq.
                         Law Office of William Kerry Skaggs
                         401 N. Buffalo Drive, Suite 100
                         Las Vegas, Nevada  89145
                         kerryskaggs@msn.com

                         For Benessere, LLC, Buckeye
                         Canamex 77 One, LLC:
                         CHAD A. BOWERS, Esq.
                         Law Office of Chad A. Bowers, Ltd.
                         3202 W. Charleston Blvd.
                         Las Vegas, Nevada  89102
                         chadbowers@lawyer.com

```
 1  LAS VEGAS, NEVADA                    FRIDAY, APRIL 16, 2010

 2              PROCEEDINGS BEGAN AT 11:15:01 A.M.

 3         THE COURT:  Please be seated.

 4         THE CLERK:  Kabins Family Limited Partnership, et

 5  al, versus Chain Consortium, et al.  2:09-Civil-1125-RJJ.

 6  This is before the Court on defendant's motion, Docket 247.

 7         THE COURT:  Counsel, please enter your appearances

 8  for the record.  And for the completeness of the record, would

 9  you just indicate the party or parties you represent, and any

10  law firm that you're associated with, starting with

11  plaintiffs' counsel, please.

12         MR. GIBSON:  Good morning, Your Honor.  Steve

13  Gibson, Gibson Lowry Burris, on behalf of all the plaintiffs.

14         THE COURT:  Thank you.

15         MR. BOWERS:  Good morning, Your Honor.  Chad --

16         THE COURT:  Let's -- let's get all the plaintiffs

17  first --

18         MR. BOWERS:  Oh, I'm sorry.  I apologize, Judge.

19         THE COURT:  -- if we could.  That's okay.

20         MR. BURRIS:  Good morning, Your Honor.  Jay Scott

21  Burris on behalf of plaintiffs with Gibson Lowry Burris as

22  well.

23         MR. SPILOTRO:  Good morning, Your Honor.  John

24  Spilotro, Spilotro & Kulla.  I am Dr. Kabins' personal

25  attorney.
```

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 466-4148 - gayle@nwranscripts.com

```
 1              THE COURT:  Thank you.

 2              Mr. Spilotro, while we're making the record here,

 3    were you present during the taking of the deposition that's

 4    the target of this motion?

 5              MR. SPILOTRO:  I was present.

 6              THE COURT:  Okay.  Very good.  Did you have a

 7    speaking role or were you just --

 8              MR. SPILOTRO:  I think there may have been one

 9    objection that I had made, but that was about it.

10              THE COURT:  Okay.  Very good.

11              And Mr. Bowers.

12              MR. BOWERS:  Sorry.  I'll try again, Your Honor.

13    Mr. Bowers, I'm here with Mr. Massi's office on behalf of

14    defendants Benessere, LLC; Cipriani, LLC; Gila Bend 384;

15    Buckeye 80 West Three, LLC; Buckeye Canamex One, LLC.

16              THE COURT:  Thank you.

17              MS. IRSFELD:  Good morning, Your Honor.  Hannah

18    Irsfeld with Irsfeld & Associates.  I'm here on behalf of

19    defendants Edward Gutzman III; GEIII, LLC; Benessere

20    Management, LLC; and Cipriani Management, LLC.

21              Thank you.

22              THE COURT:  Thank you.

23              MR. SKAGGS:  Morning, Your Honor.  William Kerry

24    Skaggs, Law Office of William Kerry Skaggs, representing

25    defendants Gabriel Martinez; 99th & Indian School, LLC; 99th &
```

1    Indian School Management, LLC; Capri I, LLC; Capri II, LLC;

2    and Phoenix 83rd, LLC.

3              THE COURT:  Thank you.

4              This is on, as indicated by the clerk, in regard to

5    the motion here filed by the defendant to compel.  And I guess

6    the easiest way is to just jump right into the questions that

7    caused a problem.  There's some objections here.  And the

8    witness, which was Mr. Kabins, was instructed not to answer

9    during the course of the taking of his deposition.

10             Let me ask, in the course of consultation has there

11   been any resolution as to any of these questions or are they

12   all still at issue?

13             MR. GIBSON:  I can speak at some level of that, Your

14   Honor.

15             THE COURT:  Okay.

16             MR. GIBSON:  We did have, I think, substantive meet

17   and confers.  And I think that during the course of that

18   substantive meet and confer Mr. Bowers and I, I think,

19   reached some analytical understanding on some things.  I

20   would only comment one thing, Your Honor, is that I have

21   instructed most, if not all, I think except for one question

22   was an instruction not for the -- the witness not to answer

23   the question to the extent that it involved the

24   attorney/client communication.  And --

25             THE COURT:  So how does that -- how does that

1    operate in the taking of a deposition then?  Does the -- does

2    your client then have to decide whether it reaches

3    attorney/client privilege, or do you consult, as the rule

4    would require and then answers are given?

5            MR. GIBSON:  That -- I think that's exactly right,

6    Your Honor.  The --

7            THE COURT:  That was an alterative.

8            MR. GIBSON:  The -- well no --

9            THE COURT:  Which one did you follow?

10           MR. GIBSON:  Well, no -- and it was effectively the

11   combination, Your Honor --

12           THE COURT:  Yes.

13           MR. GIBSON:  -- despite defendants' counsels' rather

14   inappropriate laughter a moment ago.  I think that the --

15           THE COURT:  That's okay, I joined in.

16           MR. GIBSON:  Your Honor's laughter is something I'm

17   never going to comment on.

18           THE COURT:  That's okay.

19           MR. GIBSON:  The process is, of course, Your Honor,

20   that if I sense that there is an area of inquiry that involves

21   an attorney/client communication, but perhaps does not involve

22   an attorney/client communication, then I need to tell the

23   witness don't answer that question to the extent that it

24   reveals an attorney/client communication.  And of course,

25   during the course of the deposition he did want to consult

1   with me and we did consult to the extent that it involved an

2   attorney/client communication.

3          So I think that the answer, while your -- your

4   question was in the alternative, I think that it operated in

5   both regards.

6          THE COURT:  Okay.  I just wanted to make sure that

7   there was an attempt here by you to say whoa, Judge, I didn't

8   make these decisions, the client did, because if he did I

9   really need him present because I want to parse this out so

10  that we can get some results.

11         MR. GIBSON:  And we're -- we would be delighted to

12  have the witness appear before Your Honor to further parse it

13  out, but the answer to the question is that ultimately Dr.

14  Kabins, to the extent that he could, on the witness stand

15  after consulting with counsel appropriately and -- had to

16  make some decision as to whether or not he could reveal the

17  information.

18         Now the other thing, Your Honor, is that we tried

19  to hold down consultation between witness and counsel as

20  much as possible.  And to the extent that the witness felt

21  that he could or could not answer the question, then I didn't

22  want to be accused of coaching the witness either and

23  obstructing the deposition.  And so Dr. Kabins understood

24  that many, if not all of these questions effectively sought

25  legal conclusions as well.  And I think that when I have a

 1  further opportunity to speak after Mr. Bowers maybe perhaps

 2  makes his argument, I'm prepared to go through each and every

 3  one of these questions and demonstrate why the questions could

 4  have been phrased in a very different way.

