STEVEN A. GIBSON
Nevada Bar No. 6656
sgibson@gibsonlowry.com
J. SCOTT BURRIS
Nevada Bar No. 10529
sburris@gibsonlowry.com

GIBSON LOWRY BURRIS LLP
City Center West
7201 West Lake Mead Boulevard
Suite 503
Las Vegas, Nevada 89128
Telephone 702.541.7888
Facsimile 702.541.7899

*Attorneys for Plaintiffs and Dr. Kabins*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| KABINS FAMILY LLC, *et al.,* | Case No. 2:09-CV-1125-RCJ-RJJ |
| Plaintiffs, | |
| v. | |
| THE CHAIN CONSORTIUM, *et al.,* | **OBJECTIONS TO MAGISTRATE ORDER** |
| Defendants. | |
| AND RELATED ACTIONS | |

Movants, the Kabins Family, LLC ("Kabins Family"), the Lori C. Kabins Separate Property Trust ("Lori's Trust"), and Third-Party Defendant, Dr. Mark B. Kabins (collectively, "Movants"), by and through their counsel, Gibson Lowry Burris LLP, and pursuant to 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(a) and LR IB 3-1, submits Movants' objections to Magistrate Johnston's Order concerning the hearing of April 16, 2010 and the Order arising out of that hearing (Docket No. 266), held for the Motion to Compel (Docket No. 247) submitted by Albert Massi, Ltd. ("Massi Ltd."), counsel for Benessere, LLC ("Benessere"), Cipriani, LLC ("Cipriani"), Gila Bend 384, LLC ("Gila Bend"), Buckeye Canamex 77 One, LLC ("Buckeye

1  77"), and Buckeye 80 West Three, LLC ("Buckeye 80") (collectively, the "Massi Defendants" or

2  the "LLC Defendants"); and the Joinders filed William K. Skaggs, Esq., (Docket Nos. 249),

3  counsel for Gabriel Martinez, Esq., *et al.,* and Hanna C. Irsfeld, Esq. (Docket No. 250), counsel

4  for Mr. Edward Gutzman, *et al.*

5      Movants' Objections are based on the following Memorandum of Points and Authorities,

6  on the pleadings and papers on file herein, on the oral argument of counsel to be adduced at

7  hearing, and on any other matter this Court wishes to take into consideration.

8  ## OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES

9  **I.  INTRODUCTION**

10     The Order of the Magistrate should be vacated and Defendants' Motion to Compel

11 should be denied because the Magistrate's Order is clearly erroneous.  Massi Ltd., on behalf of

12 the Massi Defendants, moved to compel answers to 26 enumerated deposition questions (the

13 "Disputed Questions") to which Dr. Kabins, the deponent, had responded: (1) that he believed

14 his answers would involve attorney/client privileged communications; or (2) that Dr. Kabins

15 would need to ask one of his attorneys for the answer.[1]  Indeed, for many of the Disputed

16 Questions, Dr. Kabins told Mr. Massi specifically, not that Dr. Kabins was asserting

17 attorney/client privilege, but that the answer "requires attorney/client discussion in order to

18 provide an answer[.]"[2]  Thus, Dr. Kabins's precise answer was that he did not know, but he

19 could find out if he could ask one of his attorneys.  Indeed, Mr. Massi at one point asked, "Who

20 would know the answers to those questions[?]"[3]  Dr. Kabins responded by naming his attorneys

21 as Tina Wells, Mr. Gibson, Mr. Spilotro, and Mr. Chesnoff.[4]  Surprisingly, Magistrate Johnston

22 permitted oral argument, in part, for only the first two of those 26 Disputed Questions, which

23 appear potentially to have been Defendants' best examples in support of their Motion to Compel.

---

[1]  It appears that Dr. Kabins actually provided the non-privileged answer to Disputed Question No. 4.
However, the answer did not follow the question immediately, but Mr. Massi came back to the question.  *Compare
e.g.,* Motion to Compel, Docket No. 247-1 at 16:14, "4.  Who recommended to you that it be converted to an LLC?"
*with* Kabins Dep. ("Who would know the answers to those questions * * * Which attorneys do I ask?"  "A. Tina
Wells.")

[2]  *See, e.g.,* Ex. 2, Kabins Dep. at 26:24; Ex. 4, Kabins Decl. at ¶¶ 2, 4-5, 7.

[3]  Kabins Dep. 31:10-11.

[4]  Kabins Dep. 33:1-3.

2

1   However, even in those two questions, the Defendants' inartful deposition questions targeted

2   legal conclusions, legal analysis, and attorney/client communications for which Dr. Kabins

3   testified that he had consulted with counsel, or would need to consult with counsel, regarding

4   such questions.  At worst, instead of asserting privilege for some of the disputed questions, Dr.

5   Kabins might have answered, "I don't know, but you can ask my attorneys; they can provide that

6   information."[5]  Indeed, Dr. Kabins provided that answer in response to questions related to

7   Disputed Question Nos. 3 and 4.

8          Additionally, the Magistrate should have considered the fact that Mr. Massi caused the

9   premature deposition to be conducted on a Saturday (when the Court was closed) because Mr.

10  Massi had demanded that the deposition occur prior to Mr. Massi's February vacation (and prior

11  to the parties' exchange of Fed. R. Civ. P. 26(a) disclosures).[6]  As a result, the parties were

12  unable to contact the Court for instruction or guidance regarding any of the questions or answers

13  during normal business hours, which certainly would have happened if the deposition had taken

14  place in the normal course.

