# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KABINS FAMILY LP et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No.: 2:09-cv-01125-GMN-RJJ |
| vs. | ) |
| | ) **ORDER** |
| CHAIN CONSORTIUM et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Two entity Plaintiffs have sued thirty-two individual and entity Defendants on forty-six causes of action related to alleged securities fraud in failed commercial real estate investments. One group of five Defendants has filed counterclaims, crossclaims, and third-party claims. Another group of four Defendants has filed counterclaims. The Magistrate Judge has granted a motion to compel Dr. Mark B. Kabins to submit to a deposition. Six motions are pending before the Court. Five motions ask the Court to dismiss counterclaims, crossclaims, or third-party claims. The sixth motion asks the Court to vacate the Magistrate Judge's order compelling Dr. Kabins' deposition. No pending motions attack the Complaint itself.

For the reasons given herein, the Court denies the Motion to Dismiss Third-party Complaint (ECF No. 208) as moot, grants the Motion to Dismiss First Amended Third-party Complaint (ECF No. 238) in part with leave to amend in part and deny it in part, grants the Motion to Dismiss Amended Counterclaims (ECF No. 262) with leave to amend in part, grants the Motion to Dismiss Amended Counterclaims (ECF No. 288) with leave to amend in part, grants the Motion to Dismiss Amended Crossclaim (ECF No. 291) with leave to amend, and denies the Motion to Vacate Magistrate Order (ECF No. 285).

# I.   FACTS AND PROCEDURAL HISTORY

## A.   Facts

Dr. Mark B. Kabins is the manager of MBK LLC, which is in turn the general partner of Plaintiff Kabins Family LP ("Kabins LP"). (Compl. 3:1–3 & ¶ 7, ECF No. 1).  Kabins LP holds investments in Defendants Gila Bend 384 LLC, Michael's Plaza LLC, and 99th & Indian School, LLC. (*Id.* ¶ 9).  Dr. Kabins' wife, Lori C. Kabins, is the trustee for the Lori C. Kabins Separate Property Trust ("LCK Trust"). (*Id.* 3:1–3 & ¶ 10).  LCK Trust holds investments in Defendants Benessere LLC (formerly Buckeye Canamex 77 One, LLC), Cipriani LLC (formerly Buckeye 80 West Three, LLC), Capri I LLC, and Cottonwood Retail LLC. (*Id.* ¶ 11).  Plaintiffs refer to these Defendant entities collectively as the "Millennium Investment Companies." (*Id.* ¶ 206).  Plaintiffs refer to the Millennium Investment Companies, Defendant Millennium Commercial Properties, LLC ("MCP"), and Defendant Millennium Construction, Inc. ("MCI") collectively as the "Millennium Entities." (*Id.* ¶ 214).  Defendants Modern Management, Inc. and Innovative Assets, Inc. ("Innovative") were managers of several other Defendant entities. (*See id.* ¶¶ 12–205).

Plaintiffs allege that Defendant Chain Consortium created and managed the Millennium Investment Companies for the purpose of "effecting business transactions associated with obtaining investments from [Plaintiffs]" and that Chain Consortium "exerts influence or control over every other Defendant through the Millennium Entities, Modern Management, or Innovative." (*Id.* ¶¶ 215–16).  In other words, Plaintiffs allege that Chain Consortium is the puppet master that created each and every Defendant entity and appointed each and every individual Defendant manager of those entities (collectively, the "Manager Defendants"), (*id.* ¶¶ 217–21), and that the Defendant entities were all alter egos of Chain Consortium, (*id.* ¶¶ 421–25).  Plaintiffs allege that Defendants conspired to (and did) defraud Plaintiffs out of over $11

million by creating a façade of a legitimate portfolio of real estate securities. (*Id.* ¶¶ 224–25). Plaintiffs' investments however, were used simply to pay large, concealed commissions to various Defendants. (*Id.* ¶¶ 226–27).  Because the allegations sound in fraud, implicating the heightened pleading standards of Rule 9(b), the Complaint details many misrepresentations and material omissions, which will not be  separately recounted here. (*See id.* ¶¶ 228–420).

## B.    The Complaint

Kabins LP and LCK Trust sued thirty-two Defendants in this Court on forty-six causes of action: (1) Violations of 17 C.F.R. § 240.10b-5; (2) Conspiracy to Commit Securities Fraud; (3) Civil Conspiracy; (4) Concert of Action; (5) Aiding and Abetting; (6) Intentional Misrepresentation; (7) Fraud in the Inducement; (8) Fraud in the Execution or Inception; (9) Fraudulent Concealment; (10) Conversion; (11) State Law Securities Fraud Under Nevada Revised Statutes ("NRS") section 90.660; (12) Negligent Misrepresentation; (13) Negligent Performance of an Undertaking [Professional Negligence]; (14)–(20) Breach of Fiduciary Duty (Loyalty); (21)–(27) Breach of Fiduciary Duty (Care); (28)–(34) Breach of Contract; (35)–(41) Breach of the Implied Covenant of Good Faith and Fair Dealing; (42) RICO Violations, 18 U.S.C. § 1962; (43) Conspiracy to Violate RICO; (44) Racketeering, NRS section 207.470; (45) Unjust Enrichment; and (46) Promissory Estoppel.  The Complaint is 156 pages long.  Some of the causes of action listed are theories, doctrines, or defenses as opposed to separate causes of action.

