UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
LAS VEGAS, NEVADA

KABINS FAMILY LIMITED        )
PARTNERSHIP, et al.,         )   CASE No. 2:09-CV-1125-GMN-RJJ
                             )
            Plaintiffs,      )
                             )
        vs.                  )
                             )
CHAIN CONSORTIUM, et al.,    )
                             )
            Defendants.      )   Las Vegas, Nevada
                             )   June 18, 2010
_____ )   1:13:06 p.m.
And related cases and parties)

**HEARING ON MOTIONS**

THE HONORABLE ROBERT J. JOHNSTON PRESIDING
MAGISTRATE JUDGE OF THE U.S. DISTRICT COURT

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____
2:09-CV-1125-GMN-RJJ      Kabins v. Chain      6/18/10    **Motions**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 908-7998 - gayle@nwranscripts.com                    1

APPEARANCES:


FOR THE PLAINTIFFS:        JOHN SCOTT BURRIS, Esq.
                           JODI DONETTA LOWRY, Esq.
                           Gibson Lowry Burris, LLP
                           7201 W. Lake Mead Boulevard
                           Las Vegas, Nevada  89128
                           sburris@gibsonlowry.com
                           jdlowry@gibsonlowry.com



FOR THE DEFENDANTS:        For 99th & Indian School, et al.:
                           WILLIAM KERRY SKAGGS, Esq.
                           Law Office of William Kerry Skaggs
                           401 N. Buffalo Drive, Suite 100
                           Las Vegas, Nevada  89145
                           kerryskaggs@msn.com

                           For Benessere, et al.:
                           CHAD A. BOWERS, Esq.
                           ALBERT D. MASSI, Esq.
                           Law Office of Chad A. Bowers, Ltd.
                           3202 W. Charleston Blvd.
                           Las Vegas, Nevada  89102
                           chadbowers@lawyer.com
                           mamasoto@yahoo.com

                           For GE III, et al.:
                           BARBARA I. JOHNSTON, Esq.
                           10655 Morning Harbor Avenue
                           Las Vegas, Nevada  89128
                           bjohnston@whiteandmeany.com

```
 1  LAS VEGAS, NEVADA                    FRIDAY, JUNE 18, 2010

 2              PROCEEDINGS BEGAN AT 1:13:06 P.M.

 3         THE COURT:  Please be seated.

 4         THE CLERK:  Kabins Family Limited Partnership, et

 5  al, versus Chain Consortium, et al.  2:09-Civil-1125-GMN-RJJ.

 6  This is before the Court on plaintiff's motion, Docket 280.

 7         THE COURT:  Thank you.

 8         Counsel, please enter your appearances for the

 9  record.

10         MR. BURRIS:  Scott Burris on behalf of plaintiffs

11  and third party defendant Dr. Kabins.

12         THE COURT:  Thank you.

13         MS. LOWRY:  J.D. Lowry here for the same parties,

14  Your Honor.

15         THE COURT:  Thank you.

16         MR. BOWERS:  Chad Bowers on behalf of the Benessere,

17  Cipriani, Gila Bend and the related defendants, Your Honor.

18         THE COURT:  Thank you.

19         MR. MASSI:  Al Massi on behalf of Benessere,

20  Cipriani and Gila Bend, Your Honor.

21         THE COURT:  Thank you.

22         MR. SKAGGS:  Good afternoon, Your Honor.  William

23  Kerry Skaggs on behalf of Gabe Martinez, Indian School

24  Management, LLC, Indian School, LLC, and Phoenix 83rd, LLC.

25         MS. JOHNSTON:  Barbara Johnston on behalf of Eddie
```

1  Gutzman and the Gutzman entities, Benessere Management, LLC

2  and Cipriani Management, LLC.

3          THE COURT:  Thank you.

4          This matter is on for a hearing in regard to the

5  plaintiff's motion to disqualify Mr. Massi from representing

6  certain defendants.  That motion is Number 280 in the court

7  file.  The Court has received a response, which is Number 290,

8  and a reply, 294.  Briefing in the opposition and response

9  Number 290 was by Albert Massi Limited.

10         Did anyone else on the defense side take any

11 position in regard to the motion?

12         MR. SKAGGS:  No, Your Honor.

13         THE COURT:  Mr. Skaggs, no.

14         MS. JOHNSTON:  No, Your Honor.  We just filed a

15 joinder.

16         THE COURT:  Thank you.

17         MS. JOHNSON:  Thank you, Judge.

18         THE COURT:  Thank you.

19         Who will speak on behalf of the plaintiff?

20         MR. BURRIS:  Scott Burris, Your Honor.

21         THE COURT:  Please come forward.

22         MR. BURRIS:  Good afternoon, Your Honor.

23         We begin this analysis with an undisputed fact.  As

24 Mr. Massi has admitted, he has a substantial self interest,

25 which includes the interest of Mr. Massi's children and Mr.

1  Massi's family members of around 3 million dollars with

2  respect to the defendants that Mr. Massi is representing.

3  And when there is this kind of a self interest, the *In Re:*

4  *Singer* case makes it clear that there is a presumption which

5  ultimately weighs in favor of disqualification here.

6            It's also clear that the opposition brief does not

7  address the presumption, nor the *Singer* case at all, despite

8  the fact  that the plaintiffs began the analysis for

9  disqualification with the conflict and appearance of

10 impropriety and the presumption of impropriety that arises

11 out of that *Singer* case.

12            Instead, Mr. Massi did submit with the opposition

13 brief, a declaration, that stated essentially that he doesn't

14 really need the money, quote:

15            "I only have an interest in handling legal matters

16      for friends and/or acquaintances who request it and I do

17      so."

18            Now he also declares that plaintiffs' assertions

19 regarding Mr. Massi's self interest are quote, "simply

20 stupid."  And then he offers to exchange his fees with our

21 firm's fees.

22            And we submit that this kind of a response

23 regarding an attorney's duty to analyze conflicts and to

24 obtain written consent for a waiver is troubling because an

25 attorney cannot be excused or discharged from that duty and

1   that analysis simply because the attorney is wealthy.  And it

2   also begs a question of who is the friend or acquaintance in

3   this case.

4          Mr. Massi has indicated to us that his children's

5   college funds are at issue and that plaintiffs can't have his

6   money.  Well, the direct quote was: "they can't have my

7   money."

8          And now Mr. Massi asks us to believe that he

9   doesn't really care about his money.  But his position on

10  this matter is not consistent.  For example, Mr. Massi also

11  declares that he advised our firm that the plaintiff's

12  lawsuit involved, quote:

13         "Taking money from myself and other individuals I

14      believed to be friends and acquaintances of Dr. Kabins."

15         So based on our analysis of the *In Re:  Singer* case,

16  a 1993 Nevada Supreme Court case, we realized that the

17  presumption described by that case appears to dispose of the

18  issue for this case.  So we put that analysis at the beginning

19  of our brief, and indeed in the opposition brief we believe

20  that that -- that the opposition brief itself demonstrates

21  that there really is no good counter for the presumption that

22  arises out of the *In Re:  Singer* case, such that the

23  disqualification is appropriate.

24         We also analyzed apparent current conflicts, as well

25  as those arising out of the former client conflict rules and

1    it appears in brief that Mr. Massi has elected to offer

2    counter argument only with respect to that last issue, the

3    former client conflict analysis.

4           For this case Mr. Massi's duties must be primarily

5    to the defendants.  Thus, for example, if Mr. Massi was to

6    learn confidential information from another client, take for

7    example Mr. Corbo [phonetic] or maybe the trustee for the

8    Massi Family Trust, and that information would be helpful in

9    satisfying his duty of loyalty to these defendants, then Mr.

10   Massi faces a classic conflict of interest.  That is, Mr.

11   Massi cannot use the client's confidential information, even

12   though Mr. Massi must use that confidential information to

13   satisfy this duty of loyalty to the defendants.

14          THE COURT:  Mr. Burris, in order to facilitate

15   this, why don't you take the professional rule that's at

16   issue, let's take that as the jumping off point; let's stack

17   a couple of facts on that and then let's make the point, and

18   then touch each of those that apply here succinctly, so that

19   we can hear back.  The opposition addresses in a broader

20   stroke some of those, and I think the better place to start

21   is the professional rule of conduct.  And then let's put the

22   predicate on top of it that shows the violation or what's

23   required and then let's get an appropriate response.

