STEVEN A. GIBSON
Nevada Bar No. 6656
sgibson@dickinsonwright.com
JODI DONETTA LOWRY
Nevada Bar No. 7798
jdlowry@dickinsonwright.com
LAURA S. LUCERO
Nevada Bar No. 8843
llucero@dickinsonwright.com

DICKINSON WRIGHT PLLC
City Center West
7201 West Lake Mead Boulevard, Suite 503
Las Vegas, Nevada 89128
Telephone 702.541.7888
Facsimile 702.541.7899

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KABINS FAMILY LIMITED PARTNERSHIP, a Nevada limited partnership, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>CHAIN CONSORTIUM, a Nevada general partnership, *et al.*,<br><br>Defendants. | Case No.: 2:09-CV-01125-GMN-RJJ<br><br>**OBJECTION TO MAGISTRATE'S RULING REGARDING ATTORNEY-CLIENT PRIVILEGE** |

Plaintiffs, Kabins Family LP, now doing business as The Kabins Family LLC ("Kabins Family"), the Lori C. Kabins Separate Property Trust ("Lori's Trust"), and Third-Party Defendant Dr. Mark B. Kabins ("Dr. Kabins") (collectively, "Movants"), by and through their counsel of record Dickinson Wright PLLC, and pursuant to 28 U.S.C § 636(b)(1), FRCP 72(a) and LR IB 3-1, submit their Objection to Magistrate Judge Robert J. Johnston's ruling regarding the applicability of the attorney-client privilege to information sought during Dr. Kabins'

deposition. Magistrate Johnston issued the aforementioned ruling without briefs on the issue, but after considering oral arguments made by counsel.

Movant's objections are based on the following Memorandum of Points and Authorities, on the pleadings and papers on file herein, and upon any oral argument that may be entertained by this Court.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.    INTRODUCTION

Third-party Defendant Dr. Kabins and his counsel acted appropriately when Dr. Kabins would not testify, pursuant to Dr. Kabins' counsel's instruction, regarding information known to Dr. Kabins only through the communications of Movants' attorneys. As such, Movants respectfully object to Magistrate Judge Johnston's ruling that Dr. Kabins should be compelled to answer deposition questions clearly designed to elicit the mental impressions and strategy of Movants' attorneys and the context in which Movants' attorneys communicated those mental impressions and strategy to Movants. The instructions by Dr. Kabins' deposition counsel, to which Magistrate Judge Johnston apparently did not object, were not overbroad, in that counsel did not instruct Dr. Kabins not to answer Defendants' questions at all—only not to answer Defendants' questions to the extent those answers would reveal the content of communications between Dr. Kabins and Movants' attorneys. Dr. Kabins' subsequent testimony that Dr. Kabins only knew of certain facts and theories as a result of privileged communications with counsel, and refusal to further disclose those privileged communications, was likewise appropriate. The phraseology of Defendants' questions was clearly intended to elicit from Dr. Kabins' testimony communications subject to the attorney-client privilege and the work product doctrine, and Dr. Kabins in fact testified to information he knew from sources other than interactions with counsel. Defendants' appropriate remedy is not to continue to insist on Dr. Kabins' deposition testimony regarding Dr. Kabins' inadmissible lay opinions regarding the law, but to move in limine to exclude any trial testimony by Dr. Kabins regarding those opinions (to the extent any such testimony would be admissible in the first instance). Movants thus respectfully request that the Court vacate Magistrate Judge Johnston's ruling and order that Dr. Kabins not be required to

testify further in response to questions apparently designed to trap this non-attorney witness into inadvertently breaching the attorney-client privilege and the protections afforded by the work product doctrine.

## II.     STATEMENT OF RELEVANT FACTS

The second session of Dr. Kabins' deposition was taken on May 4, 2011 at the attorneys' lounge located in the United States District Court in Las Vegas, Nevada.  As was the case with the first session of Dr. Kabins' deposition, held January 30, 2010, Defendants took Dr. Kabins' deposition without having preliminarily propounded any written discovery on Plaintiffs.  During the deposition, several discovery disputes arose as to whether certain communications Dr. Kabins had with his counsel are subject to nondisclosure pursuant to the attorney-client privilege and/or work product doctrine.  In this regard the following exchanges occurred:

> Q:     Well, then without referencing the Complaint or reviewing it, I have it here, and I don't want to spend the time going through 156 pages and waste another day, but tell me what you think Mr. Bergman did wrong that--that precipitated your need to sue him?
>
> A:     Okay.
>
> MS. LOWRY:     And I'll instruct the witness not to answer to the extent that the answer would disclose confidential attorney/client communications.
>
> MR. MASSI:     I agree, Counsel.
>
> BY MR. MASSI:     Tell me what you think he did wrong.  I don't care what your attorney thinks.

```
. . .

A:    He told me, one, he was not going to be paid anything until
      these investments concluded, and he would be--be paid in arrears
      rather than up front. He told me that on numerous occasions.

Q:    Anything else?

…

A:    I've learned a number of things through attorney/client
      afterwards.

Q:    Don't want to know that. Don't want to know.
```

Deposition Transcript of Mark Kabins, M.D., Volume II, attached hereto as Exhibit 1 at 69:22-71:1.

Thereafter, despite the assertion to the contrary, Defendants' counsel took the position that the privilege does not prevent Dr. Kabins from testifying regarding the facts that give rise to the causes of action, regardless of whether those facts came from his attorney. *See id*. at 71:15-72:24. Movants' counsel argued that the communication itself is privileged and the fact that Dr. Kabins would be leaving out that he learned it from his lawyer does not make the information communicated to Dr. Kabins by his counsel any less privileged. *Id*. at 72:25-73:13. The parties agreed to address the issue before Judge Johnston later in the day.

Similar to the above question, Defendants' counsel subsequently asked Dr. Kabins what he thought Benessere, LLC, Cipriani, LLC and Gila Bend, LLC did that caused damages. *Id.* at 92:2-7. Specifically, the following exchange occurred:

1   MS. LOWRY: Objection form.

2

3   THE WITNESS: That is 100 percent attorney/client privilege.

4   I have no answer outside of the attorney/client privilege.

5

6   BY MR. MASSI: In other words, your entire understanding of

7   what they did wrong is based on what your attorney told you?

8

9   A: Correct.

10

11   *Id*. at 92:8-92:16.

12   The following questions giving rise to privilege issues ensued:

13

14   Q: What, if anything, did any of the members of any of these

15   three entities do that caused your party plaintiffs or you personally,

16   your party plaintiffs or you personally, any monetary loss?

17

18   Q: Do you have any personal knowledge that any member of

19   Benessere, Gila Bend, or Cipriani, caused you or the -- or the party

20   plaintiff entities in this case any damages, any monetary damages?

21

22   Q: Do you have any personal knowledge, independently or

23   personally gathered by yourself, without input from your attorneys

24   that Gila Bend members, Benessere members, or Cipriani members

25   caused you any personal damages, either you or the entities,

26   monetary or otherwise?

27

28   *Id.* at 94:24-96:17.

In response to each of the aforementioned questions, Dr. Kabins responded that his only knowledge was gained through his communications with his counsel. *See id.* at 95:11-12; 96:1-2; 96:22-23.

Thereafter, the parties addressed this issue with Judge Johnston. *See* Transcript of Hearing Re: Objections During Deposition, dated May 4, 2011, attached hereto as Exhibit 2. Judge Johnston agreed with Defendants' position ruling that the communications were not privileged to the extent that the communication constitutes fact. *Id.* Movants hereby object to Judge Johnson's ruling.

### III. STANDARD FOR OBJECTING TO MAGISTRATE'S ORDER

This Court may set aside the order of a magistrate judge regarding a pretrial matter if the magistrate judge's findings or conclusions are "clearly erroneous or contrary to law". *Ideal Electric Co. v. Flowserve Corp.*, 230 F.R.D. 603, 606 (D. Nev. 2005), citing 28 U.S.C. §636 (b)(1)(A), FRCP 72(a), and LR 1B 3-1(a). The district judge may set aside the magistrate judge's order if the district judge "is left with the 'definite and firm conviction that a mistake has been committed'". *Id.*, citing *Burdick v. Comm'r*, 979 F.2d 1369, 1370 (9th Cir. 1992).

### IV. ARGUMENT

#### A. Counsel's instructions to Dr. Kabins not to answer questions to the extent attorney-client communications would thereby be revealed were appropriate.