 5          THE COURT:  Okay.  We'll talk about that.  We'll

 6  talk about that.

 7          My question was really to the substance of

 8  consultation before the filing of the motion and where that

 9  might have rounded some edges and cut some things out.

10          Are we getting okay, Jerry, on the record?

11          THE CLERK:  Yes, Your Honor, we are.

12          THE COURT:  Thank you.

13          Mr. Bowers, did you want to speak in regard to that

14  question, the consultation impact on this?

15          MR. BOWERS:  I'd like to directly answer your

16  question first, which is these questions remain outstanding.

17          THE COURT:  Okay.

18          MR. BOWERS:  And if I may just briefly comment on a

19  point counsel raised.

20          Our -- my contention is not that counsel was

21  coaching the witness.  However, it appeared, through the

22  course of this deposition, that when the instruction was

23  given, to the extent that it violates the privilege, that was

24  a -- that was the instruction taken by Mr. Kabins to mean --

25  I'm, again, not of counsel urging, but as a result the

1  process was -- Dr. Kabins' response was I'm not answering

2  that.  And I think as we go through these you'll see some of

3  those where, you know, that -- he just simply, when he hears

4  that, and says I'm not answering that question.

5              THE COURT:  Okay.

6              MR. BOWERS:  Thank you, Your Honor.

7              MR. GIBSON:  May I respond to that point, Your

8  Honor?

9              THE COURT:  I don't think you need to.

10             MR. GIBSON:  Okay.

11             THE COURT:  Let's just deal with some of the

12 individual questions here and the -- whether or not they need

13 to be answered.  I think that will get us to the result

14 faster.

15             Is it easier to work out of the materials in the

16 motion or the response?

17             MR. GIBSON:  May I speak to that, Your Honor?

18             THE COURT:  Sure.

19             MR. GIBSON:  On page --

20             THE COURT:  Whatever's going to be easiest.

21             MR. GIBSON:  On page 16 of actually defendants'

22 initial motion, they list 26 areas of questions up through

23 page 18.

24             THE COURT:  I don't want areas of questions, I want

25 specific questions.

 1           MR. GIBSON:  Yeah, and that -- and so that -- that's

 2  part of the problem.  For example --

 3           THE COURT:  Okay.  Where's the easiest place to find

 4  the specific questions that were asked?

 5           MR. GIBSON:  And I think that's -- that's a very

 6  good question, Your Honor, because what you have before you is

 7  not clear as to what specific questions need to be answered,

 8  given the presentation of defendants' motion.

 9           THE COURT:  Okay.  What about your opposition?  Does

10  it capture the language?

11           MR. GIBSON:  We -- my opposition does, in fact,

12  Your Honor, detail all the questions that appear to be at

13  issue, but I don't want to prejudice the defendant.  This is

14  defendants' motion.  I think it's incumbent upon defendants

15  to point out the specific questions that they want answered,

16  Your Honor.

17           THE COURT:  Okay.  That's fine.

18           Mr. Bowers, you want to lead out?

19           MR. BOWERS:  Whichever you prefer, Your Honor.  We

20  can work from page 16 of the motion or page 7 of the response,

21  however Your Court would like to handle it.

22           THE COURT:  Okay.  On page 16 of the motion, which

23  is Document 247 at line 10, I see that number 1 is, quote:

24      "Do you conduct regular meetings of the

25      partnership?"

_____
2:09-CV-1125-RCJ-RJJ        Kabins v. Chain        4/16/10        **Motions**

1          And then referencing page 19 of the transcript, I

2    assume.  Right?

3          MR. BOWERS:  Yes, Your Honor.

4          THE COURT:  Okay.  And then I see on page 7 of the

5    opposition, number 258 at line 1, disputed question, quote:

6          "Do you conduct regular meetings of the

7       partnership?"  End quote.

8          Sounds like they're the same.

9          MR. BOWERS:  Appears so to me, Your Honor.

10          THE COURT:  Okay.

11          MR. GIBSON:  On that question -- on that -- most of

12    the questions on 16 through 18 are, in fact, questions

13    phrased.  There are a few of them, however, that are not.

14          THE COURT:  Okay.

15          MR. GIBSON:  But I --

16          THE COURT:  And all of these were questions where

17    there was a refusal to answer?

18          MR. GIBSON:  No, Your Honor, there's -- I don't

19    believe there was ever a refusal to answer.

20          THE COURT:  Okay.

21          MR. GIBSON:  I believe that the answer was that it

22    implicated attorney/client privilege and that was the -- it's

23    not as if the witness stood there silently saying I refuse to

24    answer the question.

25          THE COURT:  What I meant, there was no assertion of

1    a privilege.  There was an answer given, answers were not

2    given.  In fact, the response was assertion of a privilege.

3              MR. GIBSON:  The response -- the response was that

4    the only way I could answer the question would be to reveal

5    an attorney/client communication, and that I believe is a --

6    is an appropriate answer, Your Honor.  In other words, the

7    answer was other than attorney/client privilege

8    communications, I cannot further answer the question, which

9    is in fact, responsive to the question because it's basically

10   saying I can't -- I don't have any information for you other

11   than my understanding of the dynamic between my attorney and

12   me.  And so I think that's very different, Your Honor,

13   because that -- that is a substantive articulation of what

14   facts there are.

15             There are no facts that I can relate to you, Mr.

16   Massi, other than what would be implicated by the

17   attorney/client privilege.  I believe that that's more of an

18   answer than merely saying, well, I'm only claiming

19   privilege.

20             THE COURT:  Okay.  Let's try this out a little bit

21   here.  Let's take the first question.

22             "Do you conduct regular meetings of the

23        partnership."

24             So I'm now looking at the attachment to the motion,

25   which includes the portions of the transcript.  Okay.