15         Unexpectedly, the Magistrate, *sua sponte,* raised an issue with Movants' counsel's

16  deposition objection of "ambiguity" when there appears to be no rule-based mechanism for un-

17  waiving such objections for the Defendants, and no rationale for considering such waived

18  objections in granting a motion to compel deposition answers based on attorney/client privilege.[7]

19  Notably, Chad Bowers, Esq. of Massi Ltd., counsel for the Massi Defendants, represented to the

20  Magistrate that the Defendants *did not* object to Movants' counsel's comments on the record

21  regarding the 26 questions at issue (despite certain allusions to objections in the Motion to

22  Compel); and, most notably, such objections are waived permanently if not made during the

23

24  [5]  *See, e.g.,* Kabins Dep. at 32:17.

25  [6]  Massi Ltd. first noticed the deposition for January 25, 2010 without consulting with Movants' counsel
    regarding an appropriate time or date.  Massi Ltd. knows that Dr. Kabins is a surgeon and cannot simply drop
26  everything on a moment's notice.  In any event, the only date that worked for *both* parties prior to Mr. Massi's
    February vacation was Saturday, January 30, 2010.  Massi should be admonished and sanctioned for
27  misrepresenting that the deposition occurred on a Saturday solely to accommodate the witness.  (*See, e.g.,* Docket
    No. 247-1 at p. 5:16-19 ("The Saturday was selected at Dr. Kabins' request. …. The deposition was held on a
28  Saturday at the request of Dr. Kabins, notwithstanding that Dr. Kabins was provided with dates between January 18,
    2010 and January 30, 2010.")

    [7]  Fed. R. Civ. P. R. 32(d)(3) (B).

                                          3

deposition.[8]  The Court should also be aware that the interrogator, Mr. Massi, is facing numerous apparent conflicts of interest (as well as a Motion to Disqualify Counsel), which tainted the deposition with an appearance of impropriety.  Finally, the Magistrate's sweeping relief in granting the Motion to Compel, in its entirety, while refusing to consider, or mention, argument regarding the remaining 24 questions at issue, went too far by: (1) ordering Dr. Kabins to be deposed "with no time limit" whatsoever; and, (2) ordering Dr. Kabins to answer every one of the 26 Disputed Questions and others arising out of those 26 Disputed Questions, apparently ordering Dr. Kabins to disclose attorney/client privileged information.  (Docket No. 266.)

In substance, when viewing the entire deposition transcript, it is clear that Mr. Massi intentionally asked questions aimed at making the witness uncomfortable, confused, intimidated, and embarrassed, after first lecturing the witness—as shown in the first 17 pages of the transcript—and inappropriately instructing the witness regarding how the witness should answer, *verbatim,* certain questions.  Indeed, Mr. Massi's questions often drifted far outside of the boundaries of fact-based questions and directly into known attorney/client privileged communications.  As a result, Movants respectfully request that the Order of the Magistrate be vacated, and the Motion to Compel be denied.

## II.    PROCEDURAL FACTS AND BACKGROUND

1.    On December 9, 2009, Massi Ltd., on behalf of Benessere, Cipriani, Gila Bend, Buckeye 77, and Buckeye 80, filed a Third-Party Complaint (TPC) against Dr. Mark B. Kabins, individually (Docket No. 177) without alleging how Dr. Kabins could be liable personally.

2.    Ironically, the TPC alleged that Dr. Kabins acted solely as the "authorized agent" for the Plaintiffs:

> 9. Third-Party Plaintiffs … allege that … [a]t all times relevant, Dr. Kabins was the authorized agent for Kabins Entities, fully authorized to enter into contracts, agreements and any courses of action on behalf of Kabins Entities.  That Dr. Kabins, as the fully authorized agent, was acting within the purpose and scope of that agency during all times alleged herein.

(Docket No. 177 at ¶ 9.)[9]

---

[8]  *Id.*

[9]  This oversight, on the part of the Massi Defendants, was something that Mr. Massi attempted to repair at the beginning of the deposition, which gave rise to the first two Disputed Questions subject to the Motion to Compel (which were also the only two questions for which the Magistrate permitted oral argument).

4

3.      On January 6, 2010, Massi Ltd., noticed a deposition for Dr. Mark B. Kabins for January 25, 2010 at 1:30 p.m., but Massi Ltd. had not first attempted to coordinate a deposition time or date with Movants' counsel.  (Ex. 1.)

4.      On January 12, 2010, Movants' counsel delivered (for the second time) Movants' counsel's objection to Massi Ltd.'s taking of any depositions before the parties had exchanged Fed. R. Civ. P. Rule 26(a) disclosures.  Nevertheless, Movants' counsel agreed to work in good faith to accommodate Massi Ltd.'s demand.  (Docket 280 at Ex. 1, Burris Decl. at ¶¶ 21-23.)

5.      On January 19, 2010, Dr. Kabins filed a Motion to Dismiss the Massi Defendants' TPC and Dr. Kabins pointed out the utter absence of: (1) allegations aimed at piercing the corporate veil; or (2) allegations that Dr. Kabins was a corporate fiduciary of the Defendants. (Docket No. 208.)

6.      On January 30, 2010, Mr. Massi deposed Dr. Mark B. Kabins with counsel for several groups of co-defendants also present.  (Ex. 2.)

7.      Movants' counsel's prior objections to the premature demand by Massi Ltd. to take Dr. Kabins's deposition prior to the exchange of Rule 26(a) disclosures was apparently joined by other defense counsel as between themselves:

> MR. SKAGGS: All right.  Let me try to start again.  I want to join Mr. Lovato's earlier objection that this deposition has been scheduled on a very accelerated rate.  As I understand it, the time for pre -- or for 26 disclosures is not even till Monday.  So for some reason that we've accelerated this deposition without even the benefit of other parties' disclosures.

(Kabins Dep. at 163:1-7.)

8.      Most notably, if Mr. Massi had not insisted on taking Dr. Kabins's deposition prior to Mr. Massi's February vacation (Docket No. 280-1, Burris Decl., at ¶¶ 21-22), the parties could have arranged a deposition during normal business hours and been able to call the Court in real time for instructions with respect to certain questions and answers.