## C.    The Benessere Defendants' Counterclaim, Crossclaim, and Third-Party Claim

On December 2, 2009, Benessere, LLC, Cipriani, LLC, Gila Bend 384, LLC, Buckeye 80 West Three, LLC, and Buckeye Canamex 77 One, LLC (collectively, the "Benessere Defendants") filed their Answer, Crossclaim, and Counterclaim (ECF No. 173).  On January 14, 2010 they filed the First Amended Counterclaim (ECF No. 205) ("Benessere FACC"), asserting

the following causes of action against Plaintiffs: (1) Civil Conspiracy; (2) Breach of Fiduciary Duty; (3) Concealment; (4) Unjust Enrichment; (5) Declaratory Relief; (6) Breach of Contract; and (7) Breach of the Implied Covenant of Good Faith and Fair Dealing.  On April 14, 2010, Plaintiffs filed the present Motion to Dismiss Amended Counterclaims (ECF No. 262).

On December 9, 2009, the Benessere Defendants filed a Third-party Complaint against Third-party Defendants Dr. Mark B. Kabins, Main Amundson and Associates, LLC ("Main Amundson"), and James D. Main (collectively, "TPD").  TPD moved to dismiss the Third-party Complaint, (*see* Mot. Dismiss, Jan. 19, 2010, ECF No. 208), and the Benessere Defendants filed the First Amended Third-party Complaint ("FATPC") on February 5, 2010, rendering the first motion to dismiss moot.  The FATPC pleads the following causes of action against TPD: (1) Civil Conspiracy; (2) Breach of Fiduciary Duty; (3) Concealment; (4) Negligence; (5) Unjust Enrichment; (6) Declaratory Relief; (7) Breach of Contract; (8) Breach of the Implied Covenant of Good Faith and Fair Dealing; (9) Implied Indemnity; and (10) Contribution.  TPD then filed the present Motion to Dismiss First Amended Third-party Complaint (ECF No. 238).

On April 21, 2010, the Benessere Defendants filed the First Amended Crossclaim (ECF No. 267), asserting the following causes of action against Cross-defendants Todd W. Bergman and T.W.B. Enterprises, Inc.: (1) Civil Conspiracy; (2) Unjust Enrichment; (3) Conversion; (4) Implied/Equitable Indemnity; and (5) Contribution.  Cross-defendants have filed the present Motion to Dismiss Amended Crossclaim (ECF No. 291).

### D.      The Gutzman Defendants' Counterclaim

On December 7, 2009, Defendants Edward Gutzman III, GEIII, LLC, Benessere Management, LLC, and Cipriani Management, LLC (collectively, the "Gutzman Defendants") filed their Answer, Crossclaim, and Counterclaim (ECF No. 175), and on April 20, 2010 they filed the Amended Counterclaim (ECF No. 265) ("Gutzman ACC"), asserting the following

causes of action against Plaintiffs: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Fraudulent Concealment; (4) Conspiracy; (5) Breach of Fiduciary Duty; (6) Unjust Enrichment; (7) Declaratory Relief; and (8) Implied/Express Indemnity.  Plaintiffs have filed the present Motion to Dismiss Amended Counterclaims (ECF No. 288).

### E.    Magistrate Judge's Order

On April 16, 2010, the Magistrate Judge held a hearing on Defendants' Motion to Compel (ECF No. 247) and verbally granted the motion.  The order required Dr. Mark B. Kabins to attend a deposition.  Plaintiffs and Third-party Defendant Dr. Kabins have moved to vacate the order.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, a court takes all material allegations as true and construes them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation

is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**B.    Review of a Magistrate Judge's Orders**

A district court may reconsider a magistrate judge's orders on non-dispositive matters when "clearly erroneous or contrary to law." *Grimes v. City & Cnty. of S.F.*, 951 F.2d 236, 241

1   (9th Cir. 1991) (quoting 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)); *see also Rockwell*

2   *Int'l, Inc. v. Pos-A-Traction Indus., Inc.*, 712 F.2d 1324, 1325 (9th Cir. 1983).

3   **III.   ANALYSIS**

4         **A.     Motion to Dismiss Third-party Complaint (ECF No. 208) and Motion to
              Dismiss First Amended Third-party Complaint (ECF No. 238)**

5

6         Because Third-party Plaintiffs ("TPP") amended the Third-party Complaint after the

7   motion to dismiss it was filed, the Court denies the Motion to Dismiss Third-party Complaint

8   (ECF No. 208) as moot and addresses the Motion to Dismiss First Amended Third-party

9   Complaint (ECF No. 238) on the merits.  TPP note that one of them, Buckeye 80, has merged

10  with another of them, Cipriani, and that another of them, Canamex, is currently in default with

11  the Nevada Secretary of State. (*See* FATPC ¶¶ 4–5).  TPD are Dr. Kabins, James D. Main, and

12  Main Amundson.  Main provided accounting services to TPP through accounting firm Main

13  Amundson, which is now is in default. (*Id.* ¶¶ 6–8).

14        TPP allege that Dr. Kabins and the Kabins entities, such as Kabins LP and LCK Trust

15  (collectively, "Kabins"), are alter egos of one another. (*Id.* ¶ 12).  TPP allege that Dr. Kabins

16  signed express, written agreements (including the Operating Agreements) when he invested in

17  Defendant entities, acknowledging the risks inherent in such investments. (*Id.* ¶¶ 13–15).  TPP

18  allege that Kabins "secretly, improperly[,] and illegally obtained a purported guarantee by

19  [Defendants Jeff Chain and Millennium Properties Development, Inc. ("MPD")], whereby Chain

20  and MPD purportedly guaranteed . . . 'there will not be a loss of principal . . . . In the case that