24          MR. BURRIS:  Okay.  We can certainly begin with the

25   rules.  Just a side note, we did begin with the general

 1  appearance of --

 2          THE COURT:  And if you could speak a little louder

 3  because I'm not sure if the people behind you can hear real

 4  well.  This is not much of an amplification system that we

 5  use.  It's more of a recording system.  So the courtroom,

 6  while it's large, is not that large and we depend upon

 7  everybody's volume from their own voice to carry.  And they

 8  are behind you.  I know you're kind of soft as you're coming

 9  toward the bench and I suspect it's harder to hear behind.

10          MR. BURRIS:  Oh, I apologize.  I can hear myself

11  very well through the monitor so I presumed that other people

12  could as well.

13          I think we -- we begin, of course, with the fact

14  that we have a set of rules, such as 1.7, 1.8, 1.9, and we

15  also have --

16          THE COURT:  That's where I want to begin.  Just

17  pick the one out you want to talk about or that you believe

18  applies and then let's go from there.

19          MR. BURRIS:  Okay.  And I would like to include the

20  appearance of impropriety is also something that may not

21  necessarily be one of those rules.

22          THE COURT:  Okay.  That's going to be a tougher

23  case to make.  Let's start with the specific rules because

24  that's usually a better place and where you find most of

25  these cases grounded.

1          MR. BURRIS:  Okay.  Begin with Rule 1.8.

2          "A lawyer shall not enter into a business

3     transaction with a client and only acquire an ownership

4     possessory security or other pecuniary interest adverse

5     to a client unless..." -- with several requirements..

6          There are a couple of issues, of course, with this.

7   The first one is the business transaction.  There's -- you

8   know, there's no dispute that Mr. Massi is engaged --

9          THE COURT:  Okay.  Now let me -- let me ask you

10  about this one generally, as we're casting this one, okay,

11  because it talks about a lawyer entering a business

12  transaction with a client.  Okay.  Now your client is not the

13  client he's entered the business transaction with, is that

14  correct?

15         MR. BURRIS:  That's not correct.

16         THE COURT:  Okay.  Then let's make that point.

17         MR. BURRIS:  Well, I need to qualify that.  It's

18  not correct unless the Court considers former clients to be

19  exclusive of people who are in privy with former clients.

20  For example, the rule does say the word "client" but the

21  interpretation of that and the application of that has been

22  to -- to not necessarily mean someone who meets the technical

23  requirements of signing a fee agreement and giving a retainer,

24  but also those who are in privy with a client.

25         And actually the case law that Mr. Massi has cited

1  to, when you look at it, it shows that, indeed, the

2  plaintiffs would qualify as a client under the application of

3  that.

4         THE COURT:  So in Rule 1.8 the lawyer is Mr. Massi?

5         MR. BURRIS:  Right.

6         THE COURT:  The business transaction with a client,

7  who is the client?

8         MR. BURRIS:  The defendants Benessere, Cipriani,

9  Gila Bend, and for this time just Buckeye 77.

10         THE COURT:  Give me those clients once again.

11         MR. BURRIS:  Benessere, Cipriani, Gila Bend, and

12  Buckeye 77.

13         THE COURT:  Okay.

14         MR. BURRIS:  Now --

15         THE COURT:  And what's the transaction?

16         MR. BURRIS:  Okay.  The business transaction in this

17  case is actually an ongoing business trans -- it's more of a

18  business relationship.  The --

19         THE COURT:  Whoops, let me back up before I -- I'm

20  probably getting myself a little out of order here.

21         Okay, so we've got these entities, these four

22  entities identified.  Where does the plaintiff fit in regard

23  to those entities?

24         MR. BURRIS:  The plaintiff is in privity with those

25  entities.

```
 1            THE COURT:  What do you mean in privity?

 2            MR. BURRIS:  On at least two different levels.  As

 3  Mr. Massi and those defendants have alleged that the

 4  plaintiffs are somehow controlling shareholders or majority

 5  shareholders, so they are owners or co-owners of those claims.

 6  Additionally they have a privity of --

 7            THE COURT:  Take me back now.  The plaintiff here is

 8  Kabins Family, LLC.

 9            MR. BURRIS:  And Lori C. Kabins Separate Property

10  Trust.

11            THE COURT:  Where are the other -- yeah, let me get

12  the list.  It would really help in something like this if

13  you'd put everybody's name in.  But I -- the opposition does

14  it conveniently for me, so I appreciate that.

15            Okay.  So we've got family -- Kabins Family Limited

16  Partnership.  They own an interest in these four entities?

17            MR. BURRIS:  No.

18            THE COURT:  Okay.  What about Lori C. Kabins as

19  Trustee for Lori C. Kabins Separate Property Trust?

20            MR. BURRIS:  No, not exclusively.  I need to --

21            THE COURT:  Well, I don't mean exclusively.  Does

22  Lori C. Kabins as Trustee own an interest in any of these

23  four entities?

24            MR. BURRIS:  Yes.

25            THE COURT:  Yes.
```

```
 1              MR. BURRIS:  The Benessere.

 2              THE COURT:  Okay.  What does she own?

 3              MR. BURRIS:  The Benessere and the Cipriani.  The

 4  Kabins Family, of course --

 5              THE COURT:  Slow down.  Slow down.  All right, so

 6  she owns an interest in Cipriani --

 7              MR. BURRIS:  Cipriani and Benessere.

 8              THE COURT:  -- and Benessere.

 9              MR. BURRIS:  That's correct.

10              THE COURT:  And she holds those interests as

11  Trustee?

12              MR. BURRIS:  The trust holds those interests

13  directly.

14              THE COURT:  Okay.  All right.

15              MR. BURRIS:  Then the Kabins Family --

16              THE COURT:  What is the -- what is the interest

17  that's held?

18              MR. BURRIS:  An equity interest represented by an

19  investment of approximately 1 million dollars each.  The

20  market fluctuates, so I'm not sure exactly what -- what that

21  works out to in another calculations.

22              THE COURT:  Okay.

23              MR. BURRIS:  Then the Kabins Family owns an equity

24  interest in Gila Bend.  And formally --

25              THE COURT:  Kabins -- Kabins Family Limited
```

1    Partnership?

2            MR. BURRIS:  Well, since this litigation it's

3    actually changed the status to a Kabins Family, LLC, which we

4    just found out recently.  But it is Kabins Family still, but

5    LLC is actually more accurate.

6            THE COURT:  Okay.  So is Kabins Family, LLC, being

7    substituted in the case for Kabins Family Limited

8    Partnership?

9            MR. BURRIS:  Likely not.  There actually wasn't a

10   separate entity.  It simply changed its own status.  So we

11   probably just need to move to amend the name of the -- of the

12   plaintiff.

13           THE COURT:  Well, that's what I'm asking.  Is the

14   plaintiff going to become Kabins Family, LLC, rather than

15   Kabins Family Limited Partnership?

16           MR. BURRIS:  Yes, indeed.

17           THE COURT:  Okay.  All right.  And which entities

18   -- which defendants does Kabins Family, LLC, own an interest

19   in?

20           MR. BURRIS:  Well, for today's purposes, just that

21   one.