Movants are not interpreting the Magistrate's ruling to be that the instruction was not proper. However, in the event that Movants have misinterpreted the Magistrate's ruling, Movants' counsel's instruction not to answer the question *to the extent* attorney-client communications will be revealed was absolutely appropriate because the questions clearly seek information potentially protected by the attorney-client privilege and work product doctrine.

The law is clear that an attorney may instruct a client deponent not to answer a question when necessary to preserve a privilege. FRCP 30(c)(2). In this case, Dr. Kabins' counsel did not even give Dr. Kabins a blanket instruction not to respond to Defendants' questions, but explicitly limited that instruction by instructing Dr. Kabins not to respond only to the extent that

response would reveal the content of an attorney-client communication. Dr. Kabins was asked the following questions that necessitated this instruction: 1)…"tell me what you think Mr. Bergman did wrong that--that precipitated your need to sue him?"; 2) "What, if anything, did any of the members of any of these three entities do that caused your party plaintiffs or you personally, your party plaintiffs or you personally, any monetary loss?"; 3) "Do you have any personal knowledge that any member of Benessere, Gila Bend, or Cipriani, caused you or the -- or the party plaintiff entities in this case any damages, any monetary damages?" Exhibit 1 at 69:23-70:2; 94:24-95:2; 95:17-95:20. As will be discussed more thoroughly below, the aforementioned questions intrinsically implicated privileged information because the call of these questions potentially required Dr. Kabins to disclose theories of liability and damages learned solely from communications with his attorneys. As such, Dr. Kabins' attorney appropriately lodged an objection and gave Dr. Kabins instruction not to answer as permitted by FRCP 30(c)(2). *See* Exhibit 1 at 70:4-6; 95:3-6; 95:21-22.

   **B.** **Magistrate Judge Johnston's ruling that Dr. Kabins' answers are insufficient is in error.**

     **1.** **Defendants' questions clearly implicate the potential disclosure of information protected by the attorney-client privilege.**

Magistrate Judge Johnston's ruling regarding the inapplicability of the attorney-client privilege is in error because the questions at issue elicit answers beyond mere facts and will divulge privileged information contained in a communications concerning the law applied to those facts. A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications between himself and his lawyer made for the purpose of facilitating the rendition of professional legal services to the client. NRS 49.095; *see Upjohn Co. v. U.S.,* 449 U.S. 383 (1981); *Admiral Ins. Co. v. U.S. Dist. Court for the Dist. of Arizona*, 881 F.2d 1486, 1492 (9th Cir. 1989). The privilege protects communications and not the disclosure of the underlying facts. *Upjohn*, 449 U.S. 383, 395. Here, the Magistrate ruled that the attorney-

1  client privilege does not apply to the extent that the communication constitutes "fact." Thus, the
2  question becomes what constitutes an unprotected fact versus a protected communication.

3      At least one United States District Court has indicated that communications from attorney
4  to client concerning facts are subject to the protections of the attorney-client privilege. Although
5  unaddressed by the Supreme Court of the United States, a case decided by the District Court for
6  the Eastern District of Pennsylvania, relied upon by the Supreme Court in *Upjohn*, has addressed
7  a situation in which the disclosure of facts is inseparable from the legal advice given. *Upjohn*
8  *Co.,* 449 U.S. 383, 396. In that case, the District Court determined whether interrogatories
9  asking for detailed information of meetings of officials at which prices, territories and terms of
10 sale of electrical equipment were discussed were protected by the attorney-client privilege. *City*
11 *of Philadelphia, Pennsylvania v. Westinghouse Electric Corp.,* 205 F. Supp. 830 (1962). The
12 Court held that the information sought was purely factual and therefore was not protected by the
13 attorney-client privilege. *Id*. The attorney-client privilege protects **communications** and not
14 facts. *Id*. at 831. Indeed, the Court recognized that "a fact is one thing and a communication
15 concerning that fact is an entirely different thing". *Id.* Therefore, a communication concerning a
16 fact is privileged. *See id.* By logical extension, a communication concerning the law as applied
17 to facts is privileged as well, and a communication concerning pure legal analysis is undoubtedly
18 privileged.