_____

```
 1            So I look at that, and we're at line 20 of page 19
 2   and I see:
 3            "Question:  Do you conduct regular meetings of the
 4       partnership?
 5            "Answer:  Move -- Move on.
 6            "Mr. Gibson:  I renew all my objections I made.
 7            "By Mr. Massey.  Go ahead.
 8            "Answer:  I would move on.
 9            "Question:  Why?
10            "Because as stated, attorney/client privilege."
11            MR. GIBSON:  And, Your Honor, what you don't have
12   is pages 17 through 18, which were the prior comparable
13   questions that dealt with the existence of the partnership
14   and the discussion of the fact that, that whether -- which
15   partnership they're talking about, whether or not --
16            THE COURT:  Okay.  Let's stop there because I want
17   to take these one by one.  Okay.  So when the question is
18   asked on line 20 of page 19 of the transcript and it says do
19   you conduct regular meetings of the partnership?  Mr. Kabins
20   did not understand which partnership it was.  Is that right?
21   Is that what you're saying?
22            MR. GIBSON:  Well, no, I didn't say that.  I --
23            THE COURT:  Well, you said we don't know which
24   partnership it is.
25            MR. GIBSON:  Well, that and --
```

```
 1                THE COURT:  Do I need to play that back for you?
 2                MR. GIBSON:  No.  And that --
 3                THE COURT:  Okay.  Then let's --
 4                MR. GIBSON:  No, but that's involved, but that's not
 5    the extent of it, Your Honor.  And that involved --
 6                THE COURT:  I want to take these one at a time.
 7    That was your first assertion.  He didn't know which
 8    partnership this was.
 9                MR. GIBSON:  Well, I want to say that that's what I
10    believe at the time may very well have been going through Dr.
11    Kabins' mind.
12                THE COURT:  I don't want supposition.  You filed a
13    response.
14                MR. GIBSON:  And that's --
15                THE COURT:  I don't see an affidavit from Dr. Kabins
16    saying what the problem is with this one.  Okay.
17                MR. GIBSON:  And Your Honor --
18                THE COURT:  So I'm going to go on the record --
19                MR. GIBSON:  And that's fine, Your Honor.
20                THE COURT:  -- and you've raised a question that he
21    didn't know which partnership it was.
22                MR. GIBSON:  Well, my --
23                THE COURT:  And I'm saying where is that solidified
24    in your opposition or in the record that's before the Court?
25                MR. GIBSON:  And part of my point, Your Honor, is
```

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 466-4148 - gayle@nwranscripts.com                14

1   that what -- why this question involves an attorney/client --

2   I should have phrased that more carefully, and I apologize,

3   Your Honor.

4           THE COURT:  That's okay.  I'm going to take this

5   piece by piece --

6           MR. GIBSON:  And I -- and I appreciate that.

7           THE COURT:  -- and we'll just parcel it, split it

8   up --

9           MR. GIBSON:  And my -- my --

10          THE COURT:  -- slice and dice it and then we'll get

11  answers.

12          MR. GIBSON:  -- and the argument that we were

13  making --

14          THE COURT:  So is there any question as to what

15  partnership is being referred to in the question at line 20 on

16  page 19 of the deposition transcript?

17          MR. GIBSON:  I think the answer to that question,

18  Your Honor, is certainly yes, but our argument, Your Honor,

19  is that this implicates an attorney/client privilege at

20  several levels.

21          THE COURT:  I'm not at that yet.

22          MR. GIBSON:  Okay.

23          THE COURT:  I only want to establish, is there a

24  question as to which partnership this question is talking

25  about.

1          MR. GIBSON:  In terms of that particular question,
2   the answer is yes --
3          THE COURT:  Okay.
4          MR. GIBSON:  -- there would be a question.
5          THE COURT:  There's an ambiguity?
6          MR. GIBSON:  If we move on to number 2 --
7          THE COURT:  No, let's --
8          MR. GIBSON:  Right.
9          THE COURT:  -- just stay with the first one here.
10         MR. GIBSON:  Right.
11         THE COURT:  You say there's a question as to which
12  partnership is involved.  Okay.
13         MR. GIBSON:  That's right.
14         THE COURT:  Okay.  Did you talk --
15         MR. GIBSON:  At a minimum.
16         THE COURT:  -- did you talk with counsel about that
17  issue, either at the deposition or in the personal
18  consultation regarding the motion?
19         MR. GIBSON:  We did.
20         THE COURT:  And where is that memorialized?
21         MR. GIBSON:  I -- we did not memorialize the meet
22  and confer, Your Honor.
23         THE COURT:  Tell me what the discussion in the meet
24  and confer was in regard to the ambiguity in the question at
25  line 20 of page 19 of the transcript?

```
1              MR. GIBSON:  Sure.

2              THE COURT:  What was the discussion?

3              MR. GIBSON:  The discussion centered on whether or

4    not this involved the potentiality reasonably of an

5    attorney/client privilege.

6              THE COURT:  No, no, no, no, no.  You've asserted

7    that there's a question as to an ambiguity regarding which

8    partnership this question is about.

9              MR. GIBSON:  And -- and --

10             THE COURT:  Can I finish?

11             MR. GIBSON:  Sure.

12             THE COURT:  Then I'll give you a chance without

13   interruption.  I promise.

14             MR. GIBSON:  I understand, Your Honor.

15             THE COURT:  Okay.  I just want to deal with that

16   single issue.  I want to know what the discussion was about

17   the uncertainty, the confusion or the ambiguity as to what

18   partnership meant.

19             MR. GIBSON:  That was not the focus --

20             THE COURT:  It was not discussed in the personal

21   consultation?

22             MR. GIBSON:  That -- that -- Your Honor, if I may?

23             THE COURT:  Well, --

24             MR. GIBSON:  That --

25             THE COURT:  -- you're saying not.
```

```
 1              MR. GIBSON:  No.

 2              THE COURT:  Not sounds like no.

 3              MR. GIBSON:  But, no --

 4              THE COURT:  That's a quick answer.  I don't want to

 5   stray into another field of discussion.

 6              MR. GIBSON:  Your Honor, if you'll  --

 7              THE COURT:  Was it discussed in the personal

 8   consultation that there's an ambiguity or a misunderstanding

 9   as to what the partnership meant?

10              MR. GIBSON:  Within the context of the

11   attorney/client privilege.  Yes.

12              THE COURT:  No, not within anything.  In the

13   personal consultation was that raised as an issue?

14              MR. GIBSON:  Independent of the attorney/client

15   privilege, no.

16              THE COURT:  Just yes or no.  Was it discussed that

17   there's an --

18              MR. GIBSON:  It was --

19              THE COURT:  -- ambiguity or question --

20              MR. GIBSON:  -- it was discussed.

21              THE COURT:  -- as to which partnership?

22              MR. GIBSON:  It was discussed.

23              THE COURT:  Okay.  Tell me what the discussion was.

24              MR. GIBSON:  As I was trying to do, Your Honor, it

25   was discussed within the context of the attorney/client
```

```
 1   privilege.
 2            THE COURT:  How?  I want to get to this issue.
 3   You see you raised multiple issues.  You've just raised
 4   there's a question or ambiguity as to what partnership this
 5   is.  There's a second issue as to whether attorney/client
 6   privilege applies.
 7            MR. GIBSON:  I think that there --
 8            THE COURT:  There may be --
 9            MR. GIBSON:  Sorry, Your Honor.
10            THE COURT:  Is this hard to do?
11            MR. GIBSON:  Sorry, Your Honor.
12            THE COURT:  Okay.  It may be that there are other
13   issues.  And so what you do is you take these things one
14   layer at a time, at least that's the -- that's the simple way
15   my mind does it.  Okay?  And so that's where I'm at.  I don't
16   want to talk about attorney/client privilege, I don't want to
17   talk about any of those other levels.  I want to talk about
18   the question as to what partnership in the simple language
19   that we've often heard, what does partnership mean here?  And
20   my question is, was that part of the discussion --
21            MR. GIBSON:  That --
22            THE COURT:  -- as to what --
23            MR. GIBSON:  Sorry.  I thought you were done, Your
24   Honor.
25            THE COURT:  Well, I'm going to now pose the
```

1   question.  Was it discussed as to what partnership meant in

2   the question asked at line 20 of page 19 of the deposition

3   transcript?