9.      One such possible question arose near the very beginning of Dr. Kabins's deposition when Mr. Massi asked questions aimed at legal elements for piercing the corporate

5

veil (*e.g.*, failure to follow corporate formalities,[10] including conducting regularly scheduled or formal meetings[11]):

> Q   Do you know -- do you recall if [the Kabins Family, LLC] was formed within the last ten years?
> A   I don't remember the date it was formed, but I believe it was in the 1990s.
> * * *
> Q   Who -- was there an attorney that formed it for you?
> A   Yes.
> Q   Who?
> A   I believe it was in coordination with Greg Morris.  But I am not certain of that answer.
> Q   Do you know if it's a general or a limited partnership?
>        MR. GIBSON: Objection; calls for a legal conclusion.
> Q   You can answer.
> A   I don't know.
> Q   Who are the general partners?
> A   Myself and, and Lori Kabins.
> Q   Is that your wife?
> A   Correct.
> Q   How long have you been married?
> A   We've been married since 1986.
> Q   Is it -- do you know if it's a partnership that can, by its terms, be revoked?[12]
>        MR. GIBSON: Objection; calls for a legal conclusion.
> THE WITNESS: I do not know.
> * * *
>
> Q   All right.…  And you don't _conduct formal meetings[13]_ of the partnership, do you?
> * * *
>        MR. GIBSON: … I'm going to instruct the witness not to answer the question _to the extent_ it involves an attorney/client communication.
> Q   Do you _conduct regular meetings_ of the partnership? * * *
> Q   Go ahead.
> A   I would move on.
> Q   Why?
> A   Because as stated, attorney/client privilege.
> Q   All I asked was: Do you _conduct_ _regular meetings_ of the partnership?  I didn't ask for any conversation that would be attorney/client privilege.
>        MR. GIBSON: And, Mr. Massi, he answered the question.
> Q   What was the answer?
> A   … attorney/client privilege.

---

[10] *Polaris Indus. Corp. v. Kaplan*, 103 Nev. 598, 601, 747 P.2d 884, 887 (Nev.1987) ("failure to observe corporate formalities").

[11] *See, e.g., Polaris Indus. Corp. v. Kaplan*, 103 Nev. 598, 600, 747 P.2d 884, 886 (Nev.1987) ("The only evidence of corporate meetings consisted of minutes that generally ratified all previous decisions of the prior year. Despite these findings, the court concluded Polaris had not shown an alter ego relationship between Kaplan and the corporations").

[12] A misplaced question that does not clarify whether or not Mr. Massi is referring to Dr. Kabins's marriage, which was the subject of the two questions immediately prior to this question.  (Kabins Decl. at ¶ 3.)  As a source of additional confusion, Mr. Massi had not kept up with the fact that the "partnership" had been converted to a limited-liability company.  (Kabins Decl. at ¶ 4.)

[13] *See North Arlington Medical Bldg., Inc. v. Sanchez Const. Co.* 86 Nev. 515, 522-523, 471 P.2d 240, 244 - 245 (Nev. 1970) (The respondent further contends that because … _formal meetings_ were not held, that the trial court properly pierced the corporate veil" (emphasis added)).

6

(Kabins Dep. at 19:9-10) (emphasis added).

10.     Admittedly, Dr. Kabins was somewhat confused.  (Kabins Decl. ¶¶ 4-5.)  Dr. Kabins's answer should have been, "I don't know" because the question asks Dr. Kabins to confirm or analyze a legal element for the Massi Defendants' allegations that the corporate veil should be pierced.  (Kabins Decl. at ¶¶ 4-5.)

11.     In the second half of the deposition, Mr. Skaggs suggested terminating the deposition because his client, Gabriel Martinez, Esq., may have engaged in attorney/client communications[14] with Dr. Kabins:

> MR. SKAGGS: So that -- so to the extent that somehow Dr. Kabins is going to invoke a privilege, which my client does not believe exists, we should probably terminate this deposition and get a ruling from the magistrate because otherwise we're going to be wasting time.

(Kabins Dep. at 164:2-6.)

> MR. MASSI: … But I think more importantly the issue that [Mr. Skaggs] raised is, you know, whether or not it's appropriate at this point to terminate the deposition.  Pending an appropriate motion so that we don't come back and revisit another deposition asking the same or similar questions and -- and perhaps continue it on with some continuity so it makes more sense to all of us.  I don't know what everyone's wish is regarding that.  I will accept or reject the majority's, for lack of a better word, opinion.

> MR. GIBSON: We don't -- we don't want this deposition terminated right now.  … If those are the only questions that you have, then we can terminate the deposition.
> * * *
> MR. SKAGGS:   And I think given the fact that we're already going to terminate at 4:30, I think, or 4:25 _to accommodate Mr. Massi's_[15] mass, I think we should terminate and get some -- some very explicit rulings from the magistrate before proceeding.  Because I think [Greenman, Goldberg, Raby & Martinez] deserves to have their own counsel here present to defend their interest if there is vicariously -- vicarious liability alleged or imposed.

(Kabins Dep. 167:7-18, 167:25-168:1) (emphasis added).

---

[14]  Attorney-client privilege exists: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."  _Brown v. Saint Paul City Ry. Co.,_ 241 Minn. 15, 33, 62 N.W.2d 688, 700 (MINN 1954) (quoting 8 Wigmore, Evidence (3 ed.) § 2292.)

[15]  To which, Mr. Massi responded:

And I would be more than willing to come back.  But I got to tell you all, guys and ladies, when this was brought up to me by counsel in the hallway when we were discussing it, I really -- the more I think about it, the -- I really do have a concern, guys, about attorney privilege, attorney/client privilege protect -- you know, affording another attorney the right to defend himself or herself and protect their interest.  I -- I really am proud of what we do.  And I think if we don't afford ourselves the courtesy of protection, I don't know who will, because other than taxi drivers, I don't know anyone else that's hated as much as we are.