21  occurs, [Chain and MPD] will make up the difference . . . .'" (*Id.* ¶ 20).  TPP allege that the

22  procurement of this promise constituted a breach of Kabins' duty of good faith and disclosure to

23  TPP under the Operating Agreements, because Kabins extracted the purported guarantee in

24  exchange for not disclosing Chain's misappropriation of money belonging to TPP, thereby

allowing Kabins to profit from Chain's illegal conduct. (*Id.* ¶ 21).  TPP also allege that Kabins violated their duty of good faith and disclosure to TPP when they voted to retain Defendant Edward Gutzman III as manager of TPP, knowing that Gutzman knew of Chain's illegal activities to the detriment of TPP. (*Id.*).  In summary, TPP allege that because Kabins knew the Operating Agreements were subject to no guarantee of any investment funds, that Kabins "traded on their respective duty of disclosure and good faith to [TPP] by intentionally failing to disclose Chain's improper and illegal conduct to the Membership of [TPP] . . . ." (*Id.* at ¶ 23).  Main and Main Amundson, TPP's own accountants, are accused of professional negligence in failing to notice and/or disclose unauthorized loans or other disbursements taken by Chain, and with unjust enrichment. (*See id.* ¶¶ 70–73, 82).

TPP bring ten causes of action against TPD:  (1) Civil Conspiracy; (2) Breach of Fiduciary Duty; (3) Concealment; (4) (Professional) Negligence; (5) Unjust Enrichment; (6) Declaratory Relief; (7) Breach of Contract; (8) Breach of the Implied Covenant of Good Faith and Fair Dealing; (9) Implied Indemnity; and (10) Contribution.  Dr. Kabins has moved to dismiss the nine causes of action pled against him.

Dr. Kabins argues that TPP cannot allege any set of facts giving rise to his personal liability because he has never been a party to any contract with TPP, nor has he ever been a partner, member, or shareholder of any TPP.  Dr. Kabins notes that TPP have affirmatively alleged that he was an "agent" for Plaintiffs, which he argues is at odds with the allegation that he was an alter ego of them.  In short, Dr. Kabins argues that he was only the manager of Kabins LP, that he never invested his personal money with TPP, and that any actions he took as manager of Kabins LP therefore cannot be imputed to him in his individual capacity.  Dr. Kabins also notes that some allegations are confusing or nonsensical, such as the allegation that Dr. Kabins acted on behalf of TPP themselves.  Dr. Kabins argues that he never owed any duty to TPP

except the general duty of care owed to all persons by all other persons, and that he is not alleged to have breached this duty, but only a fiduciary or contractual duty that he never had.  In other words, as manager of Kabins LP, Dr. Kabins had a fiduciary duty to the members and beneficiaries of that partnership, but not to any third-party company in which the Kabins LP invested.

### 1.    Civil Conspiracy

"An actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983).  TPP allege that Dr. Kabins, in concert with the Kabins entities, obtained a purported guarantee from Chain and MPD to make good any losses in exchange for not disclosing Chain's improper and illegal conduct.  TPP allege that this agreement was improper not because it was illegal to make such a guarantee or to agree not to disclose harmful information (TPP do not allege that Dr. Kabins blackmailed Chain), but because it violated a contractual duty under the Operating Agreements not to act in a manner that would negatively affect TPP, and agreeing not to disclose the misappropriation of TPP funds would negatively affect TPP.

However, as Dr. Kabins notes, he was not a party to any Operating Agreement in his individual capacity.  TPP respond that the Kabins entities are alleged to be alter egos of Dr. Kabins, that he was the true principal and owner of these entities and stood to profit by their success.  There is a question of fact as to alter ego, and the Court will not dismiss on this basis. Dr. Kabins also argues that TPP fail to allege any facts indicating (1) an intent to accomplish any unlawful objective to harm another or (2) any resulting damage, which are required elements of a civil conspiracy claim. *See Hilton Hotels v. Butch Lewis Prods.*, 862 P.2d 1207, 1210 (Nev.

1993).  He therefore asks the Court to dismiss under Twombly.  Because Chain was a manager

of the relevant Defendant entities with a fiduciary duty to their members, Dr. Kabins' and

Plaintiffs' agreement with Chain was potentially an unlawful conspiracy, because the objective

was the breach of Chain's fiduciary duties, even if Dr. Kabins and Plaintiffs had no fiduciary

duties of their own.  Dr. Kabins is correct, however, that TPP do not allege any facts indicating

damages flowing from this alleged wrongdoing.  It is entirely consistent with the FATPC that

any damage to TPP (if any) occurred as a result of Chain's alleged misappropriations before Dr.

Kabins was ever aware of Chain's activities.  The Court therefore dismisses this cause of action,

with leave to amend.

### 2.    Breach of Fiduciary Duty

TPP base their allegation of the existence of a fiduciary duty owed to TPP by Dr. Kabins

on Dr. Kabins' alleged duties under the Operating Agreements.  But again, Dr. Kabins was not a

personal party to these agreements.  In response, TPP do not point to any allegation in the

FATPC that Dr. Kabins signed any contract giving rise to such a duty.  Even if Dr. Kabins were

an alter ego of Plaintiffs themselves, who entered into the Operating Agreements, Dr. Kabins

argues that Plaintiffs cannot have had any fiduciary duty under the agreements, because § 7.09

expressly prohibits members of the TPP investment companies, such as the Kabins entities, from

taking any part in or interfering with the management of TPP, negating any possibility of a claim

that the Kabins entities were somehow expected to manage TPP under a fiduciary duty.  At most,

an attempt to interfere with management would constitute a breach of contract, not a breach of

fiduciary duty.  The Court therefore dismisses this cause of action.