22           THE COURT:  Which one?

23           MR. BURRIS:  The Gila Bend.

24           THE COURT:  Gila Bend?

25           MR. BURRIS:  Yes.

```
 1              THE COURT:  Okay.

 2              MR. BURRIS:  And formerly an interest in the

 3   Buckeye --

 4              THE COURT:  And what is that interest?

 5              MR. BURRIS:  It's another equity ownership position

 6   represented by, I believe again, a one million dollar

 7   investment.  Although -- I'm sorry, I think one of those is a

 8   two million dollar investment.

 9              THE COURT:  One of what?

10              MR. BURRIS:  One of the equity interests for one of

11   the plaintiffs I believe is actually a two million dollar

12   interest.

13              THE COURT:  Okay.

14              MR. BURRIS:  Now there's --

15              THE COURT:  All right.  What's the business

16   transaction?

17              MR. BURRIS:  The business transaction begins with

18   the contract for entering into an ongoing relationship with

19   these companies.

20              THE COURT:  Contract to make a contract?

21              MR. BURRIS:  Contract to create a relationship of

22   doing business.

23              THE COURT:  Is there a relationship or a contract in

24   place?

25              MR. BURRIS:  Yes.
```

```
 1            THE COURT:  Okay.  What is it?

 2            MR. BURRIS:  The contract is for the investor to,

 3  of course, deliver funds, and then be entitled to voting,

 4  profit sharing, some sort of input and influence with respect

 5  to the management.  Especially important to both with respect

 6  to disposition of assets.  It's actually a current issue

 7  right now in part of their ongoing business the contract

 8  entitles these different people to vote over the next week

 9  or so, on whether or not to sell half of the company, 500

10  acres.

11            THE COURT:  Okay.  All right.  That contract is

12  memorialized in some way?

13            MR. BURRIS:  Now I don't have a copy of Mr. Massi's

14  contract.  However --

15            THE COURT:  Well, what about the Kabins' parties --

16            MR. BURRIS:  Yes, Your Honor, those are --

17            THE COURT:  -- who have an interest?

18            MR. BURRIS:  -- those are attached to the

19  complaint.

20            THE COURT:  Which exhibit?

21            MR. BURRIS:  I'm not exactly sure.  It's in the

22  first few exhibits of the complaint.  There are just the

23  operating agreements for each one of the primary investment

24  companies.  We also submitted those agreements in a

25  supplemental briefing that Judge Pro had requested.
```

```
 1            THE COURT:  Okay.  And what interest does the

 2   lawyer hold in regard to these business transactions and

 3   entities?

 4            MR. BURRIS:  Well, in sum, we -- I'm not sure if

 5   you'd like me to be specific about each interest held by Mr.

 6   Massi or controlled by Mr. Massi, or just a total?

 7            THE COURT:  However you want to describe it.

 8            MR. BURRIS:  Okay.

 9            THE COURT:  And then if I've got a question I'll

10   ask it.

11            MR. BURRIS:  All right.

12            THE COURT:  If we go at this pace we're going to be

13   here 'til 11 o'clock tonight.

14            MR. BURRIS:  Mr. Massi --

15            THE COURT:  I really -- I really need you to kind

16   of focus on things for me and take me to the heart of this

17   matter.  Okay?  You cite Rule 1.8.  All I'm asking is, who's

18   the lawyer, who's the client, what's the business transaction,

19   what interest does the lawyer have in it that creates the

20   conflict that violates professional Rule 1.8?  And then I'm

21   going to ask the same set of questions with each of the rules

22   that you're citing having been breached here.

23            MR. BURRIS:  Okay.  The lawyer, of course, is Mr.

24   Massi.  The contract he's entered with these clients is an

25   operating agreement that entitles him to a business
```

1   relationship with this client.  That business relationship is

2   ongoing.

3          THE COURT:  What does that mean?  Is he an investor?

4          MR. BURRIS:  At a minimum.

5          THE COURT:  With all four entities?

6          MR. BURRIS:  With respect to the first three, I

7   don't believe he still has an equity interest in Buckeye 77.

8          THE COURT:  Okay.  I don't know which -- I don't

9   know which you're calling th first three.  So you're probably

10  going to have to help the record out here and spell out which

11  three or eliminate one.

12         MR. BURRIS:  Benessere, Cipriani and Gila Bend.

13         THE COURT:  Okay.  And what does the operations

14  agreement do?

15         MR. BURRIS:  It entitles Mr. Massi to an ongoing

16  relationship with each one of these companies with the right

17  to vote and be entitled to distributions.  And in some cases I

18  believe he's on an advisory board.  I believe he also

19  influences or is involved with influencing the managers with

20  respect to the operations of the business.

21         THE COURT:  Okay.

22         MR. BURRIS:  That's probably outside the scope of

23  what the contract entitles him to, which is part of our point

24  today.

25         THE COURT:  What's -- where's the operations

1   agreement contained?  Is that an exhibit to this motion?  I

2   didn't see it.

3           MR. BURRIS:  No.  The -- the contract with Mr.

4   Massi is not one that we have been able to get yet.  But we

5   believe that it's the -- generally the same contract, just

6   with his signature.  The same contract that the plaintiffs

7   have.

8           THE COURT:  Okay.  So he's an investor and he's

9   entitled to participate in the ongoing business, just like the

10  plaintiff investors are?

11          MR. BURRIS:  At a minimum.

12          THE COURT:  At a minimum.  What do you mean?

13          MR. BURRIS:  Well, as I've said and as part of our

14  brief says, because of his relationship with the client, he

15  has been able to engage in additional privileges beyond the

16  contractual relationship as the attorney.

17          THE COURT:  And where is that memorialized?

18          MR. BURRIS:  In our -- in our brief.

19          THE COURT:  No, no.  Where is it memorialized?  I

20  appreciate that it's in your brief, but where do you get -- I

21  mean is somebody giving that in a deposition?  Do you have

22  another contract that shows that?  Do you have minutes of the

23  corporation showing that?  From where does it spring?

24          MR. BURRIS:  I believe it's in --

25          THE COURT:  Where's the factual predicate located?

1           MR. BURRIS:  It comes -- it comes from multiple

2     sources.  The first source here that comes with this brief

3     is the declaration from myself when I met with Mr. Massi and

4     Mr. Corbo, the manager for Cipriani, where Mr. Massi and Mr.

5     Corbo informed me that Mr. Massi does represent Mr. Corbo as

6     the manager for Cipriani.

7           THE COURT:  Who's the manager, Corbo or Massi?

8           MR. BURRIS:  Dana Corbo, Esquire, an attorney is

9     the manager for -- is one of the managers for Cipriani.

10    Unless -- I'm sorry.  We've just -- after we found our brief

11    we received a notice of resignation of management from Mr.

12    Corbo, but I believe that was only with respect to Gila Bend.

13    So, to my understanding, Mr. Corbo is still the manager for

14    Cipriani.

15          THE COURT:  Okay.  All right, how does Corbo touch

16    Massi --

17          MR. BURRIS:  I'm sorry?

18          THE COURT:  -- and effect this 1.8 rule application

19    here?

20          MR. BURRIS:  Well, with respect to the fairness of

21    the relationship, we've shown, for example, that Mr. Corbo,

22    in advancing what appears to be Mr. Massi's interest, has

23    used his management influence to try to gain some sort of

24    indemnity and additional payment privileges for Mr. Massi

25    that -- we believe that that kind of an influence that Mr.

1  Massi has over the company in that situation is -- is

2  something that we can't ignore, that certainly gives rise to

3  a conflict situation.  Multiple conflict situations.

4          THE COURT:  Okay.  In Rule 1.8 then, so that I'm

5  clear, and help me get on the same page where you are.

6          All right, 1.8, we've got a lawyer, Mr. Massi, who

7  entered into a business transaction, which is he's an

8  investor participant in all four entities?

9          MR. BURRIS:  I believe just the first -- just

10 Benessere, Cipriani and Gila Bend.

11         THE COURT:  Okay.  So Buckeye is not an issue then

12 for 1.8?

13         MR. BURRIS:  Well, no.  Currently he's not an owner,

14 member of Buckeye 77.  During the relevant time period he was

15 and the plaintiffs were at the same time.

16         THE COURT:  He was what?

17         MR. BURRIS:  He was an equity member and owner of

18 Buckeye 77 at the same time the plaintiffs were.

19         THE COURT:  Okay.  All right.  And the client here

20 is the four entities.  Is that right?

21         MR. BURRIS:  Yes.

22         THE COURT:  All right.  And he acquired -- is this

23 an ownership, possessory, security, or other pecuniary

24 interest adverse to a client?

25         MR. BURRIS:  A pecuniary interest and ownership

1  interest.  I don't believe it's possessory.  It could be an

2  argument for security but I don't -- I don't think that's

3  helpful right now.

4          THE COURT:  And how do you define or describe that

5  pecuniary or ownership interest?

6          MR. BURRIS:  Mr. Massi's multimillion dollar

7  personal investment on behalf of himself, his children and his

8  family.