19     Here, in distinction from the situation before the Court in *City of Philadelphia*, the
20 questions at issue do not seek a recitation of the facts, but rather, seek to discover attorney-client
21 communications that, at a minimum, concern the law as applied to facts, and arguably seek pure
22 legal analysis from Dr. Kabins. Specifically, Defendants asked Dr. Kabins questions regarding
23 what each defendant did wrong and how Plaintiffs were damaged by such acts. Dr. Kabins
24 testified at some length as to facts within his independent knowledge; however, he also testified
25 that he has learned of additional facts supporting Plaintiffs' theories of culpability through
26 communications regarding those theories of culpability with Movants' attorneys. This is exactly
27 the distinction recognized in *City of Philadelphia*: a fact is one thing and a communication
28

concerning that fact, or applying the law to those facts, as in this case, is entirely different and is protected by the attorney-client privilege. *Id*.

Defendants cannot circumvent the attorney-client privilege through semantics. Defendants' inartful phraseology of their questions makes those questions tantamount to directly asking Dr. Kabins what his attorney thinks and communicated to him. This is precisely what the attorney-client privilege protects against. *See generally Upjohn Co.*, 449 U.S. 383. For example, Defendants' counsel asked Dr. Kabins, "...what you think Benessere, LLC, Cipriani, LLC, and Gila Bend, LLC, only did that caused you any damage". Exhibit 1 at 92:2-16. Dr. Kabins responded that his entire understanding of what these entities did wrong is based on communications with his attorneys. *Id.* This question does not seek mere facts, as would have been true if the question had been more of the variety, "was the traffic light red or green?" Rather, this question, which apparently seeks non-attorney Dr. Kabins' analysis of liability, causation, and damages in this highly complex investment fraud case, seeks to discover legal analysis *per se* in the form of Movants' counsel's theory of the case. The Supreme Court of the United States has recognized that the purpose of the attorney-client privilege is to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co.,* 449 U.S. 383, 389. This openness between attorney and client enables "the attorney to give the most well-informed legal advice to the client." *Premiere Digital Access, Inc. v. Central Telephone Co.*, 360 F. Supp. 2d 1168, 1175 (D. Nev. 2005). Communications between attorney and client will be halted if an attorney cannot confidentially talk to his client regarding theories of the case vis-à-vis what facts are pertinent to the causes of action pled by the attorney. As such, Movants' counsel's instructions, and Dr. Kabins' responses, were appropriate.

### 2. Defendants' questions implicate the potential disclosure of information protected by the work product doctrine.

Magistrate Judge Johnston's decision is erroneous because Magistrate Judge Johnston failed to recognize that by compelling Dr. Kabins to disclose facts learned solely from his attorneys, the Court is forcing Dr. Kabins to disclose the mental impressions of counsel. The law

1 is clear that the work product doctrine protects the disclosure of mental impressions, conclusions, and legal theories of an attorney concerning the litigation. *See Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); NRCP 26 (b)(3).  A deponent during the course of a deposition may not be asked questions that would reveal the deponent's attorneys' mental impressions, conclusions, opinions, or legal theories. *Hydramar, Inc. v. General Dynamics Corp.*, 119 F.R.D. 367, 372 (E.D. Pa. 1988).  However, the doctrine can be circumvented if the party seeking to discover the information bears the burden of establishing a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain the information elsewhere.  FRCP 26(b)(3); NRCP 26(b)(3); *See also Upjohn Co. 449 U.S. 383*.  Even with the requisite showing of substantial need and undue hardship, "the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories…" of an attorney.  FRCP 26(b)(3).  For example, in *Ceco Steel Products Corp. v. H.K. Porter Co.*, the court refused to compel the vice president of the plaintiff corporation to answer questions at deposition concerning conversations he overheard between plaintiff's counsel and employees, based upon the work product doctrine. 31 F.R.D. 142 (N.D. Ill. 1962).  The *Ceco* court reasoned that permitting discovery of those conversations would reveal what counsel thought were the strong and weak points of the case. *Id*. at 144.

In this case, the Court's ruling compels Dr. Kabins to reveal more than mere facts because of the call of the question.  The communications Defendants seek to discover involve discussions of the facts in the context of liability, causation, and damages, not a mere discussion of the bare facts.  As such, revealing these communications will also undoubtedly reveal Movants' attorneys' mental impressions and legal analysis of the case.  Specifically, by answering the questions regarding what the defendants purportedly did wrong with information, facts or otherwise, gained from confidential communications with his counsel, Dr. Kabins will be disclosing his attorneys' legal opinions regarding what facts are important to which causes of action and why certain entities and/or individuals were named as defendants.  Just as in *Ceco*, allowing such will do nothing more than reveal Movants' attorneys' legal evaluation and mental

impressions regarding the strong and weak points of the case, which is exactly what is prohibited by the work product doctrine.