4          MR. GIBSON:  Yes.

5          THE COURT:  Okay.  What was the discussion about

6   that confusion, ambiguity, and maybe you could tell me what

7   it is?  Is it an ambiguity, is it a confusion, what -- what

8   was it?

9          MR. GIBSON:  It is --

10          THE COURT:  And you started to say -- excuse me

11   for interrupting, but I just want to kind of clarify that

12   I'm following you, that your client may have been or may

13   have had a subjective problem with this.  That's not in the

14   opposition.

15          MR. GIBSON:  I understand, Your Honor.

16          THE COURT:  I can tell you.  I've read the

17   opposition, it's not there.

18          MR. GIBSON:  I understand.

19          THE COURT:  So I don't want supposition.  There's no

20   affidavit from your client.  What is the problem in regard to

21   the partnership?

22          MR. GIBSON:  The problem with regard to the

23   partnership is that it invites an attorney/client privilege

24   communication.  That's the problem with the partnership.

25          THE COURT:  That's -- okay, that's not the issue I'm

1  asking about, not the issue you've raised.  So there's no

2  question as to what partnership we mean in that question?

3          MR. GIBSON:  I think there is, but that's a --

4  that's not an issue that -- that's not an -- this discussion

5  is merely not about ambiguous questions.

6          THE COURT:  That's --

7          MR. GIBSON:  And I --

8          THE COURT:  That's the first level of it, though.

9          MR. GIBSON:  But we're not -- the object -- the

10  objection that I interposed and the instruction that I

11  interposed, Your Honor, was not, based -- I think I have --

12          THE COURT:  Okay.

13          MR. GIBSON:  -- no standing --

14          THE COURT:  Okay.  I think I'm getting it.  I think

15  I'm getting it.  You see an issue of ambiguity but it really

16  wasn't raised at the time of the deposition and it's not

17  before the Court today.

18          MR. GIBSON:  That is my -- that's exactly my point.

19          THE COURT:  Great.  We're past that point then.

20  We're past that point.

21          MR. GIBSON:  Now, Your Honor, to the extent  --

22          THE COURT:  So the only objection left then is

23  attorney/client privilege.

24          MR. GIBSON:  Yes, Your Honor.

25          THE COURT:  Okay.  Tell me -- tell me why the

1  question, do you conduct regular meetings of the partnership

2  invokes attorney/client privilege?

3            MR. GIBSON:  Thank you, Your Honor.

4            This question was designed -- it was -- it was not

5  a question on do you ever meet with your partners.  This is

6  a statutorily based type of question.  Is there -- is there --

7  are there --

8            THE COURT:  Based on what?  I'm not --

9            MR. GIBSON:  Well, the question -- the question is

10  what does he mean by -- and I -- we have to look at the

11  meaning of the question.  If you're in a corporate context or

12  in an entity context such as a limited partnership, the

13  question is one of law in terms of is this a regularly

14  required meeting that you have established.  And is that -- in

15  other words, if Dr. Kabins answered yes --

16            THE COURT:  I'm sorry, you just inserted required in

17  there, but the question doesn't talk about required.

18            MR. GIBSON:  And I understand that, but that -- in

19  the con -- I believe that in the -- that is a very reasonable

20  in the context -- the thrust of this question --

21            THE COURT:  You want to rewrite the question, is

22  that what you're telling me?

23            MR. GIBSON:  I think that -- I think that --

24            THE COURT:  Is that what you're telling Mr. Bowers

25  and his client?

1          MR. GIBSON:  I think that this question -- I think

2    this question 1 and 2 are probably Mr. Bowers --

3          THE COURT:  Just deal with one.  Just deal with one.

4          MR. GIBSON:  And I think that, Your Honor, to the

5    extent that 1 -- 1 may be the best question that he -- that he

6    asked in terms of being the least offensive question in terms

7    of the attorney/client privilege.  What I'm trying to explain,

8    Your Honor, is -- and if we look at the other questions it

9    will become even more readily apparent.  But on number 1, I

10   looked at the question in terms of a corporate limited

11   partnership background.

12         THE COURT:  Whoa, we're not dealing with the

13   corporation.

14         MR. GIBSON:  I --

15         THE COURT:  In fact it says partnership.

16         MR. GIBSON:  And that -- he was referring, as he did

17   in the second question, when he said the partnership --

18         THE COURT:  Just question 1.

19         MR. GIBSON:  I know.

20         THE COURT:  Just question 1, Mr. Gibson.  Don't

21   stray into number 2.

22         MR. GIBSON:  Well, Mr. Massi could have only been

23   asking about the limited partnership because that was the only

24   thing on the table in the context of the deposition, Your

25   Honor.  So in the context of the deposition it is this formal

 1  entity, this limited partnership that was being inquired

 2  about.

 3          THE COURT:  Okay.

 4          MR. GIBSON:  And so he is basically asking Dr.

 5  Kabins -- if Dr. Kabins says yes, we have regular meetings,

 6  he could be perjuring himself or being inaccurate as a matter

 7  of law.

 8          THE COURT:  Well, was perjury raised as an objection

 9  here?  I didn't see that anywhere.

10          MR. GIBSON:  No.  I'm saying if he answered the

11  question in that way.  I'm speaking hypothetically.

12          THE COURT:  Well, then that's not raised so that's

13  not on the table.  Let's just talk about what's on the table.

14          MR. GIBSON:  What's on the table is, is the position

15  that Mr. Massi put Dr. Kabins in with respect to this

16  question.  The position that Mr. Massi put Dr. Kabins in with

17  respect to this question was, can I answer this question yes

18  or can I answer this question no?  And I saw my client being

19  put in that position.

20          And if he answers the question yes, I saw the

21  shortcut to this is, this involves, potentially, an

22  attorney/client communication as to whether or not Dr. Kabins,

23  with his corporate counsel, talked about whether or not there

24  was actually regularly scheduled meetings pursuant to the

25  limited partnership requirements, any statutory requirements

1  that are there.

2        Now I'm not saying that Dr. Kabins could not have

3  answered this question.  He could have answered this question

4  but to the extent that, for example, his corporate counsel,

5  that I have not been, said these are, in fact, regularly

6  scheduled meetings as required by the limited partnership.

7  Or these are non-required meetings.  Or the meeting -- the

8  informal meetings that you've had are not the kind of regular

9  meetings what -- that might be required by the limited

10  partnership.

11        The question -- if the question was, did you ever

12  meet with any of your partners, that would not have imbued, in

13  my view, any attorney/client communication in terms of what

14  connotes a regular meeting within the prescriptions of the

15  limited partnership.  I think that's a very different context

16  and I think that Dr. Kabins should have -- can and should have

17  answered that question without any instruction about an

18  attorney/client privilege.

19        THE COURT:  Amazing.  Did that end up on the record,

20  my comment, amazing, 'cause that's my comment to that whole

21  discussion.  Why don't you be seated.