12.     Subsequently, on February 5, 2010, and in response to Dr. Kabins's Motion to Dismiss the Third-Party Complaint, Massi Ltd. filed a First Amended Third-Party Complaint against Dr. Kabins attempting to concoct an alter-ego theory and a corporate fiduciary theory. (Docket No. 231.)

13.     On March 12, 2010, Massi Ltd. filed a Motion to Compel 26 deposition answers from Dr. Kabins.  (Docket No. 247-1; Exs. A and B Docket No. 247-2.)

14.     March 24 2010, William K. Skaggs, Esq., filed a Joinder to Motion to Compel. (Docket Nos. 249) and Hanna C. Irsfeld, Esq., filed a Joinder to Motion to Compel.  (Docket No. 250.)

15.     Notably, no other counsel filed Joinders or Motions to Compel, (such as Mario Lovato, Esq., counsel for TWB Enterprises and Mr. Todd Bergman, who also attended Dr. Kabins's deposition).

16.     On April 1, 2010, Movants filed a Response to the Motion to Compel.  (Docket No. 258); and on April 12, 2010, Massi Ltd. filed a Reply for the Motion to Compel.  (Docket No. 261.)

17.     April 16, 2010, Magistrate Johnston held a hearing for the Motion to Compel at Magistrate Judge Johnston's Chambers, LV Courtroom 3D at 11:00 a.m.  (Ex. 3.)

## III.     STANDARD FOR OBJECTING TO MAGISTRATE'S ORDER

As this Court has recognized, this Court may set aside the Order of a magistrate judge regarding a pretrial matter if the magistrate judge's findings or conclusions are "clearly erroneous or contrary to law."  *Ideal Electric Co. v. Flowserve Corp.,* 230 F.R.D. 603, 606 (D. Nev. 2005) ("*Ideal Electric*")*, citing* 28 U.S.C. §636(b)(1)(A), Fed.R.Civ.P. 72(a), and Local Rule 1B 3-1(a).  If the district judge "is left with the 'definite and firm conviction that a mistake has been committed,'" *id., citing Burdick v. Comm'r,* 979 F.2d 1369, 1370 (9th Cir. 1992), the district judge may overrule the magistrate judge's order.  In this case, the magistrate judge's apparent failure to consider the objectionability of each of the Disputed Questions has led the Magistrate to a conclusion that is erroneous and contrary to law, and Dr. Kabins respectfully requests that this Court vacate the Order.

**IV.   ARGUMENT**

   A.   ___The Witness Should Not Be Compelled to Answer Again the 24 Questions for___ ___which Magistrate Johnston Refused to Hear Oral Argument___

   If Dr. Kabins is compelled to reanswer the Disputed Questions in those questions' entirety, this Court will be effectively compelling, contrary to law, Dr. Kabins' waiver of the attorney-client privilege with respect to matters concerning the Plaintiffs and Dr. Kabins.  As this Court has recognized, "[t]he attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, *as well as an attorney's advice in response to such disclosures.*"  *Ideal Electric,* 230 F.R.D. 603, 607, *citing U.S. v. Chen,* 99 F.3d 1495, 1501 (9th Cir. 1996) (emphasis supplied; subsequent internal citations omitted).  Moreover, the attorney-client privilege "applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation."  *Id.*  The Supreme Court of the United States has recently reiterated the historical importance of the attorney-client privilege:

> We readily acknowledge the importance of the attorney-client privilege, which "is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States,* 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998).  By assuring confidentiality, the privilege encourages clients to make "full and frank" disclosures to their attorneys, who are then better able to provide candid advice and effective representation.  *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).  This, in turn, serves "broader public interests in the observance of law and administration of justice."  *Ibid.*

*Mohawk Industries, Inc. v. Carpenter,* --- U.S. ---, 130 S.Ct. 599, 606 (2009).  Many of Defendants' deposition questions, including the Disputed Questions, effectively constitute demands for Dr. Kabins to disclose the content of confidential communications between Dr. Kabins and attorneys for Dr. Kabins, Kabins LLC, and Lori's Trust.  As such, those questions are inappropriate, and Dr. Kabins' counsel's instructions to Dr. Kabins not to answer those questions to the extent attorney-client-privileged information would necessarily be revealed was entirely appropriate.

   In this instance, the manner in which Mr. Massi phrased a number of the Disputed Questions makes it impossible for Dr. Kabins, a non-lawyer, to respond at the deposition table in

a manner that would preserve the privilege applicable to Dr. Kabins's potentially responsive knowledge.  For example, without limitation:

- Disputed Question No. 7, "Was there any consideration given by the Kabins Family Limited, LLC [*sic*] to the Kabins Family Limited Partnership", can only call for Dr. Kabins to respond with information communicated to Dr. Kabins by counsel.  As a non-lawyer, the only way Dr. Kabins could know that a particular act constituted the giving of consideration would be because an attorney told Dr. Kabins so.  As such, any substantive response to this question by Dr. Kabins would necessarily invade the attorney-client privilege.  *See* Document No. 258 at 9:9-27.

- Disputed Question No. 6, "Why did you transfer assets from the partnership to the LLC?", and Disputed Question No. 12, "Why were the Millennium Properties transferred from the Kabins Family Limited Partnership to the Lori C. Kabins Separate Property Trust?", can only call for Dr. Kabins to respond with information communicated to Dr. Kabins by counsel, because Dr. Kabins' responses to these questions axiomatically implicate Dr. Kabins' reactions to, and thought processes regarding, information communicated to Dr. Kabins by Dr. Kabins' transactional counsel.  *See* Document No. 258 at 8:19-9:5, 12:1-12.