### 3.    Concealment

It is not entirely clear what cause of action TPP mean to plead here.  It appears to be a

variation of the Breach of Fiduciary Duty claim.  TPP make reference to a "duty of good faith

1 and disclosure," but this is vague.  The claim ultimately fails because it is based on a fiduciary

2 duty owed by Dr. Kabins to TPP, but no facts which could give rise to such a fiduciary duty are

3 alleged.  The Court therefore dismisses this cause of action.

4     **4.   Unjust Enrichment**

5     In Nevada, the elements of an unjust enrichment claim or "quasi contract" are: (1) a

6 benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the

7 defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances

8 where it would be inequitable to retain the benefit without payment. *See Leasepartners Corp.,*

9 *Inc. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (quoting *Unionamerica v.*

10 *McDonald*, 626 P.2d 1272, 1273 (Nev. 1981) (quoting *Dass v. Epplen*, 424 P.2d 779, 780 (Colo.

11 1967))).  An indirect benefit will support an unjust enrichment claim. *Topaz Mut. Co., Inc. v.*

12 *Marsh*, 839 P.2d 606, 613 (Nev. 1992) (recognizing an actionable unjust enrichment claim where

13 there was an indirect benefit conferred upon the defendant).  Unjust enrichment is an equitable

14 substitute for a contract, and an action for unjust enrichment therefore cannot lie where there is

15 an express written agreement. *See Marsh*, 839 P.2d at 613 (citing L*ipshie v. Tracy Inv. Co.*, 566

16 P.2d 819, 824 (Nev. 1977); 66 Am. Jur. 2d *Restitution* §§ 6, 11 (1973)).

17     Here, there appears to be no contract between Dr. Kabins and TPP, so there is a

18 possibility of unjust enrichment.  However, TPP conflate a claim for unjust enrichment with a

19 claim for usurpation of a corporate opportunity.  The latter cause of action would not lie here,

20 because Dr. Kabins owed TPP no fiduciary duty.  But TPP attempt to base their unjust

21 enrichment claim on Dr. Kabins' alleged "acquisition of financial interest and ownership in the

22 separate undisclosed real property investments that properly should have belonged to [TPP]."

23 (FATPC ¶ 79).  This is insufficient to state a claim for unjust enrichment because it does not

24 constitute a claim that TPP conferred any direct or indirect benefit on Dr. Kabins, but only that

Dr. Kabins failed to live up to a putative duty to disclose an opportunity in TPP's line of business.  Dr. Kabins had no such duty.  The Court therefore dismisses this cause of action.

### 5.    Declaratory Relief

TPP ask the Court to declare that Dr. Kabins and the Kabins entities owed TPP fiduciary and contractual duties.  The Kabins entities are not named as third-party defendants.  Dr. Kabins is not alleged to have been in any position that would give rise to a fiduciary duty; however, he is alleged to have been an alter ego of the Kabins entities, which were allegedly in contract with TPP.  The Court therefore dismisses this cause of action with leave to amend with respect to contractual duties.

### 6.    Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

Dr. Kabins is alleged to have been a party to the Operating Agreements with TPP because he is alleged to be an alter ego of the Kabins entities.  The breach of contract claim is vague, however.  It does not identify the contract with TPP to which Dr. Kabins (via the Kabins entities) is alleged to have been a party.  The "breach of contract" cause of action is confusing, as well. In addition to alleging breaches of contract, it variously alleges the breach of fiduciary duties by TPD and professional negligence by Main and Main Amundson.  The Court therefore dismisses these causes of action, with leave to amend.  The contract(s) to which the Kabins entities are alleged to be parties should be identified, as should the signatories to any such contract(s).

### 7.    Indemnity and Contribution

Federal Rule of Civil Procedure 14 allows a defendant to implead a party who may be liable to indemnify against, or contribute to, any judgment awarded against the defendant:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.  But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 10 days after serving its original answer.

1    Fed R. Civ. P. 14(a)(1).  A party may assert against a third-party defendant any claim "arising

2    out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the

3    third-party plaintiff." Fed R. Civ. P. 14(a)(3).  After the ten-day limit has passed, the district

4    court has discretion to allow impleader and will not be reversed absent an abuse of discretion.

5    *Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986) (affirming denial of

6    motion to implead where it would have "complicated and lengthened" the trial).  A district court

7    is to look to all relevant factors of an individual case, such as delay, whether the delay was

8    excusable, whether it would prejudice a party, whether it would unduly complicate the pending

9    case with tangential issues, and whether the third-party complaint states a claim on which relief

10   can be granted. 3 James Wm. Moore et al., *Moore's Federal Practice* § 14.21(3) (3d ed. 2008).

11           Although a cause of action for indemnity does not arise in Nevada until the party seeking

12   indemnity has discharged a legal obligation through settlement or judgment, *Rodriguez v.*

13   *Primadonna Co., LLC*, 216 P.3d 793, 801 (Nev. 2009) (citing *The Doctors Co. v. Vincent*, 98

14   P.3d 681, 686 (Nev. 2004)), a federal court may entertain such a cause of action "prematurely"

15   so long as (1) any resulting judgment against a third-party defendant is made contingent on the

16   defendant's payment to the plaintiff or (2) the court stays any judgment against a third-party

17   defendant until the defendant shows that it has paid the plaintiff, *Andrulonis v. United States*, 26

18   F.3d 1224, 1233–34 (2d Cir. 1994) (holding that the "may be liable" language of Rule 14(a)

19   permitted a contribution claim in federal court by a defendant even before the defendant had

20   been held liable to the plaintiff, despite New York law to the contrary).