9          THE COURT:  Okay.  And then that is adverse to a

10 client?

11         MR. BURRIS:  Correct.

12         THE COURT:  Which client are we talking about

13 there?

14         MR. BURRIS:  Each of those first three, Benessere,

15 Cipriani and Gila Bend.

16         THE COURT:  Okay.  All right.

17         MR. BURRIS:  And that I think is where we should

18 also include the fact that this is the rule that the *In Re:*

19 *Singer* is talking about, that this situation now gives rise

20 to a presumption of impropriety.

21         THE COURT:  Okay.  All right, the rule continues and

22 it says "unless."  Do those apply?

23         MR. BURRIS:  No, they do not.  And in fact, we

24 requested some sort of verification or evidence of satisfying

25 some of these requirements, and Mr. Massi's office has

```
 1   refused.

 2             THE COURT:  Okay.  Anything else in Rule 1.8?

 3             MR. BURRIS:  Yes.  The interest of Mr. Corbo as the

 4   manager is a client.  And Mr. Corbo's personal interests are

 5   also potentially adverse to Mr. Massi's interests.  It --

 6             THE COURT:  Well --

 7             MR. BURRIS:  -- gives rise to the exact same

 8   presumption.  There's --

 9             THE COURT:  -- is Corbo -- Corbo named as an

10   individual defendant?

11             MR. BURRIS:  Not anymore, Your Honor.

12             THE COURT:  He was at one time?

13             MR. BURRIS:  He was named in the -- he was in the

14   first complaint.  We dismissed Mr. Corbo without prejudice.

15             THE COURT:  Okay.  So what's the problem in regard

16   to Corbo?

17             MR. BURRIS:  Your Honor, with that situation it's

18   -- it's something that I believe is more squarely appropriate

19   for the appearance of impropriety analysis.  I would --

20             THE COURT:  Okay.  Let's go to the next one then,

21   if we're through with 1.8.  Anything further there, Mr.

22   Burris?

23             MR. BURRIS:  No, I don't believe so, Your Honor.

24             THE COURT:  Okay.  Which rule is next violated?

25             MR. BURRIS:  Rule 1.9.
```

```
 1              THE COURT:  Okay.

 2              MR. BURRIS:  A lawyer, talking again about Mr.

 3   Massi, formally represented a client.  And now we need to, I

 4   believe, pull out some facts that we have.

 5              THE COURT:  Okay.  Who's the former client?

 6              MR. BURRIS:  Cipriani and the members of Cipriani,

 7   which includes the plaintiffs.

 8              THE COURT:  Okay.  So Mr. Massi formerly represented

 9   Cipriani?

10              MR. BURRIS:  Well, this fact is in dispute, with all

11   fairness to Mr. Massi.

12              THE COURT:  What do you have to show it's not in

13   dispute?

14              MR. BURRIS:  There was a case that, in state court,

15   of Mr. Massi named as a plaintiff, and I believe Mr. Corbo

16   and others, versus many of the defendants in this case.  The

17   attorney of record was a Susan Frankewich.  Now I contacted

18   Ms. Frankewich and asked for her permission to contact her

19   client, Mr. Massi.  Mr. Massi then informed my colleague,

20   Mr. Gibson, that Mr. Massi was the attorney for this case

21   and that we did not need to ask Ms. Frankewich her permission

22   to talk to him, that he was the attorney.

23              Now when I read through the opposition brief, at

24   first I was disturbed because the opposition brief says Massi

25   Limited never represented Cipriani or any other parties,
```

1   including any members of Cipriani in a state court action.

2   But then when I looked down and saw that Mr. Massi does what

3   we do, he distinguishes between himself and Massi Limited.

4   Later in the brief it says, you know, neither Massi nor

5   Massi Limited have had any involvement, et cetera, et

6   cetera.  So I thought, okay, this -- this is actually the

7   opposition saying Massi Limited, not Mr. Massi, because it

8   was clear  that Mr. Massi had communicated I'm the attorney

9   on this case.  Well --

10          THE COURT:  Who were the parties in the state case?

11          MR. BURRIS:  Again, it was Mr. Massi as a plaintiff,

12  Mr. Corbo I believe as a plaintiff, a nominal description of

13  the members of Cipriani.  Something about on behalf of the

14  company and the members of Cipriani, which of course includes

15  plaintiff or his trust.

16          THE COURT:  And who was the defendant?

17          MR. BURRIS:  Some of the same defendants here, such

18  as Mr. Jeff Chain, Mr. Eddie Gutzman.

19          THE COURT:  Well, now are we dealing with their

20  conflicts here too?

21          MR. BURRIS:  I'm sorry, whose conflicts?

22          THE COURT:  Chain and Gutzman?

23          MR. BURRIS:  No.

24          THE COURT:  Okay.  Let's -- were Benessere,

25  Cipriani, Buckeye 77, or Gila Bend, were they parties in the

```
 1  state case?

 2           MR. BURRIS:  No, just Cipriani.

 3           THE COURT:  Did -- I'm sorry, I may have

 4  misunderstood.  Didn't I just say -- was Benessere, Cipriani,

 5  Buckeye 77 or Gila Bend a party in the state case?  You said

 6  no, and then you said just Cipriani.  Was Cipriani a party in

 7  the state case?

 8           MR. BURRIS:  Indeed.

 9           THE COURT:  They were?

10           MR. BURRIS:  Yes.

11           THE COURT:  A party defendant, party plaintiff?

12           MR. BURRIS:  Plaintiff.

13           THE COURT:  Okay.  So in -- you've got a case where

14  Massi was a plaintiff, Corbo was a plaintiff, and Cipriani was

15  a plaintiff?

16           MR. BURRIS:  I may have -- I'm sorry, I may have

17  just confused the Cipriani Management with the Cipriani

18  Company.  Could you give me just a quick second to pull up the

19  state case?

20           MR. SKAGGS:  We might be able to assist here, Your

21  Honor.

22           MS. JOHNSON:  It's Exhibit 11 to your motion.

23           MR. BURRIS:  Oh.  Okay.

24           THE COURT:  Thank you, Ms. Johnson.

25           MR. BURRIS:  Oh, okay.  So on behalf of Mr. Massi, a
```

1    plaintiff, Mr. Corbo a plaintiff, others.  And then it says

2    individually --

3             THE COURT:  Let me catch -- let me catch up with

4    you here.  Just a rule of thumb, when you do a lot of

5    exhibits it's really helpful if you put a separate color or a

6    tab in so that people can find them.  When you hide them

7    behind white pages it just makes a lot of work.

8             Go ahead.  Please.  That's just an editorial comment

9    to help you practice better in this court.

10            MR. BURRIS:  Oh, I appreciate that, Your Honor.  So

11   like a courtesy copy as opposed to just the e-file?

12            THE COURT:  That's what I get all the time from

13   attorneys.  When there's a lot of exhibits --

14            MR. BURRIS:  Mm-hmm.

15            THE COURT:  -- that just helps everybody.  When

16   we're in a hearing like this --

17            MR. BURRIS:  Mm-hmm.

18            THE COURT:  -- and we say 11, we can go to it right

19   away.

20            MR. BURRIS:  Mm-hmm.

21            THE COURT:  See, what I'm stuck with here, I've got

22   several things tabbed --

23            MR. BURRIS:  Mm-hmm.

24            THE COURT:  -- I can find.

25            MR. BURRIS:  Mm-hmm.

```
 1              THE COURT:  But if it's not tabbed --

 2              MR. BURRIS:  Mm-hmm.

 3              THE COURT:  -- you've got a white page there --

 4              MR. BURRIS:  Mm-hmm.

 5              THE COURT:  -- I can't find it.

 6              MR. BURRIS:  Well, I will --

 7              THE COURT:  And you don't have a running total of

 8  pages, so you can't tell me a page number to look at.

 9              MR. BURRIS:  Mm-hmm.

10              THE COURT:  Just a point of practice that's helpful

11  to --

12              MR. BURRIS:  Oh, certainly.

13              THE COURT:  -- not only to the Court, but to the

14  other side when they're in a case.

15              MR. BURRIS:  Okay.  No, I appreciate that, Your

16  Honor.  And certainly --

17              THE COURT:  But go ahead, let's get this done.  I

18  have a limited amount of time and if we don't finish I'm

19  going to continue this and we'll just finish it this evening

20  because I've got criminal hearings that are coming up and I

21  have to take a break to handle those.  You move at a fairly

22  slow pace, and I don't know how to encourage you to go

23  faster, but if I could I'd like to.  I can handle it, and I

24  think the attorneys on the other side, there's four of them,

25  can pick it up pretty quickly.
```

1          MR. BURRIS:  Okay.

2          THE COURT:  All I'm asking for is, give me the rule,

3   give me the things that are involved there as to each entity

4   that's involved, the factual predicate for the violation, and

5   why there should be disqualification.