Moreover, Defendants have failed to demonstrate a substantial need for this information and that the information cannot be discovered elsewhere without undue hardship. There is absolutely no "substantial need" for the information Defendants seek. The questions posed are in no way aimed at eliciting the facts necessary to prove the elements of Defendants' defense or counter-claims. Rather, the questions appear to be aimed at discovering Movants' attorneys' theories. Accordingly, the non-disclosure of this privileged material will certainly not impair Defendants' ability to present or defend Defendants' case. Further, the information sought by Defendants can be discovered in a number of different ways without circumventing the work product doctrine, the most simple of which is for Defendants to ask Dr. Kabins questions about ***Dr. Kabins' knowledge of facts*** rather than interrogating a non-attorney orthopedic spinal surgeon about his opinion of liability, causation, and damages issues in a highly complex investment fraud case. Defendants have completely failed to meet Defendants' aforementioned burdens and therefore, the work product doctrine should protect Dr. Kabins from being required to give further testimony in this regard.

   **C.**   **Defendants' remedy for Dr. Kabins' nondisclosure of privileged information is a motion in limine, or merely asking Dr. Kabins appropriate deposition questions.**

Defendants have an obvious remedy for any non-disclosure of admissible evidence by Dr. Kabins to which Dr. Kabins did not testify in deposition. That remedy is obtained by filing a motion in limine to exclude Dr. Kabins from offering testimony at trial regarding Dr. Kabins' personal theories of liability and damages not properly disclosed in discovery. For example, Dr. Kabins testified that his entire understanding of what Benessere, Cipriani, and Gila Bend did wrong is based on his conversations with his attorneys. As such, in the unlikely event Dr. Kabins' lay opinions regarding liability and damages are deemed admissible at trial, Dr. Kabins is precluded from later testifying at trial as to what Dr. Kabins ***personally believes*** these defendants did wrong, unless his memory is properly refreshed through documentation, which

was not done at his deposition. Accordingly, due to the availability of an alternative remedy, Dr. Kabins should not be forced to disclose privileged information.

Further, to the extent Defendants' counsel seek factual discovery from Dr. Kabins, Defendants' counsel can elicit testimony in that regard in a manner that does not raise the specter of Dr. Kabins being trapped into inadvertent waiver of the attorney-client privilege. Rather than asking Dr. Kabins "What do you think Benessere did wrong?", Defendants' counsel could have asked Dr. Kabins the question, "What representations were made to you that you believe are not true?" or "What information was not disclosed to you that you believed should have been disclosed?" Indeed, Dr. Kabins testified at some length, both in response to Benessere and other Defendants represented by Mr. Massi and in response to appropriate questions by attorneys for other Defendants, as to Dr. Kabins' recollection of facts and representations surrounding Dr. Kabins' interactions with the individual Defendants. By demanding that Dr. Kabins summarize this complex case for them, however, Defendants' attorneys move outside the realm of appropriate fact discovery and into the realm of asking a lay witness either to conduct sophisticated legal analysis or to testify regarding his attorneys' legal analysis. Defendants can thus easily resolve the issues posed by this Objection simply by asking questions that do not call—unnecessarily and inappropriately—for the disclosure of legal analysis and strategy.

### D. **Inadvertent disclosure of privileged information constituting waiver should be protected against as contrary to public policy.**

The preservation of confidential information protected by the attorney-client privilege and work product doctrine serves important public policy interests. Indeed, the Supreme Court of the United States has explicitly recognized on multiple occasions the strong public policy underlying the work product doctrine. *See Upjohn*, 449 U.S. 383, 398; *United States v. Nobles*, 422 U.S. 225, 236-240 (1975); *Hickman,* 329 U.S. 495, 510. In *Nobles*, the Court recognized that the work product doctrine "reflects the strong public policy underlying the orderly prosecution and defense of legal claims. *Nobles*, 422 U.S. 225, 236-237. The attorney-client privilege serves to protect the same overall policy. The purpose behind the privilege is to encourage "full and frank communication between attorneys and their clients and thereby

promote broader public interests in the observance of law and administration of justice." *Id.* "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. *Id.* These policy considerations should not be taken lightly and confidential information should be preserved and protected from inadvertent waiver.