22        Mr. Bowers, anything on question 1?

23        MR. BOWERS:  I would only answer that I think Dr.

24  Kabins could have answered that yes, no, or I don't know,

25  without involving any attorney communication whatsoever.  And

1    I would say even had Dr. Kabins been directed by a lawyer to

2    hold regular meetings or not hold regular meetings, a yes, no,

3    or I don't know answer would not, in any way, invade that

4    privilege.

5            THE COURT:  Anything in response, Mr. Gibson?

6            MR. GIBSON:  No, Your Honor.

7            THE COURT:  Thank you.

8            Let me just ask this if I could, Mr. Gibson, 'cause

9    that'll -- that will help us all as we go forward.  Give me

10   your definition of attorney/client privilege and then the

11   elements that must be shown to demonstrate attorney/client

12   privilege applies to information.

13           MR. GIBSON:  Yes, Your Honor.  And this is actually

14   consistent I think also with the _Ruehl_ [phonetic] case.

15   There's got -- there has to be, one, an attorney/client

16   relationship present, and at a minimum, two, the communication

17   has to be within the scope of that attorney/client

18   communication or a confidential communication that's

19   associated with that relationship between the attorney and the

20   client.

21           THE COURT:  That's all?  Is that all?

22           MR. GIBSON:  I believe that that encapsulizes what

23   is required for these purposes, Your Honor.

24           THE COURT:  Okay.  All right.  In the Ninth Circuit

25   there's actually more elements to it than that, and there's

1    some good case law that's outlined that.

2              Let me do this 'cause we'll just deal with these one

3    at a time.  Normally I would just accumulate things and then

4    we'd just deal with them all at the end.

5              In regard to the argument here that the question

6    number 1, "Do you conduct regular meetings of the

7    partnership," somehow invokes attorney/client privilege is

8    absolutely bogus in the opinion of this Court, and is a

9    frivolous objection.  It does not comply with any portion of

10   Rule 30 and was not appropriately made on the record.

11             Let's go to question number 2.  Number 2 in the

12   motion at page 16 says:

13             "Are there regular meetings set for the conduct of

14        the business of the partnership known as the Kabins

15        Family Limited Partnership?"

16             On page 7 of the opposition, the question is

17   captured as quote:

18             "Are there regular meetings set for the conduct of

19        the business of the partnership known as the Kabins

20        Family Limited Partnership?"  End quote.

21             Mr. Gibson, what was the response to this particular

22   question?

23             MR. GIBSON:  Again, Your Honor, to the extent that

24   it involved an attorney/client communication, the witness

25   should not answer the question.  And if this was not an

1  instruction wholesale not to answer the question.

2           THE COURT:  Okay.  Let's go back and capture what

3  the response actually was.  So let's see --

4           MR. GIBSON:  Oh, the response -- the response -- I'm

5  sorry, I didn't -- I wanted -- I didn't know if you meant my

6  objection in part in response, Your Honor.

7           THE COURT:  Okay.  Let's go find the question then.

8           MR. GIBSON:  The response was I would say move on

9  again.  It requires attorney/client privilege.

10          THE COURT:  The question starts at line 24 on page

11 20 of the transcript of the deposition and goes to page 21.

12 On line 2 of page 21 Mr. Gibson, quote:

13          "Objection.  Ambiguous."

14          What is ambiguous about the question?

15          MR. GIBSON:  Well, it's -- one is -- actually

16 you're right, Your Honor.  The first is, this whole -- whole

17 notion of what is a regular meeting and how they're set.  I

18 believed, when I made that objection, that I was -- I believe

19 that he was asking whether or not these are required regular

20 meetings mandatorily set by some, either contract or legal

21 principle, either statute or by the operating provisions of

22 the agreement.

23          THE COURT:  Okay.  Let me ask you a question.  Under

24 Rule 30 is ambiguity an appropriate objection to a question?

25 What does Rule 30 say?

1            MR. GIBSON:  I understand your concern with the

2    speaking objection here, Your Honor.

3            THE COURT:  My question was, what does Rule 30 say?

4    Does it give ambiguity as an appropriate objection to a

5    question in the taking of a deposition?

6            MR. GIBSON:  I think that the actual prescription --

7            THE COURT:  Point me to the --

8            MR. GIBSON:  -- or the answer's --

9            THE COURT:  -- section of the rule.

10           MR. GIBSON:  The answer's no, Your Honor.  Rule 30

11   per se does not provide ambiguity.  By the language of Rule 30

12   does not provide ambiguity as an appropriate objection.  I

13   believe that --

14           THE COURT:  So where do you get the authority to

15   interrupt the taking of a deposition by asserting ambiguous?

16           MR. GIBSON:  I believe that my reading of cases

17   such as the *In Re: Strassford* [phonetic] case, which I don't

18   have before Your Honor because it's not been -- there's been

19   no claim in defendants' motion as to the impropriety of any

20   of the objections, per se, so we did not brief that issue

21   out.

22           THE COURT:  You're not dealing with -- you're not

23   dealing now with the -- only what's been raised by the defense

24   here.  You're facing the Court --

25           MR. GIBSON:  I understand.

_____

```
1           THE COURT:  -- and the Court is searching a
2    transcript, and I am looking at the language that you put on
3    the record in that taking of the transcript.
4           MR. GIBSON:  I understand, Your Honor.
5           THE COURT:  And I'm now asking you, where's your
6    authority to assert that objection during the taking of a
7    deposition.
8           MR. GIBSON:  I believe that the case law in
9    interpreting Rule 30 may very well provide me --
10          THE COURT:  You show it --
11          MR. GIBSON:  I did not bring that case law with me,
12   Your Honor.
13          THE COURT:  That's fine.  We'll take a break and you
14   get it.
15          MR. GIBSON:  Okay.
16          THE COURT:  I -- we're going to parse this out today
17   and get to the end of this.  Okay.
18          MR. GIBSON:  Okay.
19          THE COURT:  We'll just take a brief recess.  You
20   got a BlackBerry or something so you can call that up or a
21   laptop?
22          MR. GIBSON:  I don't -- I did not -- I'd have to go
23   back to my office and research the case.
24          THE COURT:  You make a call and get some help then.
25   We're going to get this thing done today.  This -- what I've
```

1  seen so far is absolutely frivolous.  Now I don't know what

2  you project as to where you want to end up at the end of this

3  whole exercise, but I can tell you this, you're not helping

4  your client or yourself in what you're doing here --

5              MR. GIBSON:  I --

6              THE COURT:  -- at least what you've done so far.

7  This is an absolute waste of time for all of these attorneys

8  and for the Court and for you and your client.

9              MR. GIBSON:  I understand what you're saying, Your

10  Honor.

11             THE COURT:  What you've just told me is, there's no

12  authority in Rule 30 to assert an objection and interrupt the

13  taking of a deposition by a claim of ambiguous.

14             MR. GIBSON:  I believe that the case law that

15  interprets Rule 30 permits appropriate objections to

16  questions, if they're in the vein of harassing, if they're --

17  that --

18             THE COURT:  The objection's ambiguous.

19             MR. GIBSON:  I understand, Your Honor.  And this is

20  in the context of --

21             THE COURT:  Ambiguity --

22             MR. GIBSON:  I'm sorry.

23             THE COURT:  -- ambiguity is covered in those cases,

24  'cause I don't see those cases in your brief.