- Disputed Question No. 11, "Why don't you know where the [overseas] account is?", can only call for Dr. Kabins to respond with information communicated to Dr. Kabins by counsel.  Even if Dr. Kabins' hypothetical response (which Dr. Kabins is not, by this argument, admitting would actually be Dr. Kabins' response) was, "Because my attorney didn't tell me," Dr. Kabins would thereby be admitting a facet of Dr. Kabins' communication with Dr. Kabins' counsel that should be guarded by the attorney-client privilege:  specifically, that Dr. Kabins' counsel made the decision, for whatever reason, not to provide Dr. Kabins with further information regarding Dr. Kabins' overseas holdings.  *See* Document No. 258 at 11:20-24.

- Disputed Question No. 5, "Is this case being handled on a contingency or hourly basis?", effectively requires Dr. Kabins to provide testimony regarding fee negotiations between Dr. Kabins and Dr. Kabins' litigation counsel that implicate Dr.

Kabins' counsel's assessment of the merits and value of Dr. Kabins' case.  *See* Document No. 258 at 8:3-15.

The Magistrate's Order is "clearly erroneous" and subject to overruling by this Court because the Order requires Dr. Kabins to answer these and the other Disputed Questions, all of which require effectively the same type of disclosure from Dr. Kabins that includes of necessity information communicated to Dr. Kabins, and known only to Dr. Kabins, through counsel.  Dr. Kabins thus respectfully requests that this Court overrule the Magistrate's Order to the extent the Magistrate's Order requires Dr. Kabins to respond to these, or any other, deposition questions that Dr. Kabins cannot answer without breaching the attorney-client privilege.  Dr. Kabins further respectfully requests that, to the extent this Court does so overrule the Magistrate's Order, this Court also find that Dr. Kabins is not liable for Defendants' counsel's attorney fees incurred in briefing related to Defendants' Motion to Compel Dr. Kabins' responses to such inappropriate questions.

## B. *The Magistrate Should Not Have Considered the Witness's Counsel's Deposition Objections Regarding Ambiguous Questions*

Surprisingly, the Magistrate, *sua sponte,* raised an issue with Movants' counsel's deposition objection of "ambiguity" even though there appears to be: (1) no rule-based mechanism for un-waiving such objections for the Defendants; and, (2) no rationale for considering such waived objections in granting a motion to compel deposition answers regarding the assertion of attorney/client privilege.  Fed. R. Civ. P. 32(d)(3)(B) states as follows:

(d) Waiver of Objections.
* * *
    (3) *To the Taking of the Deposition.*
        (A) *Objection to Competence, Relevance, or Materiality.*  An objection to a deponent's competence--or to the competence, relevance, or materiality of testimony--is not waived by a failure to make the objection before or during the deposition, unless the ground for it might have been corrected at that time.
        (B) *Objection to an Error or Irregularity.*  An objection to an error or irregularity at an oral examination is waived if:
            (i) it relates to the manner of taking the deposition, the form of a question or answer, the oath or affirmation, a party's conduct, or other matters that might have been corrected at that time; and
            (ii) it is not timely made during the deposition.

In this case, the Court admonished Movants' counsel for objecting to deposition questions as being ambiguous:

> THE COURT: So where do you get the authority to interrupt the taking of a deposition by asserting ambiguous?
> MR. GIBSON: I believe that my reading of cases such as the *In Re: Stra[tosphere]* case, which I don't have before Your Honor because it's not been -- there's been no claim in defendants' motion as to the impropriety of any of the objections, per se, so we did not brief that issue out.
> THE COURT: You're not dealing with -- you're not dealing now with the -- only what's been raised by the defense here.  You're facing the Court –
> MR. GIBSON: I understand.
> THE COURT: And I'm now asking you, where's your authority to assert that objection during the taking of a deposition.

(Ex. 3, Hearing of April 16, 2010, at 29:14-30:7.)  The Court continued:

> THE COURT: What you've just told me is, there's no authority in Rule 30 to assert an objection and interrupt the taking of a deposition by a claim of ambiguous.
> MR. GIBSON: I believe that the case law that interprets Rule 30 permits appropriate objections to questions, if they're in the vein of harassing, if they're -- that --
> THE COURT: The objection's ambiguous.
> MR. GIBSON: I understand, Your Honor.  And this is in the context of --
> THE COURT: Ambiguity --
> MR. GIBSON: I'm sorry.
> THE COURT: -- ambiguity is covered in those cases, 'cause I don't see those cases in your brief.
> * * *
> THE COURT: Let's do this. I'm going to save you some time and some trouble and maybe some embarrassment today.  All right?
> MR. GIBSON: Yes, Your Honor.
> THE COURT: If that's possible.

(*Id.* at 31:11-32:13-17.)  Immediately after that exchange, the Magistrate terminated oral arguments regarding the Motion to Compel and Ordered that: (1) the Motion to Compel was granted; (2) the witness would be deposed without time limit; (3) the witness would answer all 26 Disputed Questions and any other questions related to those questions; and (4) Defendants would be entitled to fees and costs, which the Defendants, collectively, assert add up to nearly $30,000.00 for a five-hour deposition (inclusive of breaks).  Notably, Chad Bowers, Esq. of Massi Ltd., counsel for the Massi Defendants, had represented to the Magistrate that the Defendants were not taking issue with Movants' counsel:

> MR. BOWERS: And if I may just briefly comment on a point counsel raised.  Our -- my contention is not that counsel was coaching the witness.  However, it appeared, through the course of this deposition, that when the instruction was given, to the extent that it violates the privilege, that was a -- that was the instruction taken by Mr. Kabins to mean -- I'm, again, not of counsel urging, but as a result the  process was -- Dr. Kabins' response was I'm not answering that.  And I think as we go through these you'll see some of those where, you know, that -- he just simply, when he hears that, and says I'm not answering that question.
> THE COURT: Okay.
> MR. BOWERS: Thank you, Your Honor.