21           TPP allege that any harm to Plaintiffs was a result of the active wrongdoing of TPD, and

22   that TPP were passive with respect to any such wrongdoing, such that TPP are entitled to

23   indemnity or contribution.  Dr. Kabins argues only that TPP have not yet discharged any

24   liabilities.  In Nevada state court, this may be a problem, *see Rodriguez*, 216 P.3d at 801, but in

federal court the federal rules control within their scope, *Hanna v. Plumer*, 380 U.S. 460, 469–70 (1965), and TPP may plead indemnity or contribution under Rule 14(a) before discharging any liability, *see Andrulonis*, 26 F.3d at 1233–34.  The Court will therefore not dismiss the causes of action for indemnity and contribution.

### B.        Motion to Dismiss Amended Counterclaims (ECF No. 262)

The Benessere Defendants have alleged the following counterclaims against Plaintiffs: (1) Civil Conspiracy; (2) Breach of Fiduciary Duty; (3) Concealment; (4) Unjust Enrichment; (5) Declaratory Relief; (6) Breach of Contract; and (7) Breach of the Implied Covenant of Good Faith and Fair Dealing.  Plaintiffs have moved to dismiss.  Before addressing the counterclaims individually, Plaintiffs note that the Benessere Defendants fail to distinguish between the parties. For example, of all the Operating Agreements one or the other Plaintiff entered into with the various Benessere Defendants, only those made with Gila Bend contain the "Gila Bend Term," which prohibits members from taking part in or interfering with the management of the company. (*See* Compl. Ex. 7 at 11–12, § 7.09, ECF No. 1-10).  Plaintiffs argue that the Benessere FACC should therefore be dismissed in its entirety under Rule 8(a).

### 1.        Civil Conspiracy

"An actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983).  For the same reasons the Court dismisses this cause of action as against Dr. Kabins, *supra*, it dismisses it against Plaintiffs, with leave to amend.  The Benessere Defendants have not sufficiently pled the damage element.

### 2.        Breach of Fiduciary Duty and Concealment

For the same reasons the Court dismisses these claims as against Dr. Kabins, *supra*, it

dismisses them against Plaintiffs.

### 3.   Unjust Enrichment

Unjust enrichment is an equitable substitute for a contract, and an action for unjust enrichment therefore cannot lie where there is an express written agreement. *See Marsh*, 839 P.2d at 613 (citing *Lipshie*, 566 P.2d at 824; 66 Am. Jur. 2d *Restitution* §§ 6, 11 (1973)). Because the parties do not dispute that there were contracts between Plaintiffs and Defendants, no unjust enrichment action lies here.  The Court therefore dismisses this cause of action.

### 4.   Declaratory Relief

The Benessere Defendants request a broad declaration of rights and duties.  The Court dismisses this cause of action as superfluous, because the rights and duties of the parties will be adjudicated as a matter of course as the underlying causes of action are resolved. *See Roark v. S. Iron R-1 Sch. Dist.*, 573 F.3d 556, 562 (8th Cir. 2009).  There is no need to resort to a declaratory judgment action.

### 5.   Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

For the reasons given above, the Court dismisses these causes of action, with leave to amend.  The Benessere Defendants must  identify which Plaintiffs are alleged to have breached which agreements with which Defendants.  The allegations are currently too vague under Rule 8.

### C.   Motion to Dismiss Amended Counterclaims (ECF No. 288)

The Gutzman Defendants' counterclaims are virtually identical to the counterclaims and third-party claims brought by the Benessere Defendants: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Fraudulent Concealment; (4) Conspiracy; (5) Breach of Fiduciary Duty; (6) Unjust Enrichment; (7) Declaratory Relief; and (8) Implied/Express Indemnity.

The Gutzman Defendants allege they were not involved in any accounting activity, but

only property acquisition, development, and management. (*See* Am. Countercl. ¶ 14, ECF No. 265).  Defendant Edward Gutzman himself, through his family trust, invested in five of the same Defendant entities that one or both Plaintiffs invested in, and the remainder of the Gutzman Defendants, which Gutzman himself hold interests in, managed these Defendant entities. (*Id.* ¶ 15).  Upon discovering Jeff Chain's misappropriation of funds, Gutzman himself terminated Chain's ability to cause further damage and obtained full repayment (plus interest) of those five Defendant entities in which Gutzman had invested and whose funds Chain had misappropriated. (*Id.* ¶ 29).  Chain remains in debt to several Defendant entities from which he misappropriated funds, but the Gutzman Defendants have no connection to those entities. (*Id.* ¶ 30).

The Gutzman Defendants allege that Plaintiffs and Dr. Kabins conspired with Defendant Jeff Chain and Defendant entities owned and controlled by him in the way alleged by the Benessere Defendants, i.e., that in exchange for their silence as to Chain's misappropriations, Plaintiffs secured a promise from Chain to make good any losses his misappropriations caused. (*Id.* ¶¶ 38, 41–45).  The Gutzman Defendants argue that because Chain was a manager of the relevant Defendant entities with a fiduciary duty to their members, Plaintiffs' agreement with Chain was a an unlawful conspiracy, because the objective was the breach of Chain's fiduciary duties.  Plaintiffs move to dismiss.

### 1.    Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

For the reasons given above, the Court dismisses these causes of action, with leave to amend.  The Gutzman Defendants must identify which Plaintiffs are alleged to have breached which agreements with which Defendants.  The allegations are currently too vague under Rule 8.