6          MR. BURRIS:  With Rule 1.9, Mr. Massi formally

7   represented the plaintiffs in this case.  That case involved

8   facts and circumstances that are substantially related to

9   this case.  For that reason alone that's a violation.

10          THE COURT:  Which plaintiffs in that case did he

11   represent that are in this case?

12          MR. BURRIS:  The members -- what it says here --

13   members derivatively on behalf of Cipriani, LLC.  And also in

14   Mr. Massi's brief where he says that it was brought to secure

15   for the membership of Cipriani.

16          THE COURT:  Okay.  I need some help here.  The rule

17   says a lawyer who formally represented a client.  Okay?  Now

18   I look at the state case and I see Susan Frankewich as the

19   lawyer.  Am I misreading something?

20          MR. BURRIS:  No, that's what I saw as well.  I

21   contacted Ms. Frankewich, asked her if I could speak to Mr.

22   Massi.

23          THE COURT:  So does she have a conflict in this

24   case under 1.9?

25          MR. BURRIS:  We haven't analyzed that.  She's not a

_____

1   part of this case, Your Honor.

2           THE COURT:  Okay.  Why does Massi have a conflict

3   under 1.9?

4           MR. BURRIS:  Because Massi said that he was

5   representing members of Cipriani.

6           THE COURT:  Where does it show -- just show me a

7   document from that court that says he was counsel of record?

8           MR. BURRIS:  Well, Your Honor, that's what I --

9   hopefully I just said was that he, in fact, points out that

10  he was not named as -- technically as the counsel of record,

11  but that he substantively told us that, in fact, he was the

12  attorney, and that we did not need to go through Mr.

13  Frankewich because he was the attorney.

14          THE COURT:  Did he sign any pleadings or submissions

15  in the state court case, which is *Massi versus Chain, et al.*,

16  Number A572350?

17          MR. BURRIS:  Not that I know of.

18          THE COURT:  Okay.  Is there something in Rule 1.9

19  that says there's another way to define a lawyer and a former

20  client?

21          MR. BURRIS:  I believe that as a lawyer and what --

22  it does not matter if he's a plaintiff, he is a lawyer.

23  There's no way to get out of the fact that he is a lawyer in

24  that case.  Who is he representing?  He said he's representing

25  Cipriani members, that includes plaintiffs.

_____
2:09-CV-1125-GMN-RJJ      Kabins v. Chain      6/18/10      **Motions**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 908-7998 - gayle@nwranscripts.com                    29

1          THE COURT:  Well, see, if he never appeared in the

2    case and he never signed anything in the case, how do you get

3    the fact that he's a lawyer who formally represented a client

4    in the case --

5          MR. BURRIS:  Your Honor --

6          THE COURT:  -- other than you've got some statement

7    that he says I was representing them?  How do we define the

8    representation and that attorney/client relationship?

9          MR. BURRIS:  Well, I certainly would not be

10   dismissive of Mr. Massi's own statements about the fact that

11   he is representing -- he is the attorney.

12         THE COURT:  I'll tell you, I am.  I'm really looking

13   for something in the case that says he appeared there as an

14   attorney --

15         MR. BURRIS:  Well --

16         THE COURT:  -- or he had an agreement to represent

17   as an attorney and he did appear as an attorney.  Did he

18   appear at a single hearing in that case?  I mean have you got

19   the docket sheet from that state court case?

20         MR. BURRIS:  No, I don't, Your Honor, and we have

21   not submitted any evidence that would say that we're claiming

22   that he --

23         THE COURT:  Okay.  So the only thing you claim is

24   he said something that he represented them?

25         MR. BURRIS:  He said, and in that conversation also

1    acted as if, and requested information that he needed to get

2    or wanted to get with respect to the plaintiffs in this case.

3    Your Honor, he says I'm representing the Cipriani members.

4    We don't have this lawsuit yet.

5              THE COURT:  Where does he say that?

6              MR. BURRIS:  Over the telephone.

7              THE COURT:  To whom?

8              MR. BURRIS:  To Mr. Gibson.

9              THE COURT:  When?

10             MR. BURRIS:  Approximately February to April of

11   2009.

12             THE COURT:  And is it substantiated by anything that

13   you have?

14             MR. BURRIS:  Mr. Massi's own opposition brief

15   where --

16             THE COURT:  Which page and line?  Or his declaration

17   might be a good place to go.

18             MR. BURRIS:  Actually the declaration makes it more

19   confusing, in my opinion.  The opposition brief --

20             THE COURT:  Well --

21             MR. BURRIS:  -- which has his signature.

22             THE COURT:  -- what kind of evidentiary predicate is

23   a -- is an argument in a brief?

24             MR. BURRIS:  Probably usually none.

25             THE COURT:  The same here.  Let's go to the

1   declaration.  Show me the paragraph in the declaration that

2   establishes he was counsel of record or represented these

3   parties in the litigation in the state court.

4           MR. BURRIS:  Well, Your Honor, as I've hopefully

5   already communicated, the declaration contradicts the brief,

6   so the declaration --

7           THE COURT:  But hopefully indicates a frustration

8   with me.  Bear with me.  I'll probably be harder to convince

9   as we go along.  And I'd appreciate you not characterizing

10  how well I do or do not do in receiving information from you.

11  Just give me the facts.  That's all I'm asking.  If you don't

12  have them, sit down, I'll hear from the other side.  I'm

13  losing my patience with you.

14          MR. BURRIS:  I understand, Your Honor.

15          The fact that we submitted, the only fact that we

16  have is Mr. Massi's word and his actions related to that word.

17  We are not going to be able --

18          THE COURT:  What actions --

19          MR. BURRIS:  -- to point anywhere else.

20          THE COURT:  Okay.  Let's go from the word to the

21  actions.  What are the actions that show?

22          MR. BURRIS:  He had requested information about

23  plaintiffs' knowledge that would be helpful.

24          THE COURT:  Where's that?  Have you got that in an

25  affidavit or a declaration somewhere from someone?

```
1              MR. BURRIS:  I do not.

2              THE COURT:  Okay.  Is it in his declaration?

3              MR. BURRIS:  No.  But, Your Honor, I can explain.

4   When I read Mr. Massi's opposition brief I thought I could

5   rely on what it said.  I did not realize right away, until

6   this morning, that he had contradicted the brief.  So I do

7   believe it would be appropriate, and I do not have the

8   declaration of Mr. Gibson, but I do believe Mr. Gibson is

9   available by phone and that that would be appropriate.  And

10  at least as a supplement, if this is the determinative factor

11  on whether or not Mr. Massi should be disqualified, I can

12  very easily get a declaration from Mr. Gibson.

13             THE COURT:  I don't know whether it's a

14  determinative factor because I'm not making the argument.

15  I'm trying to receive the information from you.  It's your

16  burden to show that there's a problem here.  And when you

17  cite a rule -- and the whole reason I want this hearing

18  structured the way I've set it, is identify the rule,

19  identify the predicate facts, and then why there should be a

20  disqualification.  That's pretty simple, straightforward

21  lawyering.  And I apologize, because I'm characterizing you

22  now and that's unfair to you.  But that's all I'm asking for.

23  Nothing -- nothing fancy here.

24             This rule says -- it reads:

25             "A lawyer who has formerly represented a client."
```

1  Okay.  What does it mean to formerly represent a client?

2  How do we establish that?  And your argument is, Mr. Massi

3  represented a client here in some state litigation.  He's not

4  counsel of record, he was not associated as counsel of

5  record.  He does not appear anywhere in the docket as having

6  signed any documents or made any oral appearance in the case.