The communications in this case involve discussions by Movants' attorneys of their legal strategy in terms of the legally significant facts. In other words, the communications involve discussion of the facts in the context of liability and damages. Certainly a non-lawyer cannot be expected to recognize and parse out the bare facts from the context in which the lawyer gave those facts so as to not inadvertently reveal protected information and waive the client's privilege during deposition. Placing deponents in such a situation where inadvertent waiver may occur would undermine the important public policy behind the privileges. Accordingly, due to the strong public policy in maintaining observance of law and administration of justice through the preservation of privilege, Dr. Kabins should not be placed in such a precarious situation where there is a great risk of inadvertently waiving his privileges.

## V. CONCLUSION

Based on the foregoing, Movants respectfully request that the Court set aside the Magistrate's ruling as clearly erroneous and contrary to the law, and find that Dr. Kabins may not be compelled to testify as to information learned from his attorneys regarding liability and damages because that information is protected by the attorney-client privilege and work product doctrine.

Respectfully submitted this 13th day of May, 2011.

DICKINSON WRIGHT PLLC

By /s/ J.D. Lowry

STEVEN A. GIBSON
Nevada Bar No. 6656
JODI DONETTA LOWRY
Nevada Bar No. 7798
LAURA S. LUCERO
Nevada Bar No. 8843
City Center West
7201 West Lake Mead Boulevard, Suite 503
Las Vegas, Nevada 89128

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5 of this Court, I certify that I am an employee of Dickinson Wright PLLC and that on this 13th day of May, 2011, I caused a correct copy of the foregoing OBJECTION TO MAGISTRATE'S RULING REGARDING ATTORNEY CLIENT PRIVILEGE to be served via CM/ECF to:

| | |
|---|---|
| Albert D. Massi, Esq.<br>mamasoto@yahoo.com<br>Albert D. Massi, Ltd.<br>3202 West Charleston Boulevard<br>Las Vegas, Nevada 89102<br>Telephone: 702.878.8778<br>Facsimile: 702.878.9350 | Chad A. Bowers, Esq.<br>bowers@lawyer.com<br>Albert D. Massi, Ltd.<br>3202 West Charleston Boulevard<br>Las Vegas, Nevada 89102<br>Telephone: 702.878.8778<br>Facsimile: 702.878.9350 |
| William Kerry Skaggs, Esq.<br>kerryskaggs@msn.com<br>Law Office of William Kerry Skaggs<br>808 South Seventh Street<br>Las Vegas, Nevada 89101<br>Telephone: 702.445.6700<br>Facsimile: 702.475.4060 | Barbara Johnston, Esq.<br>barbara.johnston@rocketmail.com<br>2103 Clearwater Lake Drive<br>Henderson, Nevada 89044<br>Telephone: 702.684.6163 |
| Mario P. Lovato, Esq.<br>mpl@lovatolaw.com<br>Lovato Law Firm, P.C.<br>619 South Sixth Street<br>Las Vegas, Nevada 89101<br>Telephone: 702.979.9047<br>Facsimile: 702.554.3858 | Lisa Zastrow, Esq.<br>lzastrow@ kcnvlaw.com<br>James E. Smyth, Esq.<br>jsmyth@kcnvlaw.com<br>Kaempfer Crowell, *et al*<br>8345 West Sunset Road<br>Suite 250<br>Las Vegas, Nevada 89113<br>Telephone: 702.792.7000<br>Facsimile: 702.796.7181 |

I further certify that some of the participants in the case are not CM/ECF users, and pursuant to FRCP 5, I served a copy of the OBJECTION TO MAGISTRATE'S RULING REGARDING ATTORNEY CLIENT PRIVILEGE by United States first-class mail on this 13th day of May, 2011 to the following non-CM/ECF participants, at their last known address:

Mr. Jeff Chain
jeff@mpdnv.com
Ms. Linda Chain
linda@mpdnv.com
8156 Horseshoe Bend
Las Vegas, Nevada 89113
Telephone: 702.688.6400
Facsimile: 702.688.6402

/s/ J.D. Lowry
An employee of Dickinson Wright PLLC