25             MR. GIBSON:  I -- that -- because the -- that was

1  not at issue, Your Honor, by defendant's motion.  Defendant's

2  motion was centered on whether or not Dr. Kabins needed to

3  answer these questions.  Dr. Kabins -- I did not -- I did not

4  instruct -- I did not instruct Dr. Kabins to answer this

5  question.  I was -- I thought that I did, but on this one I

6  actually did not indicate any instruction to Dr. Kabins not

7  to answer the question on the basis of attorney/client

8  privilege.  I indicated it calls for a legal conclusion, and

9  in that vein he indicated, on his own, that his answer would

10 have involved an attorney/client privilege.  And so I would --

11 I would agree, Your Honor, to the extent that the witness'

12 answer to this question was this -- this --

13         THE COURT:  Let's do this.  I'm going to save you

14 some time and some trouble and maybe some embarrassment today.

15 All right?

16         MR. GIBSON:  Yes, Your Honor.

17         THE COURT:  If that's possible.

18         It's the order of the Court at this time that the

19 motion, number 247, is granted in its entirety.  Mr. Kabins

20 is to sit for the taking of his deposition and these questions

21 will be answered, as well as any of those that reasonably flow

22 from them.  There is no time limit on the conclusion of this

23 deposition.

24         I believe there was a request for the appointment of

25 a special master to supervise the taking of the deposition.

```
 1  Is that correct?

 2          MR. BOWERS:  Yes, Your Honor, that is correct.

 3          THE COURT:  Mr. Gibson, did you want to say anything

 4  about that request?

 5          MR. GIBSON:  No, Your Honor.

 6          THE COURT:  That request is denied.  The Magistrate

 7  Judge will supervise the taking of the deposition.

 8          The deposition will be set to take place here in the

 9  Lloyd D. George United States Courthouse.  We can make this

10  courtroom or another room next door available for it.  It will

11  occur during normal business hours of the court, during normal

12  judicial days of the court.

13          How soon can arrangements be made to take the

14  deposition?

15          MR. GIBSON:  We will commence immediately to talk to

16  Dr. Kabins and provide counsel with dates as soon as possible,

17  Your Honor.

18          THE COURT:  What's the discovery situation in the

19  case right now?  Let me get that on the record first.  Where

20  do things stand in regard to discovery in the case?

21          MR. GIBSON:  We've gone through the initial case

22  conference, Your Honor.

23          THE COURT:  What's -- okay.

24          MR. GIBSON:  And written discovery is about to be

25  sent.
```

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 466-4148 - gayle@nwranscripts.com

```
 1              THE COURT:  Okay.  All right.

 2              Mr. Spilotro --

 3              MR. SPILOTRO:  Yes.  Yes, Your Honor.

 4              THE COURT:  -- you had something here?  You're not

 5    counsel of record in this case.

 6              MR. SPILOTRO:  No, but I am his personal attorney,

 7    Your Honor.

 8              THE COURT:  That's nice.

 9              MR. SPILOTRO:  No, I understand.

10              THE COURT:  But --

11              MR. SPILOTRO:  And obviously I was his -- also

12    counsel on the criminal matter with Dr. Kabins that was in

13    front of --

14              THE COURT:  I understand.  That's closed now as I

15    understand it.

16              MR. SPILOTRO:  No, and I -- Yes.  What I wanted --

17              THE COURT:  Yes or no?

18              MR. SPILOTRO:  Yes, it is.

19              THE COURT:  Okay.  He's been sentenced?

20              MR. SPILOTRO:  Yes, sentencing has occurred.

21              THE COURT:  Okay.

22              MR. SPILOTRO:  What I wanted to advise the Court,

23    you know, scheduling this deposition, my purpose in being

24    there --

25              THE COURT:  Yes.
```

1          MR. SPILOTRO:  -- was in regards to the criminal

2    case.  And I received the accommodation of Mr. Massi and

3    everyone involved.  My concern was is whether any questions

4    would go into that criminal investigation because regardless,

5    I believe this deposition, I don't know if it was taken

6    before sentencing or after, but there's still separate

7    sovereignty issues, Fifth Amendment concerns, et cetera.

8          So they said we're not -- we won't go into that.

9    We've been litigating this over in state court and other

10   civil cases that involve Dr. Kabins.  And --

11         THE COURT:  All right.  I have several others with

12   his involvement either as a witness or a party.

13         MR. SPILOTRO:  Yes.  And I think I have some may be

14   before Your Honor that have been filed.

15         THE COURT:  Mm-hmm.

16         MR. SPILOTRO:  And the rulings there have been, you

17   know, you get asked about the conviction, the date of

18   conviction and what the conviction was.

19         So with this deposition that you're scheduling, that

20   was my only purpose of being at this deposition, Your Honor,

21   so you know.  And so my concern is, is whether that

22   accommodation will still be made that when we reconvene this

23   deposition that that would be the case, or if I have to worry

24   about them getting questions regarding that --

25         THE COURT:  What would -- that what would be the

```
1    case?

2            MR. SPILOTRO:  The criminal investigation.

3            THE COURT:  It's not a factor.  The case is closed.

4    Right?

5            MR. SPILOTRO:  Well --

6            THE COURT:  Jeopardy has attached.

7            MR. SPILOTRO:  As far as federal, Your Honor.

8    There's still state jeopardy that may attach.

9            THE COURT:  Is the state considering the

10   presentation of a charge?

11           MR. SPILOTRO:  My reading is the case -- case law,

12   and as I have briefed, it's -- it's as long as it may

13   incriminate him, even if there is no threat of prosecution

14   you may validly assert a Fifth Amendment privilege.  So --

15           THE COURT:  Okay.  As to the questions that are at

16   issue in this particular motion, do any of them trigger

17   potential --

18           MR. SPILOTRO:  No.  No, these questions do not.

19           THE COURT:  Okay.

20           MR. SPILOTRO:  So no, but my point is, is if this

21   deposition -- you must also understand this.  My understanding

22   was, is I don't know that that deposition really was

23   concluded.  They were going to ask more questions.  I mean

24   this is going to go on and on.  So my question is, is do I

25   have that same accommodation regarding the criminal
```

 1   investigation or whether that should be something either I

 2   file for a protective order or that we deal with, you know,

 3   prior to sitting down for this deposition.  That's my

 4   concern, Your Honor.  It's for judicial economy as much as

 5   anything, otherwise we're gonna sit in a deposition for I

 6   don't know how long and I may be asserting Fifth and taking

 7   contempts or not taking contempts.

 8          THE COURT:  Actually you won't assert the Fifth.

 9   Your client would assert the Fifth.

10          MR. SPILOTRO:  Yeah, the -- or I would instruct him

11   to.

12          THE COURT:  And no one will hold you in contempt.

13          MR. SPILOTRO:  No, I understand.

14          THE COURT:  We'll just move the case forward here.

15          MR. SPILOTRO:  I understand.  So anyway, that --

16   that was my question is whether that same accommodation is

17   going to occur.