12

1    MR. GIBSON: May I respond to that point, Your Honor?
     THE COURT: I don't think you need to.
2    MR. GIBSON: Okay.

3   (Ex. 3 at 8:18-9:10.)  In any event, such objections are waived permanently if not made during

4   the deposition.  Fed. R. Civ. P. 30.  However, it was apparent that the Magistrate was not

5   satisfied with Movants' counsel's explanation regarding deposition objections based on

6   ambiguity; and the Magistrate apparently ruled on the Motion to Compel based on such

7   deposition objections, which had been mostly, if not entirely, waived.  The rule requiring such

8   objections to be made during the deposition well placed because the Court is not normally

9   present at a deposition and, thus, cannot observe whether or not, for example, the body language

10  of the interrogator indicates an invitation to elaborate regarding such objections.  In sum, an

11  order granting a motion to compel answers to deposition questions where attorney-client

12  privilege has been asserted should not be based, in any way, on a Court's *sua sponte* objection to

13  Movants' counsel's deposition objections where attorney/client privilege is not an issue and

14  where there is no mechanism for un-waiving such objections.

15          The Court should also be aware that the interrogator, Mr. Massi, is facing numerous

16  apparent conflicts of interest (as well as a Motion to Disqualify Counsel (Docket No. 280)),

17  which tainted the entire deposition with an appearance of impropriety.  Ironically, during the

18  deposition, Mr. Massi commented on his relationship with Dr. Kabins briefly, but Mr. Massi did

19  not address any of the bases described in the Motion to Disqualify:

20          BY MR. MASSI:
            Q       Okay.  We have, in fact, in the past known each other when you have rendered medical assistance
21                  to clients that I represented in personal injury cases; is that not correct?
            A       Of course.
22          Q       I, in fact, visited you as a patient, as I recall, approximately 15 years ago.

23  (Kabins Dep. at 27:19-24.)[16]  In any event, the Magistrate's sweeping relief in granting the

24  Motion to Compel, in its entirety, while refusing to consider, or mention, argument regarding the

25

26  _____
    [16]  Surprisingly, in addition to the relationships identified in Movants' Motion to Disqualify, Mr. Massi is a
27  co-investor with Dr. Kabins in yet another company:
            Q       … Specifically assets, what assets contained in the partnership were transferred?
    * * *
28          Q       Tell me what they are.
            A       I believe that, if memory serves correct --
            Q       Yes.

13

remaining 24 questions at issue, went too far by: (1) ordering Dr. Kabins to be deposed "with no time limit" whatsoever; (2) ordering Dr. Kabins to answer every one of the 26 questions without any limitations; thereby, in many cases, ordering Dr. Kabins to disclose attorney/client privileged information; and (3) ordering Dr. Kabins to pay defense counsel's fees and costs.  (Docket No. 266.)  Thus, the Magistrate's Order should be vacated, and the Motion to Compel should be denied.

### C. *Dr. Kabins Testified that he Would Need To Ask His Attorneys for Information to Answer 22 of the 26 Disputed Questions Because Dr. Kabins Simply Did Not Know the Answer*

The Massi Defendants have mischaracterized and misrepresented many true answers provided by Dr. Kabins on the record.  The Massi Defendants assert:

> Dr. Kabins' conduct, which appears to be prompted by counsel, was to invoke the attorney-client privilege as to most questions, wherein Dr. Kabins would then respond that [*sic*] with no answer, instead of attempting to delineate what information was unrelated to any actual matters potentially covered by the attorney-client privilege.

(Docket No. 247-1, Motion to Compel, at 18:12-15.)  However, regarding the 22 of the 26 Disputed Questions (for which the Magistrate permitted partial oral argument only for Disputed Question Nos. 1 and 2), Dr. Kabins testified, or attempted to communicate, that Dr. Kabins did not know the answers and that an answer "*requires* attorney/client privilege," *i.e.,* the answer "requires attorney/client discussion in order to provide an answer[.]"  (Kabins Dep. at 26:24-25; see *also,* Kabins Decl. ¶¶ 4-7, 10, 11.)  Thus, Dr. Kabins's precise answers to 22 of the 26 questions were that he did not know, but he could find out if he could ask one of his attorneys.  (Kabins Dec. at ¶ 2.)  Indeed, Mr. Massi, at one point, asked, "Who would know the answers to those questions[?]"  (Kabins Dep. at 31:10.)  Dr. Kabins responded by naming his attorneys as: "Tina Wells," "Mr. Gibson," "Mr. Spilotro," and "Mr. Chesnoff."  (Kabins Dep. at 33:1-2.)  It was clearly erroneous for the Magistrate to conclude that Dr. Kabins invoked the attorney/client privilege and, thus, failed to answer *every* question.

A       -- they actually have an investment that you share with me, a real estate investment.
Q       Which is?
A       215 and Buffalo?
Q       Yes.  Go ahead.  Anything else?
(Kabins Dep. at 29:10-25.)

14

1    The remaining 4 of the 26 questions deserve separate attention.  First, Disputed Question

2  No. 8 should have been disregarded entirely:

       Q.      Is it your position that every activity in the limited partnership or the limited partner LLC involves
               the communication by you with an attorney, who represents you, in regards to these entities?"

4  (Kabins Dep. at 47:13-16.)  Dr. Kabins's answer did not involve the attorney/client privilege.

5  Instead, Dr. Kabins answered in the negative by stating:

       "I talked to you about to the best of my knowledge [regarding] what was in there, which was not
       necessarily just an attorney/client privilege."

8  (Kabins Dep. at p. 48:9.)  Thus, it is clearly erroneous for the Magistrate to base his Order, in any

9  way, on Disputed Question No. 8.