### 2.    Fraudulent Concealment and Breach of Fiduciary Duty

The allegations here are confusing.  It appears to be a variation of the Breach of Fiduciary Duty claim.  The Gutzman Defendants argue that Plaintiffs violated "co-management

agreements," but it is not clear which Plaintiffs are alleged to have been parties to which co-management agreements.  It actually appears that only Chain and certain Gutzman Defendants are alleged to have been parties to such agreements.  Plaintiffs are not alleged to have been managers themselves.  In at least one place, the Gutzman Defendants have used the word "Counterclaimants" where the word "Counterdefendants" should have been used. (*See id.* ¶ 59).  There may be other similar typographical errors that are not apparent.  Because this cause of action ultimately relies on the putative fiduciary duties of Plaintiffs to the Gutzman Defendants, it stands or falls with that cause of action, which is separately pled.  No facts which could give rise to such a fiduciary duty are alleged.  Plaintiffs are not alleged to have been managers who owed a fiduciary duty to the members of any investment entity.  The civil conspiracy claim may rely on the violation of Chain's own fiduciary duty, but the concealment or breach of fiduciary duty claims must allege facts making plausible a fiduciary duty of Plaintiffs themselves to the Gutzman Defendants.  The Court therefore dismisses these causes of action.

### 3.    Civil Conspiracy

For the same reasons the Court dismisses this cause of action as against Dr. Kabins, *supra*, it dismisses it against Plaintiffs, with leave to amend.  The Gutzman Defendants have not sufficiently pled the damage element.

### 4.    Unjust Enrichment

Unjust enrichment is an equitable substitute for a contract, and an action for unjust enrichment therefore cannot lie where there is an express written agreement. *See Marsh*, 839 P.2d at 613 (citing *Lipshie*, 566 P.2d at 824; 66 Am. Jur. 2d *Restitution* §§ 6, 11 (1973)).  Because the parties do not dispute that there were contracts between Plaintiffs and the Gutzman Defendants, no unjust enrichment action lies here.  The Court dismisses this cause of action.

/ / /

### 5. Declaratory Relief

The Gutzman Defendants request a broad declaration of rights and duties.  The Court dismisses this cause of action as superfluous, because the rights and duties of the parties will be adjudicated as a matter of course as the underlying causes of action are resolved. *See Roark*, 573 F.3d at 562.  There is no need to resort to a declaratory judgment action.

### 6. Implied/Express Indemnity

The Gutzman Defendants allege that they are entitled to indemnity from Plaintiffs.  Rule 14 allows a defendant to implead a party who may be liable to indemnify against, or contribute to, any judgment awarded against the defendant. Fed R. Civ. P. 14(a)(1).  A party may assert against a third-party defendant any claim "arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Fed R. Civ. P. 14(a)(3).

The Gutzman Defendants allege that Plaintiffs should have to indemnify them against Plaintiffs own claims, not against some other party's claim.  This cause of action is dismissed.  The Gutzman Defendants have not filed a third-party complaint.  This is a counterclaim amounting to a denial of liability and a request for fees and costs.  The Gutzman Defendants have denied liability and requested fees and costs elsewhere.  The "indemnity" claim is superfluous.

### D. Motion to Dismiss Amended Crossclaim (ECF No. 291)

The Benessere Defendants have filed the First Amended Crossclaim (ECF No. 267) pursuant to Rule 13(g), asserting the following causes of action against Cross-defendants Todd W. Bergman and T.W.B. Enterprises, Inc.: (1) Civil Conspiracy; (2) Unjust Enrichment; (3) Conversion; (4) Implied/Equitable Indemnity; and (5) Contribution.  Cross-defendants have moved to dismiss.  The Benessere Defendants allege that Todd W. Bergman and T.W.B. Enterprises are alter egos of one another. (*See* Am. Cross-cl. ¶ 8, ECF No. 267).

### 1. Civil Conspiracy and Conversion

The Benessere Defendants allege that Cross-defendants conspired with Jeff Chain to convert money, property, and/or interests belonging to them by disguising the funds as real estate commissions and/or finders fees. (*See id.* ¶¶ 11–13).  They also allege that Cross-defendants conspired with Plaintiffs, Chain, and MPD to conceal Chain's and Cross-defendants' separate conversions of the Benessere Defendant's money, property, and/or interests, (*See id.* ¶ 14–15).  Both the conversion and conspiracy claims are based on the alleged agreement between Plaintiffs and Chain that Chain and MPD would guaranty Plaintiffs' investments in exchange for Plaintiffs' silence about Chain's and Cross-defendants' alleged misappropriations of the Benessere Defendant's funds. (*See id.* ¶¶ 16, 19).  The Benessere Defendants allege that Cross-defendants assisted in procuring this guaranty. (*See id.* ¶ 18).