7  So the one thing that you have is somewhere in the briefing a

8  statement that he somehow represented them in some way.

9        MR. BURRIS:  And, Your Honor, --

10       THE COURT:  What way, and does that satisfy Rule

11 1.9?  That's all I'm asking.

12       MR. BURRIS:  Your Honor, I do appreciate, and I am

13 certainly hoping that I can be accommodating and restructuring

14 the way we approach this argument.  I think that the reason

15 that we put the impropriety law first was because that did

16 seem to be the most dispositive and simple.  The

17 interrelatedness of the conflicts that arise out of the rules

18 I believe are actually much more complicated.

19       And in this situation, like I said, we -- because

20 of our emphasis on the presumption of impropriety that has

21 not been argued or overcome, it wasn't until this morning

22 that I realized Mr. Massi had contradicted the opposition.

23 And I made a response -- I'm sorry, a declaration in order to

24 have anything more on that fact.

25       THE COURT:  Okay.  So 1.9 is not shown at this

1  time?  Let me do this.

2          MR. BURRIS:  For that situation --

3          THE COURT:  Let me do this.  Let me make this

4  easier.  'Cause what I'm hearing from you is your primary

5  argument is, there's an appearance of impropriety as to Mr.

6  Massi's involvement in this case as counsel of record and as

7  a part owner of an entity.  Right?

8          MR. BURRIS:  Exactly.

9          THE COURT:  Doesn't spring out of any of the

10 rules, it just appears out of this general appearance of

11 impropriety.

12         MR. BURRIS:  I believe that it springs out of -- or

13 it's actually very closely related to 1.8.

14         THE COURT:  Okay.  Closely related or is a violation

15 of 1.8?

16         MR. BURRIS:  It is a violation of 1.8.

17         THE COURT:  Okay.  So if that's where everything's

18 focused, we can disregard the other ones and let's just focus

19 on that one.

20         MR. BURRIS:  Okay.

21         THE COURT:  Okay.  All right.  So 9 and 10 -- 1.9,

22 1.10 are off the -- off the table.

23         MR. BURRIS:  Just for the record, I do believe that

24 those are implicated, but I do also agree that we should come

25 back to them later.

1       THE COURT:  All right.  Then if they're

2  implemented, you want to argue them, go ahead.  But we're

3  struggling here with 1.9 to the point where you're saying,

4  well, maybe I ought to need -- get on and just talk about

5  the appearance of impropriety.

6       MR. BURRIS:  I'd --

7       THE COURT:  And when I move you toward appearance

8  of impropriety then you go back and say, well, it's really

9  1.8, which I don't read as an appearance of impropriety.

10  It's an actual conflict.  And you establish a factual

11  predicate for it.  This hearing can be evidentiary or non-

12  evidentiary hearing.  I set it so that we'd have plenty of

13  time to get whatever you wanted on the record here.  You said

14  you could have brought Mr. Gibson or a declaration from Mr.

15  Gibson, but he's not here.

16       So having no evidence to present, you're stuck with

17  what you've got in the declarations and the information before

18  the Court.  All I'm asking in this oral argument is, can you

19  synthesize simply and put before the Court your argument why

20  there's a professional conflict here as to Mr. Massi and he

21  should be disqualified, because I've got to tell you there's a

22  lot of law that says the Court needs to be suspicious of

23  motions to disqualify, making sure that they're not tactical

24  weapons to impair a party's representative to secure the

25  representation they'd like to have.

1              MR. BURRIS:  I can appreciate that.

2              THE COURT:  That's what this is all about.  Can you

3    help me or not?  If not, I'll just take it submitted on the

4    paperwork and I'll issue an order.

5              MR. BURRIS:  I would like to help, Your Honor.

6              The *In Re:  Singer* case says that when an attorney

7    has --

8              THE COURT:  *Singer* is based on which rule?

9              MR. BURRIS:  1.8.

10             THE COURT:  Okay.

11             MR. BURRIS:  That when an attorney has a self

12   interest, such as the kind that Mr. Massi has, and he also

13   wants to represent --

14             THE COURT:  What were the facts in *Singer*?

15             MR. BURRIS:  An attorney in *Singer* had referred a

16   person to a medical malpractice attorney.  The person got a

17   large settlement, the attorney got a referral fee.  The

18   attorney failed to disclose the full extent of his benefit

19   that would arise out of that transaction.  Subsequently there

20   were numerous --

21             THE COURT:  Failed to disclose it to whom?

22             MR. BURRIS:  To the client.

23             THE COURT:  Okay.

24             MR. BURRIS:  Subsequently because the -- apparently

25   because the person, the client, had substantial amount of

1  money, the attorney started doing additional work for the

2  client, preparing a will, preparing a trust, making himself a

3  trustee, recommending a transaction that benefitted the

4  attorney.  The transaction that benefitted the attorney,

5  however, failed to provide a full disclosure of the attorney's

6  benefit that would arise out of that relationship.

7          The Court --

8          THE COURT:  Which was what?  What was the benefit

9  the attorney was going to derive out of that relationship?

10         MR. BURRIS:  I believe that the benefit was some

11 written --

12         THE COURT:  What does the court --

13         MR. BURRIS:  -- remuneration --

14         THE COURT:  - don't give me a belief, what does

15 the court say was the benefit the attorney was going to

16 derive?

17         MR. BURRIS:  I'll need to look.  It was a pecuniary

18 benefit in relationship to an investment.  The attorney had

19 a condominium home.  He arranged for an equity swap.  He

20 failed to disclose the risks and advantages of doing the

21 equity swap.  And he also failed to disclose the full benefit

22 that the attorney was going to gain from this.  The client --

23 there was simply no evidence that the --

24         THE COURT:  What was -- what was the benefit?

25         MR. BURRIS:  The attorney's financial advantage from

1    the equity swap.

2           THE COURT:  Okay.  So there was a transaction and

3    the attorney was going to get something from the transaction

4    but he didn't tell the client?

5           MR. BURRIS:  The case is not totally clear on what

6    he did tell the client.

7           THE COURT:  But the Supreme Court still found

8    disqualification appropriate?

9           MR. BURRIS:  The Supreme Court found that a

10   disqualification -- I'm sorry, that reprimand was appropriate.

11   I don't believe that there was --

12          THE COURT:  Well, is that a bar proceeding that's on

13   appeal or is it a --

14          MR. BURRIS:  No, it's a Supreme Court case from

15   1993.

16          THE COURT:  Is it a motion to disqualify 'cause

17   we've got several good cases on disqualification in Nevada,

18   and also under the Model Rules of Federal -- of Professional

19   Responsibility.

20          MR. BURRIS:  Yeah, certainly.  And in looking at

21   those cases, what was most striking about this, as we brought

22   up in the April 16th hearing was Mr. Massi's personal self

23   interest.  This case said that when an attorney has a personal

24   self interest we're going to automatically presume that there

25   is impropriety.  And the attorney then needs to come up and

1  give clear and convincing evidence to overcome that

2  presumption.

3          And in this case what I'd -- what I'd hope to be

4  able to persuade the Court to hear first was that we have

5  shown there's no dispute that Mr. Massi has such a personal

6  interest.  This law is clear, there's a presumption of

7  impropriety --

8          THE COURT:  This law -- you're pointing to a paper.

9  What do you mean?

10          MR. BURRIS:  *In Re:  Singer*.

11          THE COURT:  Yes.

12          MR. BURRIS:  That there is a --

13          THE COURT:  Okay.

14          MR. BURRIS:  -- presumption of impropriety.

15          THE COURT:  Okay.  And *Singer* is a disciplinary case

16  with the bar, not a disqualification case?

17          MR. BURRIS:  I think that's correct.

18          THE COURT:  Well, is it correct or is it not?  You

19  seem to be holding an opinion in front of you.  What's the

20  basis?

21          MR. BURRIS:  It's a disciplinary proceeding.

22          THE COURT:  Okay.  All right.

23          MR. BURRIS:  I just didn't recall if there was also

24  a litigation going on.