18          THE COURT:  So the question is what, will you be

19   able to attend the taking of the deposition and assert, or

20   help him assert any of his rights in regard to the criminal

21   case, or potential criminal case?

22          MR. SPILOTRO:  Yes, Your Honor, if need be.

23   However, if they're giving the accommodation that that's --

24   they're not going into those areas, then it's a non-issue.

25          THE COURT:  Okay.

1           MR. SPILOTRO:  As it was as we sat through this

2    deposition it really was a non-issue --

3           THE COURT:  Okay.

4           MR. SPILOTRO:  -- based on the agreement of the

5    defense counsel.

6           THE COURT:  Mr. Bowers.

7           MR. BOWERS:  Can I -- if I first may answer.  I

8    believe the Court has a direct question pending to counsel.

9    And Mr. Massi apologized for not being here today, he's in

10   at a board reading for his daughter's university he sits on

11   or something.  But he explicitly instructed me that if the

12   order of this Court involved a continuation of the

13   deposition of Dr. Kabins that he would make himself

14   available at the convenience of the hearing masters, or in

15   this instance Your Honor or whatever mechanism Your Honor

16   has in place to provide it.  So the answer to the Court's

17   question, we will be here with bells on as soon as the Court

18   would like us here.

19          I appreciate Mr. Spilotro standing up and I do think

20   this is a point that needs some clarification.  As I

21   understand it, there was a specific agreement between the

22   parties not to go into Dr. Kabins' criminal issues, if we can

23   call it that in a broad scope at the time of this hearing

24   because Mr. Spilotro I believe anticipated that they would be

25   resolved at the conclusion of the federal case and Albert --

```
 1   Mr. Massi and Mr. Spilotro seemed to have an agreement on

 2   that.  And I'm not sure if that -- I'm stating that correctly

 3   or not, but that was my understanding.

 4             MR. SPILOTRO:  That is correct, Your Honor.

 5             MR. BOWERS:  Okay.  And then my further

 6   understanding as we're sitting here today, Mr. Spilotro is

 7   taking the opportunity to advance clarify the record that

 8   the end of the federal criminal case may not clear this

 9   issue up, and we may have this same issue now again for

10   other potential reasons of jeopardy in state court or other

11   places.

12             MR. SPILOTRO:  That's correct.

13             MR. BOWERS:  Okay.  There has been no agreement

14   between the parties, I guess, now post-federal proceedings.  I

15   guess Al and Mr. Spilotro could talk, if they can come to an

16   agreement or if Mr. Spilotro would provide us with

17   limitations.  Maybe we need to bring that back before the

18   Court.  I don't know if there's an agreement going forward.

19             MR. SPILOTRO:  Well, I will speak to Mr. Massi, but

20   there's other defense counsel that need to be --

21             MR. BOWERS:  Heard on this issue.  Okay.

22             MR. SPILOTRO:  Your Honor, I'll have a meet and

23   confer with all defense counsel --

24             THE COURT:  Okay.

25             MR. SPILOTRO:  -- and see if I can straighten it
```

 1  out.

 2          THE COURT:  All right.

 3          MR. SPILOTRO:  And then proceed accordingly.

 4          THE COURT:  Okay.  Very good.

 5          In the sanctions that are available under Rule 37,

 6  one of those deals with the costs, including attorneys fees

 7  for bringing the motion.

 8          Mr. Bowers, how soon could you submit an affidavit,

 9  along with the necessary detail under Ninth Circuit law of

10  the costs and fees involved in bringing the motion?

11          MR. BOWERS:  I believe -- I apologize, Your Honor.

12          THE COURT:  That's okay.

13          MR. BOWERS:  I believe we could have that to you no

14  later than a week from Monday.  If that's too long for the

15  Court we could probably do it quicker, but --

16          THE COURT:  Okay.  That'd be fine.  That would be

17  the 26th of April then.

18          MR. BOWERS:  Okay, Your Honor.

19          THE COURT:  And Mr. Gibson, could you respond to

20  that within one week?

21          MR. GIBSON:  Yes, Your Honor.

22          THE COURT:  Okay.  That response would be due then

23  on or before May 3, 2010.  And then my assistant will be in

24  touch with your offices and set a time that would be available

25  to conduct a hearing because that's required under Rule 37.

1   Also if you'll just contact my chambers in regard to

2   scheduling the deposition.

3          Mr. Bowers, I assume you'll take the lead on that?

4          MR. BOWERS:  That would be fine, Your Honor.

5          THE COURT:  Okay.

6          MR. BOWERS:  Just so there's no unnecessary

7   contention, my intent would be to contact your chambers,

8   find dates that you're available, cross reference them with

9   what I have and then simply inform Mr. Gibson these are the

10   available dates that are mutually available.

11          THE COURT:  Yes.  That would be fine.  And my

12   intent is not to sit in on the taking of the deposition, but

13   I would want to be in the jurisdiction and available --

14          MR. BOWERS:  Thank you, Your Honor.

15          THE COURT:  -- to answer any questions immediately.

16   That will avoid continued collateral motion practice like

17   this, and enable the parties to get to a result.  Okay.

18          Anything further today?

19          MR. GIBSON:  One other thing, Your Honor.  I

20   believe I raised before Judge Pro the potentiality of a

21   conflict of interest on the part of Mr. Massi's office.  And

22   I believe that we're going to be filing very swiftly, after

23   we research and analyze that further, that motion, I just

24   wanted to go on record again to say that this is a continuing

25   concern on the part of the plaintiff and that we will attempt

1  to get that -- that -- to the extent that we -- after we

2  finalize our research and analysis on that, as Mr. Massi is

3  an equity holder, as we under -- is a continuing equity

4  holder in some of the defendants we have, and I've raised

5  this concern with Mr. Massi's office, an ongoing concern

6  with respect to a possible conflict of interest there.  And

7  I don't know if that will have any implication whatsoever on

8  the scheduling or taking of the deposition.  I would imagine

9  it would not, but I did want to raise again on the record our

10 concerns in that regard.

11         THE COURT:  And what is the basis of the

12 disqualification?

13         MR. GIBSON:  That there's a conflict of interest,

14 based upon Mr. Massi's status as an equity holder in the

15 entities potentially advancing his own selfish interest to

16 secure his participation in the economic proceeds of the

17 entities, other than the entities themselves is one concern.

18         Another concern is that does Mr. Massi have adequate

19 authority to be acting on behalf of the entities.

20         THE COURT:  Well, we always assume authority unless

21 there's -- there's something from the other side.  That's not

22 open to attack by counsel on the opposite side.  So --

23         MR. GIBSON:  He's --

24         THE COURT:  So let's just assume there's authority.

25         MR. GIBSON:  He's indicated --

1          THE COURT:  The question is whether there's a

2    conflict, it sounds like?

3          MR. GIBSON:  Well, the con -- part of the conflict

4    analysis will be whether or not -- the defendants have raised

5    the notion at times that Dr. Kabins is a controlling person

6    within these entities, or can effectuate control.  If Mr.