10    Dr. Kabins also responded to Disputed Question No. 9 regarding communications

11  between Dr. Kabins's stockbroker and Dr. Kabins and his attorneys:

       Q      Okay.  When if at all did you get a recommendation from any stockbroker that you've had that
              handled matters for the partnership to transfer stock assets to the LLC?
       A      To the best of my knowledge, as we sit here today, all transfers were orchestrated through the -- in
              some way or another through the attorney/client privilege.
       Q      Miss Wells?
       A      To the best of my knowledge.
       Q      Miss Wells?
       A      Correct.
       Q      Okay.

17  (Kabins Dep. at p. 49:2-12.)  Notably, during the deposition, there were no objections at all with

18  respect to Disputed Question No. 9.  Thus, it was clearly erroneous for the Order to be based, in

19  part, on Disputed Question No. 9 because no one, not even Mr. Massi, objected during the

20  deposition and Dr. Kabins answered the question.  (*Id.*).[17]

21    Regarding Disputed Question No. 10 ("Was the overseas account formed at Dr. Kabins'

22  direction? [Pages 54-55]") (Docket No. 247-1 at 17:10), Dr. Kabins testified that the overseas

23  account referenced by the question was formed via communications with one of Dr. Kabins's

24  attorneys.  (Kabins Dep. at 55:21-22; Kabins Decl. at ¶ 10.)  Notably, the question is irrelevant

25  and certainly, the Order's requirement of paying every other attorneys' fees based, in part, on

26  such a question is excessive.

27

28

_____
[17]  *See also* Fed. R. Civ. P. R. 32(d)(3)(B).

15

Finally, regarding Question No. 15 ("Does Dr. Kabins have any knowledge about the investment in Capri, LLC [Page 203]"), the record shows that Mr. Massi never asked that question. Instead, Mr. Massi appears to have made it up for purpose of the Motion to Compel. The precise question at p. 203 regarding Capri, LLC is as follows:

> Q   Save and except for your conversations with those gentlemen, did you have any independent invest -- did you do any independent investigation on your own of the propriety of the investment in Capri, LLC?

(Kabins Dep. at 203:4-8.) To which Dr. Kabins responded quite simply, and without invoking attorney client privilege, "No." (*Id.* at p. 203:10.) Mr. Massi then asked: "Okay. Do you know the present status of that investment; that is, is it a viable investment still?" (*Id.* at 203:12-12.) Again, Dr. Kabins answered without implication of attorney/client privilege: "I'm not certain." (*Id.* at 203:15.) Finally, the questions regarding Capri, LLC ended as follows:

> Q   What if any last advice have you received with anyone who has knowledge about it regarding its status?
> MR. GIBSON: I'm going to instruct the witness not to answer that question to the extent it involves an attorney/client communication.
> THE WITNESS: Best knowledge is through the attorney.
> BY MR. MASSI:  Okay.

(Kabins Dep. at 203:17-24.) Massi Ltd. flatly misrepresented Disputed Question No. 15 as well as the disputed answer. (Kabins Decl. at ¶ 11.) As such, Mr. Massi should be admonished and sanctioned, and the Magistrate's Order should be vacated.

### D.   *Massi Ltd. Insisted on Taking the Premature Deposition Prior to Mr. Massi's February Vacation Which Resulted in the Saturday Deposition*

The parties were unable to make ordinary or routine calls during the deposition to the Magistrate or the Court for guidance regarding the scope of attorney/client privilege because of Mr. Massi's insistence on taking the deposition prior to Mr. Massi's February vacation (and prior to any exchange of Rule 26(a) disclosures). (Docket No 280, Burris Decl. at ¶¶ 21-22.) Again, Massi's material omission, described below, regarding the circumstances leading up to the Saturday deposition is sanctionable. In fact, Massi Ltd. first noticed Dr. Kabins's deposition (not the Rule 30(b)(6) witness for Plaintiffs) for January 25, 2010, without first consulting with Movants' counsel regarding an appropriate time or date. (Ex. 1.) Massi Ltd. knows that Dr. Kabins is a surgeon and cannot simply drop everything on a moments' notice. In any event, the

16

only date that worked for *both* parties prior to Mr. Massi's February vacation was Saturday, January 30, 2010.  (Docket No. 280 at Ex. 1, Burris Decl. at ¶ 22.)  Mr. Massi should be admonished and sanctioned for misrepresenting that the deposition occurred on a Saturday solely to accommodate the witness.  (*See, e.g.,* Docket No. 247-1 at p. 5:16-19 ("The Saturday was selected at Dr. Kabins' request. …. The deposition was held on a Saturday at the request of Dr. Kabins, notwithstanding that Dr. Kabins was provided with dates between January 18, 2010 and January 30, 2010.")  The deposition occurred on a Saturday because Mr. Massi insisted on taking Dr. Kabins's deposition by Sunday, January 31, 2010, which prevented the parties from seeking real-time rulings from the Court with a later-scheduled deposition during normal business hours.

Additionally, Movants' counsel reminded Mr. Massi that depositions should not occur prior to the exchange of Rule 26(a) disclosures.  (Docket No. 280, Burris Dec. at ¶ 23.)  As a professional accommodation, however, Movants' counsel and Dr. Kabins coordinated the only date that worked for *both* parties prior to Mr. Massi's vacation, Saturday, January 30, 2010.  (*Id.*)  Indeed, it appears that co-defendants also objected to Mr. Massi's insistence on taking a deposition prior to the exchange of Rule 26(a) disclosures, inferring that they were unable to prepare adequately for the deposition.

> MR. SKAGGS: All right.  Let me try to start again.  I want to join Mr. Lovato's earlier objection that this deposition has been scheduled on a very accelerated rate.  As I understand it, the time for pre -- or for 26 disclosures is not even till Monday.  So for some reason that we've accelerated this deposition without even the benefit of other parties' disclosures.