Cross-defendants note that Judge Philip M. Pro of this District previously dismissed the crossclaims against Cross-defendants because no facts were actually alleged against them, (*see* Hr'g, Mar. 26, 2010, ECF No. 255), and argue that the First Amended Crossclaim lists only two such facts: (1) that Bergman received real estate commissions and/or finders fee payments; and (2) that Dr. Kabins received a purported personal guaranty from Chain and MPD, (*see* Am. Cross-cl. ¶¶ 13, 16).  The rest of the Crossclaim consists of legal conclusions.  Cross-defendants are correct that the First Amended Crossclaim alleges few facts implicating Cross-defendants themselves in any wrongdoing.  Only the allegation that Bergman received commissions and payments ties him to any events in this case at all, and it only ties T.W.B. Enterprises as an alter ego.  Cross-defendants are correct that there is no allegation how Cross-defendants were involved in the alleged conspiracy, and that there is nothing indicating how the alleged commissions and fees were wrongful.  The civil conspiracy and conversion claims are dismissed with leave to amend.  The Benessere Defendants must allege facts indicating the elements of a

civil conspiracy and/or conversion, such as "Bergman agreed with Chain to assist him in misappropriating funds . . . ."  The facts that Chain misappropriated funds and that Bergman received funds (from somewhere and for some reason) do not add up to an allegation of conspiracy or conversion on Bergman's part.

### 2.      Unjust Enrichment

The Benessere Defendants allege that Cross-defendants have been unjustly enriched, but they have not alleged facts making this conclusion plausible.  They allege only that Bergman received commissions and fees.  They do not allege that he performed no work for these payments or even that the Benessere Defendants are the ones who made such payments, directly or indirectly.  It is possible that the Benessere Defendants are attempting to allege that Bergman's payments were made out of funds misappropriated by Chain, but this is not clear.  If true, such an indirect benefit could support an unjust enrichment claim. *Marsh*, 839 P.2d at 613. The Court dismisses this cause of action, with leave to amend.

### 3.      Indemnity and Contribution

Rule 13(g) permits crossclaims for indemnity and contribution. *See* Fed. R. Civ. P. 13(g). The Benessere Defendants allege that any losses caused to Plaintiffs are due in whole or in part to the wrongdoing of Cross-defendants, and that the Benessere Defendants are therefore entitled to indemnity or contribution.  Cross-defendants argue that there are no facts pled indicating a nexus or special relationship between the Benessere Defendants and Cross-defendants, as is required to support a claim of indemnification or contribution. *See Rodriguez*, 216 P.3d at 802. The Benessere Defendants have alleged that Cross-defendants actually caused at least a part of Plaintiffs' harm that Plaintiffs attribute to the Benessere Defendants.  If this is the case, causes of action lie for indemnity or contribution.  However, as noted above, the Benessere Defendants have not pled enough facts to support such a claim.  The Court therefore dismisses these causes

of action, with leave to amend.

### E.    Motion to Vacate Magistrate Order (ECF No. 285)

The purposes of a deposition include discovery of information and preservation of testimony.  Testimony taken at a deposition is not automatically admissible, but objections are not to be argued over at the deposition itself.  Counsel are to make their objections on the record "in a nonargumentative and nonsuggestive manner," and then the deponent is to answer. Fed. R. Evid. 30(c)(2).  This is so that the trial judge has all testimony available but may consider objections to it before admitting the disputed evidence at trial (or in support of a motion). "Conduct that is not permissible in the courtroom during the questioning of a witness is ordinarily not permissible at deposition." *Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995), *vacated on other grounds*, 93 F.3d 1572 (Fed. Cir. 1996).  Only a claim of privilege is a legitimate evidentiary reason to refuse to answer a question at a deposition. Fed. R. Civ. P. 30(c)(2).

Despite the rules, deponents often refuse to answer questions even after their counsel's objections are duly noted, out of the unfounded fear that whatever they say will necessarily be admissible, and perhaps out of the somewhat better-grounded fear that the opposing party will use the discovered information for further research harmful to the case of the deponent.  The absence of any authority figure at a deposition often results in the deposition devolving into an unproductive squabbling match between attorneys, including improper instructions not to answer questions. *See* 7 Moore et al., § 30.43[3].  This is apparently what happened in the present case when the Benessere Defendants attempted to depose Dr. Kabins.

In their Motion to Compel (ECF No. 247), the Benessere Defendants recounted the alleged misconduct of Dr. Kabins and opposing counsel for the Magistrate Judge and requested the Magistrate Judge to order Dr. Kabins to answer twenty-six questions he refused to answer at

the first deposition, to award reasonable attorney's fees for drafting the motion, and to award the expenses of the failed deposition and the retaking of the deposition.

At the deposition, Dr. Kabins and his counsel frustrated questioning with "abusive and harassing objections," without properly answering many of the questions.  Mr. Gibson was Plaintiffs' counsel, and Mr. Spilotro was Dr. Kabins' personal counsel.  From the beginning, it was clear that Mr. Gibson was prepared to be combative.  After Mr. Massi, counsel for the Benessere Defendants, gave Dr. Kabins an overview of the deposition process and explained that he could answer "I don't know" or "I don't remember," Gibson remarked, "the witness will answer the questions in that manner that he feels most appropriate.  So I mean I appreciate your lecture to the witness, but . . . ." (Kabins Dep. 11:8–10, Jan. 30, 2010, ECF No. 285 Ex. 2).  Counsel then argued for a page and a half worth of the transcript over how long the deposition might take and whether Mr. Massi could force a two-day deposition if Dr. Kabins failed to answer all of the questions during the first day.  Kabins first noted that he and his wife, Lori Kabins, were the general partners of Kabins LP. (*Id.* 18:14–17).  The first example given to the Magistrate Judge of improper behavior by the Benessere Defendants is that Plaintiffs' and Dr. Kabins' counsel reacted to the following question this way:

> Q. Alright so the both of you do, and you don't conduct formal meetings of the partnership do you?
>
> Mr. Gibson:  Objection.  Assumes facts not in evidence, argumentative and calls for a legal conclusion.
>
> Mr. Spilotro:  It may also get into attorney/client privilege.
>
> Mr. Gibson:  And – and – and I'm going to instruct the witness not to answer the question to the extent it involves an attorney/client privilege.