25          THE COURT:  Was there a motion to disqualify?

```
 1              MR. BURRIS:  I don't believe so.

 2              THE COURT:  Was there a motion to disqualify?  Does

 3    the case say there was a motion to disqualify?

 4              MR. BURRIS:  No.

 5              THE COURT:  Okay.  Then you don't have to say you

 6    don't believe so, just say no.  Right?

 7              MR. BURRIS:  Well, I've tried to be humble and

 8    presume I don't know everything, but I understand.

 9              THE COURT:  Well, you don't have to assert whether

10    you know everything or not everything, I'm just -- you're

11    holding the opinion in front of you, right?

12              MR. BURRIS:  I am.

13              THE COURT:  I'm just asking a simple question.  Was

14    there a motion to disqualify?

15              MR. BURRIS:  And when I say I don't believe so, I --

16    no, I have not read any disqualification proceedings that were

17    associated with this.

18              THE COURT:  It's no wonder people don't like

19    attorneys.  Does it say in the -- in the opinion anywhere the

20    words "motion to disqualify?"

21              MR. BURRIS:  No.

22              THE COURT:  Okay.  Does it say Professional Rule

23    1.8?

24              MR. BURRIS:  Yes.

25              THE COURT:  Well, let's focus on that then.  Do you
```

1  have anything more to say about Professional Rule of Conduct

2  1.8?

3          MR. BURRIS:  With respect to the -- who is the

4  client, Mr. Massi has argued emphatically, and I think that

5  this is probably the strongest argument, that these

6  plaintiffs are not clients for purposes of a Rule 1.8

7  conflict, or the *In Re:  Singer* presumption of impropriety.

8          Mr. Massi cites to the case in his opposition brief

9  to support that point.  Cites to *Stella* -- sorry, *Stella*

10 *Kasza* --

11          THE COURT:  Which page are you on?

12          MR. BURRIS:  -- *versus Browner*.  I'm looking right

13 at the case.  Page 5 of the opposition.

14          THE COURT:  Okay.

15          MR. BURRIS:  Puts a block quote from page 1171 of

16 the case, two sentences.  The second sentence says:

17          "As a general rule courts do not disqualify an

18      attorney on the grounds of a conflict of interest unless

19      the former client moves for disqualification."

20          THE COURT:  Now is that case, *Kasza versus Browner*,

21 based on 1.8?

22          MR. BURRIS:  No.

23          THE COURT:  Okay.

24          MR. BURRIS:  Oh, I'm sorry.  I'm sorry.  I'm not

25 sure.

1          THE COURT:  All right.

2          MR. BURRIS:  But I --

3          THE COURT:  You have the case in front of you?

4          MR. BURRIS:  I do.  Actually I remember -- no, it

5  was not.  That case stood for the proposition that if a

6  moving party seeks disqualification the moving party is not

7  entitled to an evidentiary hearing unless the moving party

8  shows how the moving party was affected.

9          In this case the moving party only made a short

10  conclusory allegation of some sort of institutional conflict

11  of interest.  The case says that neither the moving party nor

12  the opposing party brought up this issue of standing, this

13  issue that Mr. Massi cited to.  Thus, at best, it's likely

14  dicta.  However, I don't think it's useless.

15          THE COURT:  Okay.  Which goes to an issue that he

16  raises in regard to standing for your party to bring this

17  motion to disqualify, which I've kind of jumped over because

18  I think -- I'll get to the substance of this and we'll resolve

19  it much faster that way.

20          MR. BURRIS:  Mmm.

21          THE COURT:  So what -- what help does your client

22  get out of the _Kasza versus Browner_ case, which is not on

23  Rule 1.8 where you're placing your client's position.  And I'm

24  not worried about standing right now.  What is there in that

25  case that's helpful?

1          MR. BURRIS:  That the plaintiffs do qualify as

2   clients with respect to not just 1.8 but 1.7, 8, or anywhere

3   else that mentions conflicts with respect to clients.

4          THE COURT:  Okay.

5          MR. BURRIS:  The cite that Mr. Massi provided is

6   incomplete.  It's actually a quote.  A quote mark should have

7   been in his citation.  It's a quote to a Second Circuit case.

8   He also fails to mention the Second Circuit case.  But that

9   -- that's important because it's not fresh law that the Ninth

10  Circuit has decided should apply in the Ninth Circuit.

11         When we go to the actual source of this quote, this

12  case, the court says:

13         "Indeed that they had not considered a

14      disqualification from somebody who was not a former

15      client, however..." --

16         THE COURT:  I'm going to give you about two more

17  minutes.  That's all the time I've got.

18         MR. BURRIS:  "-- however, the moving party was in

19      privy with the client."

20         So it's not just a client.  When they apply the

21  rules, when the courts apply the rules it's a client and it's

22  someone who's in privy with the client.

23         In that case, where this quote actually comes from,

24  the court said:

25         "Indeed, the moving party is not the client.  The

_____

1          moving party is merely an employee of the client."

2               And that is sufficient privy, and that case

3     actually did disqualify the attorney, despite this quote that

4     Mr. Massi gives us.

5               Now in our case we have a much tighter privy --

6     privity than just the employee type of relationship.  We have

7     someone who's a co-owner that Mr. Massi himself says is a

8     majority shareholder, and they're trying to make the argument

9     that he's a controlling -- I'm sorry, that plaintiffs are

10    controlling shareholders.  And in that kind of a situation

11    clearly the privity relationship is much tighter than it was

12    back in the other case.

13              THE COURT:  So let's me back up and understand

14    what you're saying then.  Massi is the controlling shareholder

15    in regard to the entity Cipriani?

16              MR. BURRIS:  Massi said that the plaintiffs were

17    controlling shareholders.

18              THE COURT:  Plaintiffs are controlling shareholders?

19    Okay.

20              MR. BURRIS:  And the point there was that

21    plaintiffs do qualify under the definition of client when

22    looking at the rules of conflicts with respect to current and

23    former clients.

24              THE COURT:  And is there a case that says that?

25              MR. BURRIS:  That says that somebody who's not a

```
 1   client can bring a successful motion to disqualify?  Yes.
 2            THE COURT:  No, I'm looking for the case that talks
 3   about investors by way of a trust in other business entities,
 4   like limited liability corporations have this privity quality
 5   about them that you're talking of.
 6            MR. BURRIS:  Oh, yes.  Yes, indeed.  And that's
 7   going to be in the case that we cited as Forest v. Baza
 8   [phonetic].  And --
 9            THE COURT:  That's the intermediate California court
10   from 13 years ago?
11            MR. BURRIS:  That's correct.
12            THE COURT:  Anything in Nevada or Ninth Circuit?
13            MR. BURRIS:  No, Your Honor, I don't believe so.
14            THE COURT:  Is the rule identical in California as
15   applied in 1997 as the rule we're applying here today in
16   Nevada?
17            MR. BURRIS:  I don't believe they're identical.  I
18   don't remember.  I can take a look.  I think they were
19   extremely close.
20            THE COURT:  Okay.  Thank you.
21            I've got 10 minutes that I'll give the defense.
22   Who's going to speak?
23            MR. MASSI:  With your permission I will, Your Honor.
24            THE COURT:  Mr. Massi, please come forward.
25            MR. MASSI:  Okay.  Thank you, Judge.
```

1          Let me, if I might, address in turn each of the

2     rules and why I feel counsel's argument is without basis.

3          1.7 requires a concurrent conflict directly adverse

4     to another client.  The Supreme Court in Nevada has stated in

5     the case of _Waite versus District Court_, 121 Nevada 605.  119

6     Pacific 3d 1219.  That --

7          THE COURT:  That's okay.  You can just give the

8     Nevada cite.  That's the collection I keep in my chambers.

9          MR. MASSI:  Thank you.  That's the 121.605.

10          "Generally a lawyer representing a corporate entity

11          represents only the entity, not its officers, directors,

12          shareholders or any related entities, such as parents,

13          subsidiaries or sister companies."

14          Rule 1.8, Your Honor, we believe does not apply

15     because we talked a lot about this transaction for some time

16     ad nauseam about transaction, transaction.  I invested in

17     this company in 2004.  I didn't represent the company then.

18     I did not draft the operating agreement.  I had nothing to do

19     with the contract.  I was simply an investor like another

20     hundred and -- I believe 108 or 109 individuals who were

21     drawn into what appeared to us to be a good real estate

22     investment at the time.

23          I will say as an aside and without apology, I have

24     been lucky.  I've worked awfully hard for a long, long time,

25     and I make no apology for it.  I've never cheated anyone,

1    never beaten anybody, and God's been very good.

2            So the fact that I had the money to do it worked

3    out well for my kids.  My kids are happy about it.  They tell

4    me everyday thank you.

5            And so when I said in my affidavit that I do

6    represent people who are friends and who ask me to, that's

7    true, that's the stage of practice that I'm at.  I'm trying

8    to enjoy what I have left, to the extent that I can, with the

9    time I have.  I'm going to be 65 next months.  And also enjoy

10   my kids.  So I don't apologize for that.

11           And what I said to Mr. Gibson, along with you

12   should not be suing these entities because Dr. Kabins is

13   suing himself, and I wish Mr. Gibson was here to defend

14   himself with these representations I made, is that you should

15   not be suing them because you have no basis to sue these

16   companies.  You could have 110 friends instead of 110 enemies.

17   Join with us instead of against us.

18           I did not represent anybody in state courts.  Sue

19   Frankewich did.  I was a party.  We were responsible.  As you

20   could see there are many named individuals and I had nothing

21   to do with the prosecution of that claim.

22           I did say to Mr. Gibson that I am an attorney and I

23   do not need Ms. Frankewich to be present if we have a

24   conversation.  I know what to say as an attorney.  I didn't

25   need my attorney there.  That was the context and the content

1   of that conversation.

2          Regarding Rule -- again Rule 1.8, Your Honor, the

3   transaction that counsel complains of existed long before my

4   participation and the request by the managers to have me

5   represent them in this company.  I have, from the managers, a

6   conflict waiver because I wanted to make sure there was no --

7   no suggestion of impropriety.  Each of the manager for Gila

8   Bend, Cipriani and Benessere have waived the conflict.

9          I do not represent Dana Corbo as a manager.  And a

10  Ms. Dawn, and I'm going to mispronounce it because I --

11  Mittenger [phonetic]--

12          UNKNOWN SPEAKER:  Minenger [phonetic].

13          MR. MASSI:  -- Minenger represents and has

14  represented the companies for some time.

15          And I believe to verify what I said about the

16  state court action, I believe Ms. Johnson will represent to

17  you  that she's the attorney -- an attorney in the state

18  court action, and she knows I had nothing to do with that

19  action.  I was never at the hearings and I did not prosecute

20  that action.

21          Rule 1.9 formally representing the client in

22  violation of that rule, I never represented Dr. Kabins.  I've

23  not represented anyone personally.  I did represent and do

24  represent Mr. Corbo personally, and continue to.  He, Mr.

25  Morling [phonetic], the other managers asked me to represent

1  the company, and I agreed to do that.

2  I did say that counsel's allegations -- and I did

3  characterize them maybe imprudently is stupid, that I was

4  going to try and get even for my loss of this investment with

5  fees.  I also, in my affidavit you'll see, Your Honor, said I

6  would be happy to swap fees with counsel if he wants to.  I'll

7  be happy to do that.

8  It's foolish because I am the one who said in June

9  of last year don't file this lawsuit, don't prosecute the

10  lawsuit.  If I was trying to hustle fees to try and get even

11  on an investment, which I've not lost any money on yet 'cause

12  it's not sold, as just as Dr. Kabins has not lost any money

13  on this lawsuit -- or on this investment yet, I would have

14  encouraged the lawsuit rather than discourage it and I

15  presently continue to discourage it.

16  I had nothing to do with the draft of the indemnity

17  agreement.  Again, Dawn did that for the managers.  And

18  regarding the action filed by Mr. Landers from California, I

19  did provide office space, Judge.  I forgot to represent two

20  things to the Court.  One, I did provide office space to his

21  counsel.  I had nothing to do with negotiations or prosecution

22  of the case.  I knew Mr. Landers personally and I did pay him

23  that courtesy.

24  I also want to tell you that there is an error in

25  the affidavit that I apologize for.  My wife and I are what's

1    apparently characterized by Mr. Sullivan's [sic] office as a

2    passive trustee on the children's trust.  And in there it

3    says I'm not a trustee at all.  Mr. Jerry DePalm [phonetic]

4    is the trustee.

5         We're -- parents apparently have to be passive

6    trustees, and that's as much as I know about trusts.  On the

7    -- so that's 1.7, 1.8, and 1.9.

8         On the standing, Judge, as I said I have waivers

9    from the managers.  I do not believe Dr. Kabins has any --

10   can demonstrate or has any evidence to demonstrate that I've

11   ever represented him.  And I don't believe he, as a

12   plaintiff, has standing to object to my representation by

13   defendants.

14        I have to say I did say to his attorney he is

15   suing himself.  They don't understand the process, but be

16   that as it may, I believe he lacks standing, and also lacks

17   any substantiation to support his position pursuant to the

18   rules.

19        Thank you for your time, Judge.

20        THE COURT:  Thank you.

21        MR. MASSI:  And I apologize.  Does the Court have

22   any questions of me?

23        THE COURT:  No.  Thank you.

24        MR. MASSI:  Thank you.

25        MR. BURRIS:  30 seconds, if I may?

 1            THE COURT:  Three minutes.

 2            MR. BURRIS:  Did you say three minutes, Your

 3  Honor?

 4            THE COURT:  Three minutes.

 5            MR. BURRIS:  I'll make it much shorter if you'd

 6  like.

 7            The important question for this Court is that, is

 8  this Court confident that when Mr. Massi acts as counsel for

 9  these defendants, that Mr. Massi can put aside his interests

10  in these companies, his personal -- substantial personal and

11  family and children's interests in these companies?  If not,

12  then he is not merely acting as counsel and the presumption

13  of impropriety prevails.

14            THE COURT:  So is that the standard the Court has

15  to apply is whether it's confident that it can accept this

16  relationship?

17            MR. BURRIS:  No, I don't, Your Honor.

18            THE COURT:  What's the standard by which the Court

19  has to be measuring the service here of the Attorney Massi?

20            MR. BURRIS:  Whether or not the attorney with the

21  self interest has presented clear and convincing evidence

22  sufficient to overcome the presumption of impropriety.

23            THE COURT:  Anything further?

24            MR. BURRIS:  That's all.

25            THE COURT:  The Court will take the matter under

1   submission and issue a written order in regard to this

2   matter.

3           Mr. Bowers?

4           MR. BOWERS:  Yes.  I'm sorry, Your Honor.  I know

5   you're in a hurry, but I just want to raised this, but it may

6   not be the appropriate time.

7           There's a status conference due on the discovery

8   situation next week, and we're abutting all our deadlines.

9   We've discussed it and we'd allowed ourselves insufficient

10  time.

11          Would the Court like us to meet and propose new

12  time lines?  Would the Court like to set a hearing?  How

13  would the Court like to handle that?

14          THE COURT:  Probably a meeting.  And if there can

15  be resolution between the parties just submit a stipulation

16  that outlines, consistent with Rule 26-4, what needs to be

17  done and what schedule you -- you'd propose for completing

18  that.

19          MR. BOWERS:  Okay.

20          THE COURT:  All right.

21          MR. BOWERS:  Thank you, Your Honor.

22          THE COURT:  Thank you.

23          Anything further today?

24          COUNSEL:  No, Your Honor.

25          THE COURT:  Thank you.

1          We'll be in recess.

2          COUNSEL:  Thank you, Your Honor.

3          THE CLERK:  Please rise.

4          COUNSEL:  Thank you, Judge.

5            PROCEEDINGS CONCLUDED AT 2:20:24 P.M.

6                    * * * * * * * * * *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 908-7998 - gayle@nwranscripts.com                54

**<u>CERTIFICATION</u>**

I (WE) CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

**NW TRANSCRIPTS, LLC**
**NEVADA DIVISION**
**P.O. BOX 890**
**NAMPA, IDAHO 83653-0890**
**(208) 908-7998**
**gayle@nwtranscripts.com**

/s/ Gayle Lutz
FEDERALLY CERTIFIED MANAGER/OWNER

Kari Riley                                         9/2/10
TRANSCRIBER                                        DATE