7    Massi is representing the entities that Dr. Kabins controls

8    and is engaged in this kind of adversarial process with Dr.

9    Kabins, that raises a specter of a potential conflict of

10   interest.  And that's something that we're finalizing our

11   analysis on.

12         THE COURT:  Which of these groups is he an equity

13   holder in?

14         MR. GIBSON:  I believe -- I believe, based upon the

15   last information that Gila Bend, Cipriani and Benessere are

16   where Mr. Massi holds an equity interest currently, based upon

17   last available information.

18         THE COURT:  Give me those three again, please.

19         MR. GIBSON:  That would be the Benessere entity,

20   Your Honor.

21         THE COURT:  Which one?

22         MR. GIBSON:  Benessere.

23         THE COURT:  Benessere.  Okay.  What else?

24         MR. GIBSON:  The Cipriani entity.  And when I use

25   the word entity, Your Honor, that is the -- not the management

1   company but the LLC.  All of these are non-management

2   companies.

3            THE COURT:  Okay.  Cipriani.

4            MR. GIBSON:  Yes, Your Honor.

5            THE COURT:  And what was the other one?

6            MR. GIBSON:  Gila Bend.

7            THE COURT:  Out here in the west we call that Gila.

8            Does anyone on the defense side know of these

9   ownership interests or equity interests?

10            MR. BOWERS:  I can speak briefly to that.  There are

11   a number of partners in all these entities.  I believe it is

12   an accurate statement that Mr. Massi has some equity interest

13   in those entities.

14            If I may, Your Honor, just to clarify the record,

15   Mr. Gibson's office -- and I believe it's only with me.  If

16   I'm wrong I guess he could correct the record.  But has

17   discussed generally the issue of authority, which it sounds

18   like we don't have to deal with, and this potential conflict

19   on a couple of occasions.

20            However, today is the first time I've heard anything

21   approaching an actual theory about what the conflict of

22   interest is.  So I appreciate that we now have that on the

23   record.  I've been told that it will be formally introduced to

24   it and we can deal with it.  But that's the first I've ever

25   heard of what it actually is.

1          MR. GIBSON:  I would take exception to that, Your

2    Honor.

3          THE COURT:  Okay.  Mr. Gibson, what further is

4    required before you can file the motion to disqualify?

5          MR. GIBSON:  I'm sorry, Your Honor?

6          THE COURT:  What further is required before you can

7    file the motion to disqualify?

8          MR. GIBSON:  I want to finalize our further research

9    on that issue, Your Honor.

10         THE COURT:  What does that mean?  Is it a legal

11   research question?

12         MR. GIBSON:  Yes, Your Honor.

13         THE COURT:  Is it a factual research question?

14         MR. GIBSON:  Yes, Your Honor.  Legal research.

15         THE COURT:  Legal research?

16         MR. GIBSON:  Yes, Your Honor.

17         THE COURT:  How soon can you file that motion?

18         MR. GIBSON:  We can file that motion within two

19   weeks, Your Honor.  Sooner if required.  Assuming, of course

20   that our legal research concretely supports the views that we

21   appear to be heading down.

22         THE COURT:  It will be the order of the Court then

23   that the plaintiff is to file that motion to disqualify

24   regarding Mr. Massi's participation in the case on or before

25   April 30, 2010, which is two weeks from today.

```
 1            MR. GIBSON:  Thank you, Your Honor.
 2            THE COURT:  The Court considers motions to
 3   disqualify a significant matter to be brought before the
 4   Court and always gives them a priority because of the
 5   potential that it has to impact the litigation.  Typically
 6   once those are filed a hearing will be set, briefing will be
 7   received, and then an appropriate action will take
 8   thereafter.
 9            Also, it's normal, when that motion's filed, that
10   it takes priority over everything else and essentially the
11   case is stayed at that point.  And I think we will be able to
12   move forward in regard to a hearing as to any sanctions
13   arising out of this particular motion to compel today.  But
14   other things may be in jeopardy.  It would also potentially
15   impact your scheduling.
16            MR. GIBSON:  Thank you, Your Honor.
17            THE COURT:  All right.  Anything further today?
18            MR. GIBSON:  No, Your Honor.
19            THE COURT:  Yes.
20            MS. IRSFELD:  Yes, Your Honor, just --
21            THE COURT:  That's okay.
22            MS. IRSFELD:  -- a question to clarify.  Would the
23   Court, along with Mr. Bowers' application for the Benessere
24   entities, would the Court entertain application by other
25   defendants who incurred significant fees of counsel, having
```

1   counsel attend the lengthy deposition?

2           THE COURT:  Absolutely.  I believe there was joinder

3   here --

4           MS. IRSFELD:  Yes, there was.

5           THE COURT:  -- of everybody.

6           MS. IRSFELD:  And I just wanted to clarify because

7   you'd asked Mr. Bowers.  Thank you.

8           THE COURT:  Absolutely.  And that was my intent.

9           MS. IRSFELD:  Thank you.

10          THE COURT:  Okay.  Anything further today?

11          COUNSEL:  No, Your Honor.  Thank you.

12          THE COURT:  Any chance of settling this case?

13          MR. GIBSON:  Open for settlement, Your Honor.  Open

14  for settlement discussions.

15          THE COURT:  Has a demand been made by the plaintiff?

16          MR. GIBSON:  I'm sorry?

17          THE COURT:  Has a demand been made by the plaintiff?

18  I always look to the plaintiff.

19          MR. GIBSON:  We did engage -- the answer is I

20  believe in the 26(f) conference that's required, settlement

21  discussions, we've advanced a construct for settlement that we

22  felt was very constructive.  And the part -- the problem, Your

23  Honor, is that we're dealing with a lot of different

24  defendants.

25          THE COURT:  Let me help you out, Mr. Gibson.  It was

```
 1    a simple question.  Have the parties had some discussion about
 2    settlement?  You said you're open to it.  I said has there
 3    been a demand by the plaintiff?  Yes or no, has there been a
 4    demand?
 5              MR. GIBSON:  In terms of that construct, no.
 6              THE COURT:  Okay.  That's all I wanted to ask.  It's
 7    hard to get settlement discussions going when the defendants
 8    never receive a demand from the plaintiff.
 9              We'll be in recess.
10              THE CLERK:  Please rise.
11              COUNSEL:  Thank you, Your Honor.
12              THE COURT:  Thank you.
13                PROCEEDINGS CONCLUDED AT 12:08:12 P.M.
14                      * * * * * * * * *
15
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATION**

I (WE) CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM
THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE
ABOVE-ENTITLED MATTER.

**NW TRANSCRIPTS, LLC**
**NEVADA DIVISION**
**P.O. BOX 890**
**NAMPA, IDAHO 83653-0890**
**(208) 466-4148**
**gayle@nwtranscripts.com**

/s/ Gayle Lutz
FEDERALLY CERTIFIED MANAGER/OWNER

Kari Riley                                    4/25/10
TRANSCRIBER                                   DATE