(Kabins Dep. at 163:1-7.)  Notably, Mr. Lovato, counsel for Mr. Todd Bergman and TWB Enterprises, left the deposition prior to the two-hour mark (the deposition began at 11:22 a.m.) after giving a short speech:

> THE VIDEOGRAPHER: We're back on the record at 1:13 p.m.
> MR. LOVATO: This is Mario Lovato, counsel for Todd Bergman and T.W.B. Enterprises.  I'm -- I'm leaving -- I'm leaving the deposition for today.  I did not notice this deposition and I did not cross-notice it.  We're at the very beginning of discovery.  I do not think that even initial disclosures are due yet.  So I'm not waiving my right to take the deposition of this witness, and I plan to do so at some point in the future. Other than that, the parties -- all the parties can continue here.

(Kabins Dep. at 92:20-93:8)

> MR. MASSI: Thank you for your attendance.  Mr. Bergman will be leaving as well.
> MR. GIBSON: Goodbye, Mario.  Have a good day.  Mr. Bergman, good meeting you, sir.
> (Mr. Lovato and Mr. Bergman exited the room.)

17

1   (Kabins Dep. at 93:18-21 at 1:16 p.m.)  Surprisingly, as a result of the Magistrate's Order

2   requiring attorneys' fees and costs, Mr. Lovato asserted that he should receive more than

3   $4,000.00 related to his attendance of 1 hour and 54 minutes even though, apparently, Mr.

4   Lovato had not prepared a single question.  However, while Mr. Lovato's comments as to the

5   taking of a premature deposition are well-placed, Mr. Lovato's assertion of more than $4,000.00

6   in fees connected to that deposition is injudicious, to say the least.  In any event, if Mr. Massi

7   had not insisted on taking Dr. Kabins's deposition prior to Mr. Massi's February vacation

8   (Docket No. 280-1, Burris Decl., at ¶¶ 21-22), the parties could have arranged a deposition

9   during normal business hours and been able to call the Court in real time for instructions with

10  respect to certain questions and answers.  In sum, Mr. Massi should not be allowed to profit by

11  inconveniencing the parties to accommodate Mr. Massi's vacation time.  Instead, the

12  Magistrate's Order should be vacated, and the Motion to Compel should be denied.

13  **V.     <u>CONCLUSION</u>**

14          Thus, for the reasons stated above, Movants respectfully request that the Magistrate's

15  Order be vacated, and the Motion to Compel be denied.

16          Respectfully submitted this 3rd day of May, 2010.

17

18                                  GIBSON LOWRY BURRIS LLP

19

20                                  BY  /s/ J. SCOTT BURRIS
                                    ——————————————————————
21                                  STEVEN A. GIBSON
                                    Nevada Bar No. 6656
22                                  J. SCOTT BURRIS
                                    Nevada Bar No. 10529
23                                  City Center West
24                                  7201 West Lake Mead Boulevard, Suite 503
                                    Las Vegas, Nevada  89128
25                                  *Attorneys for Plaintiffs and Dr. Kabins*

26

27

28

1

2

3

4

5

6

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5-1 of this Court, I certify that I am an employee of
GIBSON LOWRY BURRIS LLP and that on this 3rd day of May, 2010, I caused a correct
electronic copy of the foregoing OBJECTIONS TO MAGISTRATE ORDER to be served via
CM/ECF:

| | |
|---|---|
| William Kerry Skaggs, Esq.<br>Law Office of William Kerry Skaggs<br>401 North Buffalo Drive, Suite 100<br>Las Vegas, Nevada 89145<br>Telephone: 702.445.6700<br>Facsimile: 702.475.4060<br>kerryskaggs@msn.com | Chad A. Bowers, Esq.<br> Albert D. Massi, Ltd.<br>3202 West Charleston Boulevard<br>Las Vegas, Nevada  89102<br>Telephone: 702.878.8778<br>Facsimile: 702.878.9350<br>chadbowers@lawyer.com |
| Hannah C. Irsfeld, Esq.<br>hirsfeld@irsfeldlaw.com<br>Barbara Johnston, Esq.<br>bjohnston@irsfeldlaw.com<br>Irsfeld & Associates, LLC<br>1700 West Horizon Ridge Parkway<br>Suite 206<br>Henderson, Nevada 89012<br>Telephone: 702.734.0400<br>Facsimile: 702.734.0441 | Mario Lovato, Esq.<br>Jimmerson Hansen, P.C.<br>415 South Sixth Street, #100<br>Las Vegas, Nevada 89101<br>Telephone: 702.388.7171<br>Facsimile: 702.380.6415<br>mg@jimmersonhansen.com |
| Matthew L. Johnson<br>Matthew L. Johnson & Associates,<br>P.C.<br>Lakes Business Park<br>8831 West Sahara Avenue<br>Las Vegas, Nevada  89117<br>Telephone:  702.471.0065<br>Facsimile:  702.471.0075 facsimile<br>mjohnson@mjohnsonlaw.com | |

1       I further certify that some of the participants in the case are not CM/ECF users, and

2   pursuant to FRCP 5, I served a copy of the OBJECTIONS TO MAGISTRATE ORDER by

3   United States first-class mail, facsimile and e-mail on this 3rd day of April, 2010 to the following

4   non-CM/ECF participants, at their last known addresses:

5

6       Mr. Jeff and Ms. Linda Chain        Albert D. Massi, Esq.

7       8156 Horseshoe Bend            Albert D. Massi, Ltd.

8       Las Vegas, Nevada 89113       3202 West Charleston Boulevard
        Facsimile: 702.688.6402        Las Vegas, Nevada  89102

9       Email: www.mpdnv.com         Telephone: 702.878.8778
                                  Facsimile: 702.878.9350

10                                Email:  mamasoto@yahoo.com

11

12                    By  /s/J. Scott Burris

13                       An Employee of

14                       GIBSON LOWRY BURRIS LLP

15

16

17

18

19

20

21

22

23

24

25

26

27

28