(*Id.* 19:10–18).  Dr. Kabins repeatedly refused to answer the question of whether Dr. Kabins and his wife ever held formal meetings of the Kabins LP partnership, the answer to which could not

possibly in and of itself involve any attorney–client communications.  Mr. Gibson repeatedly

encouraged him not to answer this simple, innocuous question, making objections such as

"assumes facts not in evidence," "argumentative," "ambiguous," and "calls for a legal

conclusion." (*Id.* 19:20–21:7).  The next question was just as innocuous:  "[T]he partnership

itself, is it currently active?" (*Id.* 21:12).  Mr. Gibson's objection was unmeritorious: "Objection;

calls for a legal conclusion." (*Id.* 21:13).  And suggestive: "The Witness:  Um, it requires a legal

conclusion in order for me to state." (*Id.* 21:14–15).  These are simple questions that do not

require legal conclusions to answer.  A court may rule that a partnership does or does not exist as

a matter of law, but whether persons who may constitute a partnership are currently active

therein does not require a legal conclusion, only factual testimony.  The same "legal conclusion"

objections are made to virtually every question asked, for hundreds of pages of the transcript,

and the argumentation and witness coaching continues by Mr. Gibson. (*See id. passim*).  Gibson

continually instructs Dr. Kabins not to answer based on attorney–client privilege in many cases

where it does not plausibly apply. (*See id.*).  An exasperated Mr. Massi at one point asks Dr.

Kabins to "give me . . . an example . . . of activities in the partnership that did not involve any

communication with your attorney." (*Id.* 48:12–14).  This is roughly one-fifth of the way through

the deposition.  The Benessere Defendants also argued to the Magistrate Judge that Mr. Gibson

had selected a Saturday specifically so that the Magistrate Judge could not be reached to resolve

disputes.

     The Magistrate Judge held a hearing on the motion to compel on April 16, 2010.  He was

unimpressed with the explanations for Dr. Kabins' and Mr. Gibson's conduct at the deposition.

He grew audibly impatient with counsel's evasions and inadequate explanations at the hearing.

He called the objection to one of the questions based on attorney client privilege "absolutely

bogus" and "frivolous."  After counsel could not identify the legal authority to object to a

1   question at a deposition for being "ambiguous," the Magistrate Judge again used the word

2   "frivolous," and called the hearing an "absolute waste of time."  Counsel alleged there were

3   "cases" that supported such an objection but could not cite to them, and they did not appear in

4   counsel's brief.  The Court then stopped argumentation and granted the motion in its entirety,

5   ordering Dr. Kabins to answer the objected-to questions at a deposition, as well as any questions

6   that naturally flowed from them, with no time limit and under the supervision of the Magistrate

7   Judge himself during normal business hours. (*See* Hr'g, Apr. 16, 2010, ECF No. 266).

8          The party asserting attorney–client privilege as a defense to answering a question at a

9   deposition has the burden of clearly showing the items objected to and the reasons for it. *Hisaw*

10  *v. Unisys Corp.*, 134 F.R.D. 151 (W.D. La. 1991).  A deponent must answer with facts known,

11  regardless of whether those same facts happen to be memorialized in attorney work product or

12  were discussed with an attorney, so long as the content of actual attorney–client discussions or

13  the actual work product of an attorney are not revealed. *See Wilson v. Lakner*, 228 F.R.D. 524,

14  529 (D. Md. 2005); *In re Vitamins Antitrust Litig.*, 217 F.R.D. 229, 234–35 (D.D.C. 2002).

15         Plaintiffs and Third-party Defendant Dr. Kabins object to the Magistrate Judge's order.

16  The Court denies the motion to vacate the Magistrate Judge's order, as the order was not clearly

17  erroneous.  A judge may compel a deponent to answer questions that are not properly the subject

18  of privilege, while preserving the deponent's right to refuse to answer questions properly subject

19  to privilege. *See, e.g.*, *In re Pasco Tobacco Co.*, 41 B.R. 394, 396 (Bankr. Pa. 1984).  And in this

20  case, the Magistrate Judge will personally supervise the deposition.  In this sense, the present

21  motion is unripe, because the Magistrate Judge has not made any final rulings concerning which

22  questions will still be properly subject to a claim of privilege.  But even considering the ruling

23  from the hearing as final, the Magistrate Judge did not clearly err, because the vast majority of

24  questions Dr. Kabins refused to answer do not appear to plausibly implicate attorney–client

privilege.  The few questions that might involve attorney–client communications can be properly

objected to at the deposition, which the Magistrate Judge will supervise.  The Court will not

vacate the Magistrate Judge's order.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss Third-party Complaint (ECF No.

208) is DENIED as moot.

IT IS FURTHER ORDERED that the Motion to Dismiss First Amended Third-party

Complaint (ECF No. 238) is GRANTED in part, with leave to amend in part.

IT IS FURTHER ORDERED that the Motion to Dismiss Amended Counterclaims (ECF

No. 262) is GRANTED, with leave to amend in part.

IT IS FURTHER ORDERED that the Motion to Dismiss Amended Counterclaims (ECF

No. 288) is GRANTED, with leave to amend in part.

IT IS FURTHER ORDERED that the Motion to Dismiss Amended Crossclaim (ECF No.

291) is GRANTED, with leave to amend.

IT IS FURTHER ORDERED that the Motion to Vacate Magistrate Order (ECF No. 285)

is DENIED.

DATED this 27th day of July, 2010.

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE